**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RETROTOPE, INC., [1] | ) Case No. 22-10228 (___) |
| | ) |
| Debtor. | ) |
| | ) |

**APPLICATION OF THE DEBTOR FOR ENTRY OF ORDER**
**APPOINTING BMC GROUP, INC. AS**
**CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE**

The debtor and debtor in possession in the above-captioned chapter 11 case (the

"Debtor"), hereby submits this application (this "Section 156(c) Application"), pursuant to section

156(c) of title 28 of the United States Code, section 105(a) of title 11 of the United States Code,

11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), Rule 2002 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), and Rule 2002-1(f) of the Local Rules of Bankruptcy Practice

and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local

Rules"), seeking entry of an order, substantially in the form attached hereto as **Exhibit A** (the

"Order"), appointing BMC Group Inc. ("BMC") as the claims and noticing agent in the Debtor's

chapter 11 case effective as of the Petition Date (as defined below). In support of this Section

156(c) Application, the Debtor relies upon the *Declaration of Tinamarie Feil in Support of*

*Application of Debtor for Entry of Order Appointing BMC Group, Inc. as Claims and Noticing*

*Agent Effective as of Petition Date* (the "Feil Declaration"), a copy of which is attached hereto as

---

[1] The Debtor in this chapter 11 case, its jurisdictions of organization, and the last four digits of its U.S. taxpayer identification number is Retrotope, a Delaware corporation (8003). The Debtor's corporate headquarters is located at 4300 El Camino Real, Suite 201, Los Altos, CA 94022.

**Exhibit B**. In further support of this Section 156(c) Application, the Debtor respectfully states as follows:

## JURISDICTION

1.      The Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      Pursuant to Local Rule 9013-1(f), the Debtor consents to the entry of a final order or judgment by the Court in connection with this Application if it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgements consistent with Article III of the United States Constitution.

3.      The statutory and legal predicates for the relief requested herein are 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, Local Rule 2002-1(f), and the Court's *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol").

## BACKGROUND

4.      On the date hereof, the Debtor commenced with the Court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtor is authorized to continue operating its business and managing its business as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee (other than the Subchapter V trustee), examiner, or statutory committee has been appointed in thischapter 11 case.

**RELIEF REQUESTED**

5.　　By this Section 156(c) Application, the Debtor seeks entry of the Order appointing BMC to act as the claims and noticing agent in the Debtor's chapter 11 case (the "Claims and Noticing Agent") to assume full responsibility for the distribution of notices and the maintenance, processing and docketing of proofs of claim filed in the Debtor's chapter 11 case effective as of the Petition Date. The terms of BMC's proposed retention are set forth in that certain Agreement for Services between BMC and the Debtor, dated as of March 16, 2022 (the "Retention Agreement"),[2] a copy of which is attached hereto as **Exhibit C**. Notwithstanding the terms of the Retention Agreement, the Debtor is seeking to retain BMC solely on the terms set forth in this Section 156(c) Application and the Order.

6.　　By separate application, the Debtor will seek authorization to retain and employ BMC as administrative agent in this chapter 11 case, pursuant to section 327(a) of the Bankruptcy Code, as the administration of this chapter 11 case may require BMC to perform duties outside the scope of 28 U.S.C. § 156(c).

**BMC'S QUALIFICATIONS AND NEED FOR BMC'S SERVICES**

7.　　BMC is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. BMC has acted as the claims and noticing agent in numerous recent cases of varying size and complexity, including a number of recent cases filed in this District.[3]

---

[2] BMC has agreed to provide claims and noticing services to the Debtor at the rates stated on the pricing schedule attached to the Retention Agreement. BMC may provide such services at the same rates to counsel for any official committee appointed in these chapter 11 cases, and any other party in interest upon request.

[3] *See, e.g., In re Lear Capital, Inc.*, No. 22-10165 (BLS) (Bankr. D. Del. 2022); *In re Sharity Ministries, Inc.*, No. 21-11001 (JTD) (Bankr. D. Del. 2021); *In re YogaWorks*, No. 20-12599 (JBO) (Bankr. D. Del, 2020); *In re Llednara Holdings, Inc.*, No. 20-11941 (JTD) (Bankr. D. Del. 2020); *In re SGR Winddown, Inc.*, No. 19-11973 (MJW) (Bankr.

8.     The appointment of BMC as the Claims and Noticing Agent in this chapter 11 case will expedite the distribution of notices and the processing of claims, facilitate other administrative aspects of this chapter 11 case, and relieve the Clerk of these administrative burdens. The Debtor believes that the appointment of BMC as the Claims and Noticing Agent will thus serve to maximize the value of the Debtor's estate for all stakeholders.

## SCOPE OF SERVICES

9.     This Section 156(c) Application pertains only to the services to be performed by BMC under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 2002-1(f). Any services to be performed by BMC that are set forth in the Retention Agreement but outside of the scope of 28 U.S.C. § 156(c) are not covered by this Section 156(c) Application or by the Order. Specifically, BMC will perform the following tasks in its role as the Claims and Noticing Agent, as well as all quality control relating thereto (collectively, the "Claims and Noticing Services"), to the extent requested by the Debtor:

a.     Prepare and serve required notices and documents in this chapter 11 case in accordance with the Bankruptcy Code and the Bankruptcy Rules in the form and manner directed by the Debtor and/or the Court, including, if applicable, (i) notice of the commencement of this chapter 11 case and the initial meeting of creditors under section 341(a) of the Bankruptcy Code (as applicable), (ii) notice of any claims bar date (as applicable), (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the a plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan or plans, and (vii) all other notices, orders, pleadings, publications, and other documents as the Debtor or the Court may deem necessary or appropriate for an orderly administration of this chapter 11 case;

b.     If applicable, maintain an official copy of the Debtor's schedules of assets and liabilities and statement of financial affairs (collectively, the

---

D. Del. 2019); *In re JRV Group USA, L.P.,* No. 19-11095 (CSS) (Bankr. D. Del. 2019); *In re Education Management II, LLC,* No. 18-11494 (LSS) (Bankr. D. Del 2018); *In re KIKO USA, Inc.*, No. 18-10069 (MFW) (Bankr. D. Del. 2018); *In re Aerospace Holdings, Inc.*, No. 17-10635 (Bank. D. Del. 2017) (KG); *In re Venoco, Inc.*, 16-10655 (KG) (Bankr. D. Del. 2016); and *In re Restaurants Acquisition I, LLC*, 15-12406 (KG) (Banrk. D. Del. 2015).

"<u>Schedules</u>"), listing the Debtor's known creditors and the amounts owed thereto;

c.    Maintain (i) a list of all potential creditors, equity holders, and other parties in interest and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k) and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; update said lists and make said lists available upon request by a party in interest or the Clerk;

d.    Furnish a notice to all potential creditors of the last date for the filing of proofs of claim and a form for the filing of a proof of claim;

e.    Maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

f.    For all notices, motions, orders or other pleadings or documents served, prepare and file or caused to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served;

g.    Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy, and maintain the original proofs of claim in a secure area;

h.    Maintain an electronic platform for purposes of filing proofs of claim;

i.    Maintain the official claims register for the Debtor (the "<u>Claims Register</u>") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with a certified, duplicate unofficial Claims Register; and specify in the Claims Register the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), and (vi) any disposition of the claim;

j.    Provide public access to the Claims Register, including complete proofs of claim with attachments, if any, without charge;

k.    Implement necessary security measures to ensure the completeness and integrity of the Claims Register and the safekeeping of the original proofs of claim;

l.    Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

m.  Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to BMC's offices, not less than weekly;

n.  Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Register for the Clerk's review (upon the Clerk's request);

o.  Monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the Claims Register and any service or mailing lists, including to identify and eliminate duplicate names and addresses from such lists;

p.  Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

q.  Assist in the dissemination of information to the public and respond to requests for administrative information regarding this chapter 11 case as directed by the Debtor or the Court, including through the use of a case website and/or call center;

r.  Monitor the Court's docket in this chapter 11 case and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct any such error;

s.  If this chapter 11 case is converted to chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of the notice to BMC of entry of the order converting the case;

t.  Thirty (30) days prior to the close of this chapter 11 case, to the extent practicable, request that the Debtor submit to the Court a proposed order dismissing BMC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of this chapter 11 case;

u.  Within seven (7) days of notice to BMC of entry of an order closing this chapter 11 case, provide to the Court the final version of the Claims Register as of the date immediately before the close of the case; and

v.  At the close of this chapter 11 case, (i) box and transport all original documents, in proper format, as provided by the Clerk's office, to (A) the Philadelphia Federal Records Center, 14700 Townsend Road, Philadelphia, PA 19154-1096 or (B) any other location requested by the Clerk's office; and (ii) docket a completed SF-135 Form indicating the accession and location numbers of the archived claims.

10.     The Claims Register shall be open to the public for examination without charge during regular business hours and on the case-specific website maintained by BMC.

## **COMPENSATION**

11.     The Debtor is proposing to compensate BMC for the Claims and Noticing Services set forth above in accordance with the pricing section of the Retention Agreement. The Debtor respectfully requests that the undisputed fees and expenses incurred by BMC in the performance of the Claims and Noticing Services be treated as administrative expenses of the Debtor's chapter 11 estate pursuant to 28 U.S.C. § 156(c) and 11 U.S.C. § 503(b)(l)(A) and be paid in the ordinary course of business without further application to or order of the Court.

12.     BMC agrees to maintain records of all Claims and Noticing Services, including dates, categories of Claims and Noticing Services, fees charged, and expenses incurred, and to serve monthly invoices on the Debtor, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee"), counsel for the Debtor, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices. If any dispute arises relating to the Retention Agreement or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute. If resolution is not achieved, the parties may seek resolution of the matter from the Court.

13.     Before the Petition Date, the Debtor provided BMC a retainer in the amount of $10,000. BMC seeks to first apply the retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $10,000 and, thereafter, to hold the retainer as security of payment of BMC's final invoice for services rendered and expenses incurred in performing the Claims and Noticing Services.

14.     Additionally, under the terms of the Retention Agreement, the Debtor has agreed, subject to certain exceptions, to indemnify, defend, and hold harmless BMC and its affiliates, parent, officers, members, directors, agents, representatives, managers, consultants, and employees, under certain circumstances specified in the Retention Agreement, except in circumstances resulting from BMC's gross negligence or willful misconduct or as otherwise provided in the Retention Agreement or the Order. The Debtor believes that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a Claims and Noticing Agent in this chapter 11 case.

## **BMC'S DISINTERESTEDNESS**

15.     Although the Debtor does not propose to employ BMC under section 327 of the Bankruptcy Code pursuant to this Section 156(c) Application (such retention will be sought by separate application), BMC has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties in interest provided by the Debtor, and, to the best of the Debtor's knowledge, information, and belief, and except as disclosed in the Feil Declaration, BMC has represented that it neither holds nor represents any interest materially adverse to the Debtor's estate in connection with any matter on which it would be employed.

16.     Moreover, in connection with its retention as Claims and Noticing Agent, BMC represents in the Feil Declaration, among other things, that:

a.     BMC is not a creditor of the Debtor;

b.     BMC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case;

c.     By accepting employment in this chapter 11 case, BMC waives any rights to receive compensation from the United States government in its capacity as the Claims and Noticing Agent in this chapter 11 case; BMC anticipates, however, that it may receive compensation from the United

States government if requested to serve notice(s) on behalf of the Office of the United States Trustee in this case;

d.  In its capacity as the Claims and Noticing Agent in this chapter 11 case, BMC will not be an agent of the United States and will not act on behalf of the United States;

e.  BMC will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f.  BMC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.  In its capacity as Claims and Noticing Agent in this chapter 11 case, BMC will not intentionally misrepresent any fact to any person;

h.  BMC shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i.  BMC will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.  None of the services provided by BMC as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

17.  BMC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

## BASIS FOR RELIEF REQUESTED

18.  The Court is permitted to appoint BMC as Claims and Noticing Agent in this chapter 11 case. Pursuant to 28 U.S.C. § 156(c), the Court is authorized to utilize agents and facilities other than the Clerk for the administration of bankruptcy cases. Specifically, 28 U.S.C. § 156(c) provides, in relevant part, as follows:

Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the

9

estate and are not charged to the United States.

11 U.S.C. § 105(a). Moreover, Bankruptcy Rule 2002, which regulates the notices that must be provided to creditors and other parties in interest in a bankruptcy case, provides that the Court may direct that a person other than the Clerk give notice of the various matters described therein. See Fed. R. Bankr. P. 2002. In addition, Local Rule 2002-1(f) provides that "[u]pon motion of the debtors or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c)." Del. Bankr. L.R. 2002-1(f).

19.    The appointment of BMC as Claims and Noticing Agent will help to expedite and more efficiently facilitate the administration of this chapter 11 case, and will relieve the Clerk's office of administrative burdens. For these reasons, the Debtor respectfully submits that BMC's appointment as Claims and Noticing Agent is necessary and in the best interests of the Debtor and its estate and will serve to maximize the value of the Debtor's estate for all stakeholders.

## COMPLIANCE WITH CLAIMS AGENT PROTOCOL

20.    The Debtor's selection of BMC to act as the Claims and Noticing Agent has satisfied the Claims Agent Protocol, in that the Debtor has obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process. Moreover, the Debtor submits, based on all engagement proposals obtained and reviewed, that BMC's rates are competitive and reasonable given BMC's quality of services and expertise.

## RELIEF AS OF PETITION DATE IS APPROPRIATE

21.    In accordance with the Debtor's request, BMC has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtor would seek approval of its employment and retention, effective as of the Petition Date, so that BMC can be compensated

for services rendered before approval of this Section 156(c) Application. The Debtor believes that no party in interest will be prejudiced by the granting relief as of the Petition Date as proposed in this Section 156(c) Application, because BMC has provided and continues to provide valuable services to the Debtor's estate during the interim period.

22.     Accordingly, the Debtor respectfully requests entry of the Order authorizing the Debtor to retain and employ BMC as Claims and Noticing Agent effective as of the Petition Date.

### NOTICE

23.     The Debtor will provide notice of this Section 156(c) Application to: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the 20 largest unsecured claims against the Debtor; (c) counsel to the DIP Lender; (d) the subchapter V trustee (once appointed); (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the United States Securities and Exchange Commission; (h) the state attorneys general for all states in which the Debtor conducts business; and (i) any party that requests service pursuant to Bankruptcy Rule 2002. As the Section 156(c) Application is seeking "first day" relief, within two business days after the hearing on the Motion, the Debtor will serve copies of the Section 156(c) Application and any order entered respecting the Motion as required by Del. Bankr. LR 9013-1(m)(iv). The Debtor submits that, in light of the nature of the relief requested, no other or further notice need be given.

### WAIVER OF BANKRUPTCY RULE 6004(a) AND 6004(h)

24.     To implement the foregoing successfully, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h).

WHEREFORE the Debtor respectfully requests entry of the Order granting the

relief requested herein and such other and further relief as the Court may deem just and appropriate.

Dated: March 21, 2022
   Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Matthew P. Ward*
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
Morgan L. Patterson (DE Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  (302) 252-4320
Facsimile:  (302) 252-4330
Email:  matthew.ward@wbd-us.com
Email:  ericka.johnson@wbd-us.com
Email:  morgan.patterson@wbd-us.com

*Proposed Counsel to the Debtor*

**<u>EXHIBIT A</u>**

**Proposed Order**

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
| RETROTOPE, INC., [1] | ) |
|  | ) Case No. 22-10228 (___) |
|  | ) |
| Debtor. | ) |
|  | ) |

## ORDER APPOINTING BMC GROUP, INC. AS
## CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE

Upon the application (the "Section 156(c) Application")[1] of the debtor and debtor in possession in the above-captioned chapter 11 cases (the "Debtor"), for entry of an order, pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002 and Local Rule 2002-1(f), appointing BMC Group, Inc. ("BMC") as the Claims and Noticing Agent in the Debtor's chapter 11 case effective as of the Petition Date, to, among other things, (a) distribute required notices to parties in interest, (b) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Debtor's chapter 11 case, and (c) provide such other administrative services as required by the Debtor that would fall within the purview of services to be provided by the Clerk's office, and (d) granting related relief, all as more fully set forth in the Section 156(c) Application; and this Court having jurisdiction to consider the Section 156(c) Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Section 156(c) Application and the

---

[1] The Debtor in this chapter 11 case, its jurisdictions of organization, and the last four digits of its U.S. taxpayer identification number is Retrotope, a Delaware corporation (8003).  The Debtor's corporate headquarters is located at 4300 El Camino Real, Suite 201, Los Altos, CA 94022.

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Section 156(c) Application having been provided to the Notice Parties under the circumstances, and it appearing that no other or further notice need be provided; and this Court having held a hearing to consider the relief requested in the Section 156(c) Application (the "Hearing"); and upon the First Day Declaration and the Feil Declaration, the record of the Hearing, and all proceedings had before this Court; and this Court having determined that the legal and factual bases set forth in the Section 156(c) Application establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT**

1.      The Section 156(c) Application is granted as set forth herein.

2.      Notwithstanding the terms of the Retention Agreement attached to the Section 156(c) Application, the Section 156(c) Application is granted solely as set forth in this Order and solely with respect to the Claims Management and Noticing services set forth in the Services Section of the Retention Agreement.

3.      Pursuant to 28 U.S.C. § 156(c), section 105(a) of the Bankruptcy Code, Bankruptcy Rule 2002, and Local Rule 2002-1(f), the Debtor is authorized to retain BMC as Claims and Noticing Agent in this chapter 11 case, effective as of the Petition Date, under the terms of the Retention Agreement, and BMC is authorized and directed to perform the Claims and Noticing Services and to receive, maintain, record and otherwise administer the proofs of claim filed in this chapter 11 case, and perform all related tasks as set forth in the Section 156(c) Application.

4.      BMC shall serve as the custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in this chapter 11 case, and is authorized and

directed to maintain the official Claims Register for the Debtor, to provide public access to every proof of claim unless otherwise ordered by the Court, and to provide the Clerk with a certified duplicate thereof upon request of the Clerk.

5.      BMC is authorized and directed to obtain a post office box or address for the receipt of proofs of claim.

6.      BMC is authorized to take such other actions as required to comply with all duties set forth in the Section 156(c) Application and this Order.

7.      BMC shall comply with all requests of the Clerk and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c).

8.      Without further order of this Court, the Debtor is authorized to compensate BMC in accordance with the terms and conditions of the Retention Agreement upon receipt of reasonably detailed monthly invoices setting forth the services provided by BMC and the rates charged for each, and to reimburse BMC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for BMC to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

9.      BMC shall maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and shall serve monthly invoices on the Debtor, the U.S. Trustee, counsel for the Debtor, counsel for any statutory committee, and any party in interest that specifically requests service of the monthly invoices.

10.     The parties shall meet and confer in an attempt to resolve any dispute that may arise relating to the Retention Agreement or monthly invoices, and the parties may seek resolution of the matter from this Court if resolution is not achieved.

11.     Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, BMC's fees and expenses incurred in connection with the Claims and Noticing Services shall be an administrative expense of the Debtor's chapter 11 estate.

12.     BMC may apply its retainer to all prepetition invoices, which retainer shall be replenished to the original retainer amount of $10,000 and thereafter BMC may hold the retainer during this chapter 11 case as security of payment of BMC's final invoice for services rendered and expenses incurred under the Retention Agreement.

13.     The Debtor is authorized to indemnify BMC under the terms of the Retention Agreement, subject to the following modifications:

    a.     BMC shall not be entitled to indemnification, contribution, or reimbursement pursuant to the Retention Agreement for services other than the Claims and Noticing Services provided under the Retention Agreement, unless such services and the indemnification, contribution, or reimbursement therefor are approved by the Court;

    b.     Notwithstanding anything to the contrary in the Retention Agreement, the Debtor shall have no obligation to indemnify BMC, or provide contribution or reimbursement to BMC, for any claim or expense that is either: (i) judicially determined (the determination having become final) to have arisen from BMC's gross negligence, willful misconduct, or fraud; (ii) for a contractual dispute in which the Debtor alleges the breach of BMC's contractual obligations if the Court determines that indemnification, contribution, or reimbursement would not be permissible pursuant to *In re United Artists Theatre Co.*, 315 F.3d 217 (3d Cir. 2003), or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which Claims and Noticing Agent should not receive indemnity, contribution, or reimbursement under the terms of the Retention Agreement as modified by this Order;

    c.     If, before the earlier of (i) the entry of an order confirming a chapter 11 plan in this chapter 11 case (that order having become a final order no longer subject to appeal), or (ii) the entry of an order closing this chapter 11 case, BMC believes that it is entitled to the payment of any amounts by the Debtor on account of the Debtor's indemnification, contribution and/or reimbursement obligations under the Retention Agreement (as modified by this Order), including without limitation the advancement of defense costs, BMC must file an application therefor in this Court, and the Debtor may not

4

pay any such amounts to BMC before the entry of an order by this Court approving the payment. This paragraph is intended only to specify the period of time under which the Court shall have jurisdiction over any request for fees and expenses by BMC for indemnification, contribution, or reimbursement, and not a provision limiting the duration of the Debtor's obligation to indemnify BMC. All parties in interest shall retain the right to object to any demand by BMC for indemnification, contribution, or reimbursement.

14.     In the event BMC is unable to provide the Claims and Noticing Services, BMC shall immediately notify the Clerk and the Debtor's counsel and cause all original proofs of claim and computer information to be turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtor's counsel.

15.     The Debtor may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for services that are to be performed by BMC but are not specifically authorized by this Order.

16.     BMC shall not cease providing Claims and Noticing Services during this chapter 11 case for any reason, including nonpayment, without an order of the Court.

17.     In the event of any inconsistency between the Retention Agreement, the Section 156(c) Application, and this Order, this Order shall govern.

18.     The Debtor and BMC are authorized to take all action necessary to effectuate the relief granted in this Order.

19.     Notwithstanding Bankruptcy Rule 6004(h) or any provision of the Federal Rules of Bankruptcy Procedure to the contrary, this Order is immediately effective and enforceable upon its entry.

20.     This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

## EXHIBIT B

**Feil Declaration**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| RETROTOPE, INC.,[1] | ) Case No. 22-10228 (___) |
| | ) |
| Debtor. | ) |
| | ) |

**DECLARATION OF TINAMARIE FEIL IN SUPPORT**
**OF APPLICATION OF THE DEBTOR FOR ENTRY OF ORDER**
**APPOINTING BMC GROUP, INC. AS**
**CLAIMS AND NOTICING AGENT EFFECTIVE AS OF PETITION DATE**

I, Tinamarie Feil, being duly sworn, state the following under penalty of perjury and that the following is true to the best of my knowledge, information, and belief:

1.      I am the President of BMC Group, Inc., a global administrative services firm whose main offices for bankruptcy related claims and notice processing is located at 3732 W 120th Street, Hawthorne, CA 90250. I am authorized to submit this declaration (this "Declaration") in support of the *Application of the Debtor for Entry of Order Appointing BMC Group, Inc. as Claims and Noticing Agent Effective as of Petition Date* (the "Section 156(c) Application").[2] Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      BMC is one of the country's leading chapter 11 administrators, with significant expertise in noticing, claims administration, soliciting, balloting, and facilitating other administrative aspects of chapter 11 cases. BMC has acted as the claims and noticing agent in

---

[1] The Debtor in this chapter 11 case, its jurisdictions of organization, and the last four digits of its U.S. taxpayer identification number is Retrotope, a Delaware corporation (8003).  The Debtor's corporate headquarters is located at 4300 El Camino Real, Suite 201, Los Altos, CA 94022.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Section 156(c) Application.

numerous recent cases of varying size and complexity, including the following recent cases filed

in this District: *In re Lear Capital.*, No. 22-10165 (BLS) (Bankr. D. Del. 2022); *In re Sharity*

*Ministries, Inc.*, 21-11001 (Bankr. D. Del. 2021); *In re YogaWorks*, 20-12599 (Bankr. D. Del,

2020); *In re Llednara Holdings, Inc.*, 20-11941 (Bankr. D. Del. 2020); *In re SGR Winddown, Inc.*,

19-11973 (Bankr. D. Del. 2019); *In re JRV Group USA, Inc.*; 19-11095 (Bankr. D. Del. 2019); *In*

*re Education Management II, LLC*, 18-11494 (Bankr. D. Del 2018); *In re Kiko USA, Inc.*, 18-

10069 (Bankr. D. Del. 2018); *In re Aerospace Holdings, Inc.*, 17-10635 (Bank. D. Del. 2017); *In*

*re Venoco, Inc.*, 16-10655 (KG) (Bankr. D. Del. 2016); and *In re Restaurants Acquisition I, LLC*,

15-12406 (Banrk. D. Del. 2015).

3.      As agent and custodian of the Court records pursuant to 28 U.S.C. § 156(c), BMC

will perform, at the request of the Clerk's office, the noticing and claims services specified in the

Section 156(c) Application and Retention Agreement. In addition, at the Debtor's request, BMC

will perform such other claims and noticing services specified in the Section 156(c) Application.

4.      BMC represents, among other things, the following:

a.      BMC is not a creditor of the Debtor;

b.      BMC will not consider itself employed by the United States government
        and shall not seek any compensation from the United States government in
        its capacity as the Debtor's Claims and Noticing Agent in this chapter 11
        case;

c.      By accepting employment in this chapter 11 case, BMC waives any rights
        to receive compensation from the United States government in connection
        with its role as Claims and Noticing Agent in this chapter 11 case; BMC
        anticipates, however, that it may receive compensation from the United
        States government if requested to serve notice(s) on behalf of the Office of
        the United States Trustee in this case;

d.      In its capacity as the Claims and Noticing Agent in this chapter 11 case,
        BMC will not be an agent of the United States and will not act on behalf of
        the United States;

e.     BMC will not employ any past or present employees of the Debtor in connection with its work as the Claims and Noticing Agent in this chapter 11 case;

f.     BMC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged;

g.     In its capacity as Claims and Noticing Agent in this chapter 11 case, BMC will not intentionally misrepresent any fact to any person;

h.     BMC shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

i.     BMC will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

j.     None of the services provided by BMC as Claims and Noticing Agent in this chapter 11 case shall be at the expense of the Clerk's office.

5.     Although the Debtor does not propose to retain BMC under section 327 of the Bankruptcy Code pursuant to the Section 156(c) Application (such retention will be sought by separate application), I have reviewed  the names of identified potential parties in interest (the "Potential Parties in Interest") in this chapter 11 case. At this time, and as set forth in further detail herein, BMC is not aware of any relationship that would present a disqualifying conflict of interest. Should BMC discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, BMC will use reasonable efforts to file promptly a supplemental declaration.

6.     In addition, to the best of my knowledge, none of BMC's employees are related to bankruptcy judges in the District of Delaware, the United States Trustee for Region 3, any attorney known by BMC to be employed in the Office of the United States Trustee serving the District of Delaware or are equity security holders of the Debtor.

7.      To the best of my knowledge, and based solely upon information provided to me by the Debtor, and except as provided herein, neither BMC, nor any of its professionals, has any materially adverse connection to the Debtor, its creditors or other relevant parties. BMC may have relationships with certain of the Debtor's creditors as vendors or in connection with cases in which BMC serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for other chapter 11 debtors.

8.      BMC has working relationships with certain of the professionals retained by the Debtor and other parties herein but such relationships are completely unrelated to this chapter 11 case. BMC has represented, and will continue to represent, clients in matters unrelated to this chapter 11 case, and has had, and will continue to have, relationships in the ordinary course of its business with certain professionals in connection with matters unrelated to this chapter 11 case.

9.      Based on the foregoing, I believe BMC is a "disinterested person" as that term is referenced in section 327(a) of the Bankruptcy Code and as defined in section 101(14) of the Bankruptcy Code. Moreover, to the best of my knowledge, neither BMC nor any of its partners or employees hold or represent any interest materially adverse to the Debtor's estate with respect to any matter upon which BMC is to be engaged.

I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Dated: March 21, 2022                          /s/ Tinamarie Feil
                                               Tinamarie Feil
                                               President of BMC Group,
                                               Inc.

**<u>EXHIBIT C</u>**

**Retention Agreement**



# AGREEMENT FOR SERVICES

This Agreement for services (the "Services Agreement" or "Agreement") is entered

RETROTOPE INC.

between _____ (collectively "Customer") and BMC Group, Inc. ("BMC"). The services rendered by BMC pursuant to this Agreement will commence on the date first set forth below and will continue until the Agreement is terminated as set forth below.

## I. SERVICES

    A. BMC agrees to provide Customer with services assisting the Customer, Customer's counsel "Counsel" and Office of the Clerk with legal noticing and compilation, administration, evaluation and production of documents and information necessary to support a restructuring effort. At Customer's, Counsel's or the Clerk's Office's direction, as the case may be, and in accordance with any court orders or rules in the bankruptcy case(s) (including any court order authorizing BMC's engagement), BMC will (1) prepare and serve those notices required in the bankruptcy cases; (2) receive, record and maintain copies of all proofs of claim and proofs of interest filed in the bankruptcy cases; (3) create and maintain the official claims register(s); (4) receive and record all transfers of claims pursuant to Bankruptcy Rule 3001(e); (5) maintain an up-to-date mailing list for all entities who have filed proofs of claim and/or requests for notices in the bankruptcy cases; (6) assist Customer and Counsel with the administrative management of claims and notice data; (7) if requested, print, mail and tabulate ballots for purposes of plan voting; (8) create and maintain a case-specific website, (9) assist with the production of reports, exhibits and schedules of information or use by the Customer, it's counsel, or to be delivered the Court, the Clerk's Office, the U.S. Trustee or third parties; and (10) provide other technical and document management services of a similar nature requested by Customer or the Clerk's office.

    B. BMC also agrees to provide the Customer with consulting services regarding legal notice, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation od schedules of assets and liabilities and statement of financial affairs, communications, confidential online workspaces and data rooms (publication to which should not violate the confidentiality provisions of this agreement) and any other service agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (Collectively the "Services").

C. The Customer acknowledges and agrees that BMC will often take direction from the company's representatives, employees, agents and/or professionals with respect to providing Services hereunder.  The parties agree that BMC may rely upon, and the Customer agrees to be bound by, any request, advice or information provided by the Customer and its agents to the same extent as if such requests, advice or information were provided by the Customer.

D. Customer agrees that none of the Services provided by BMC contain legal advice or opinion, and neither BMC nor its personnel shall be deemed to practice law thereunder.

## II. TECHNOLOGY SUPPORT

BMC agrees to provide computer software support and to educate and train Customer in the use of the support software, provide BMC's standard reports as well as consulting and programming support for Customer requested reports, program modifications, database modification, and/or other features.

## III. TERMS AND CONDITIONS

A. This Services Agreement is effective as of the date of its acceptance by both the Customer and BMC.  BMC acknowledges, however, that a court order approving BMC's engagement may be required for employment in the Customer's bankruptcy matter.

B. If the Customer commences a case under chapter 11 of the Bankruptcy Code, the Customer shall promptly file applications with the Bankruptcy Court to retain BMC (i) as claims and noticing agent pursuant to 28 U.S.C Section 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. Section 156(c). The form and substance of such applications and any order approving them shall be reasonably acceptable to BMC.

C. If any Customer Chapter 11 case convers to a case under chapter 7 of the Bankruptcy Code, BMC will continue to be paid for Services pursuant to Section 156(c) and the terms of the Services Agreement.

## IV. PRICES, CHARGES AND PAYMENT

A. BMC will provide Services upon request or agreement of the Customer, in accordance with the Rates schedule attached.

B.  BMC reserves the right to make reasonable increases to the unit prices, charges and professional service rates reflected in the Pricing Schedule on an annual basis effective January 1, 2023.  BMC shall provide thirty (30) days' prior written notice to Customer of such proposed increases.

C.  Customer agrees to reimburse BMC for any out-of-pocket expenses necessarily incurred.

D.  Wire transfer information for the transmission of payments is as follows:

>   Bank Name - Bridge Bank, N.A.
>   ABA/Routing # - 121143260
>   Account Name - BMC Group, Inc.
>   Account # - 0102705027

E.  In connection with high volume noticing, or publication services, Customer may be required to prepay BMC estimated postage or publication amounts with respect to each notice.  Alternatively, Customer may authorize BMC to cause courier's charges (such as UPS or FedEx) to be stated to Customer's own account with such courier.

F.  BMC agrees to regularly invoice Customer and Customer agrees that the amount invoiced is due and payable, subject to a 10% discount if paid within fifteen (15) days. If any amount is unpaid as of thirty (30) days from receipt of the invoice, Customer further agrees to pay a late charge, calculated at one and one-half percent (1-1/2%) of the amount unpaid, accruing monthly from the invoice date. In the case of a dispute in the invoice amount, notice shall be given to BMC within ten (10) days of receipt of the invoice by Customer. Late charges shall not accrue on any amounts in dispute. The undisputed balance of the invoice amount is due and payable in the normal course.

G.  Customer shall pay or reimburse all taxes applicable to services performed under this Agreement and, specially, taxes based on disbursements made on behalf of Customer, notwithstanding how such taxes may be designated, levied or based. This provision is intended to include sales, use and excise taxes, among other taxes, but is not intended to include personal property taxes or taxes based on net income of BMC.

H.  To the extent permitted by applicable law, BMC shall receive a retainer in the amount of _$10,000.___ (the "Retainer") that may be held by BMC as security for Customer's payment obligations under the Agreement. The Retainer is due upon execution of this Agreement. BMC shall be entitled to hold the Retainer until the termination of the Agreement. BMC may use the Retainer against unpaid fees and expenses hereunder.  BMC may use the Retainer against all pre-petition fees

and expenses, the Retainer will then be replenished to the original amount by the Customer.  Following termination of the Agreement, BMC shall return to Customer any amount of the Retainer that remains following application of the Retainer to the payment of unpaid invoices.

I.  In the event of termination pursuant to Section VII hereof, Customer shall be liable for all amounts then accrued and/or due and owing to BMC under the Agreement.

## V. RIGHTS OF OWNERSHIP

A.  The parties understand that the software programs and other similar proprietary materials furnished by BMC pursuant to this Agreement and/or developed during the course of this Agreement by BMC are the sole property of BMC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, subroutines, procedural manuals, and documentation.  Customer agrees not to copy or permit others to copy for unauthorized use the source code from the support software or any other programs or similar proprietary materials furnished pursuant to this Agreement.

B.  Customer further agrees that any ideas, concepts, know-how or techniques relating to data processing or BMC's performance of its services developed during the course of its Agreement by BMC shall be exclusive property of BMC. Fees and Expenses paid by the Customer do not vest in the Customer any rights in such property.

C.  The Customer agrees not to copy or permit others to copy the source code from the support software or any other programs or materials furnished/provided under the Services Agreement.

## VI. CUSTOMER DATA

A.  The Customer is responsible for, and BMC does not verify, the accuracy of the programs, data and other information it or any agent of the Customer submits for processing to BMC and for the output of such information, including without limitation, with respect to preparation of statement of financial affairs and schedules of assets and liabilities (collectively "SOFA's and Schedules").  BMC bears no responsibility for the accuracy and content of SOFA's and Schedules, and the Customer is deemed hereunder to have approved and reviewed all SOFA's and Schedules filed on its behalf.

B.  The Customer agrees and represents and warrants to BMC that before delivery of any information to BMC: (i) the Customer has full authority to deliver such information to BMC, (ii) BMC is authorized to use such information to perform

Services hereunder,

C. Any data, storage media, programs or materials furnished to BMC by the Customer may be retained by BMC until the Services hereunder are paid in full. The Customer shall remain liable for all fees and expenses incurred by BMC under this Agreement as a result of data storage or other materials maintained, stored or disposed by BMC.

D. The Customer agrees to initiate and maintain back up files that would allow the Customer to regenerate or duplicate all programs, data or information provided by Customer to BMC.

E. Upon Customer's request at any time or times while this Agreement is in effect, BMC shall immediately deliver to Customer at Customer's sole expense, any or all of the nonproprietary data, information and records held or controlled by BMC pursuant to this Agreement, in the form requested by Customer. Any information, data and records, in whatever form existing, whether provided to BMC by Customer or developed by BMC for Customer under this Agreement, may be retained by BMC until all amounts due under this Agreement are paid in full, it being understood that neither party asserts rights of ownership in the official claims register or materials filed with BMC as an agent of the court.

F. Customer shall remain liable for all charges imposed under this Agreement as a result of data or physical media maintained by BMC. BMC shall dispose of the data and media in the manner requested by Customer. Customer agrees to pay BMC for reasonable expenses incurred as a result of the disposition of the data or media. After giving Customer thirty (30) days' advance notice, BMC reserves the right to dispose of data or media maintained by BMC for Customer if Customer has not utilized the services provided herein for a period of at least ninety (90) days or if Customer has not paid all charges due to BMC.

## VII.  FORCE MAJEURE

Whenever performance by BMC of any of its obligations hereunder is materially prevented or impacted by reason of any act of god, government requirement, strike, lock-out or other industrial or transportation disturbance, fire flood, epidemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, of by reason of any other matter beyond BMC's reasonable control, then such performance shall be excused, and the Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## VIII. ARBITRATION

Any dispute arising out of this Services Agreement or the breach thereof shall be finally

resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. There shall be three arbitrators' names in accordance with such rules. The arbitration shall be conducted in the English language in accordance with the United States Arbitration Act. Notwithstanding the foregoing, upon the commencement of any chapter 11 case(s) by the Customer, any disputes related to this Services Agreement shall be decided by the bankruptcy court handling such chapter 11 case(s).

## IX. ATTORNEYS FEES

In the event that any legal action, including an action for declaratory relief, is brought to enforce the performance of or interpret the provisions of the Services Agreement, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs and other related expenses.

## X. SYSTEM IMPROVEMENTS

As part of its ongoing efforts to improve our service offering, BMC is constantly improving its proprietary database and related reports. BMC therefor reserves the right to make changes in operating procedures/systems, programming languages, application programs and time-period accessibility so long as such changes do not materially interfere with ongoing services provided to the Customer in accordance with the Services Agreement and/or Customer's chapter 11 filing.

## XI. NON-SOLICITATION

Customer agrees that it shall not, directly or indirectly, solicit for employment, employ or otherwise retain staff of BMC during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless BMC provides prior written consent.

## XII. CONFIDENTIALITY

BMC agrees to, and shall cause its servants, agents, employees, licensees, and subcontractors, to safeguard and keep confidential all data, records, information and communications of any sort or form, regardless of whether written, oral, visual or otherwise recorded or transmitted, with respect to Customer, but excluding such data, records, information and communications that exist in the public domain by reason other than a breach of BMC's obligations under this Section. BMC will use the

Confidential Information only for the benefit of Customer in connection with the provision of services under this Agreement. Customer agrees to, and will cause its servants, agents, employees, licensees, and subcontractors to keep all information with respect to BMC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body, it may, upon not less than five business days' written notice to the other party, release the required information. The obligations set forth in this paragraph shall survive termination of this Services Agreement.

### XIII. TERMINATION

A. This Agreement shall remain in force until terminated by (i) Customer, or, by BMC upon thirty (30) days' prior written notice to the other party; or (ii) the failure of the Customer to pay BMC invoices for more than 60 days from the date of the invoice or accrual of invoices or unpaid services in excess of the Retainer held by BMC where BMC reasonably believes it will not be paid.

B. If this agreement is terminated after BMC is retained pursuant to Bankruptcy Court Order, the Customer promptly shall seek entry of a Bankruptcy Court order discharging BMC of its duties under such retention, which order shall be in form and substance reasonably acceptable to BMC.

C. In the event that this contract is terminated, regardless of the reason for such termination, BMC shall cooperate with Customer to orderly transfer to Customer or its designee (or destroy, at Customer's direction) data, records and information in its possession or control and to effect an orderly transition of record-keeping functions. BMC shall provide all necessary staff, services and assistance required for an orderly transfer and transition. Customer agrees to pay for such services in accordance with BMC's then existing prices for such services.

### XIV. NO REPRESENTATIONS OR WARRANTIES

BMC makes no representation or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

### XV. INDEMNIFICATION

Except with respect to breaches under Section XII "Confidentiality" above, Customer shall indemnify and hold BMC, its officers, employees and agents harmless against any

and all losses, claims, damages, judgments, liabilities and expense whether direct or indirect (including reasonable counsel fees and expenses) resulting from action taken or permitted by BMC in good faith with due care and without negligence in reliance upon instructions or orders received from Customer as to anything arising in connection with its performance under this Agreement. The Customers indemnification obligation shall survive the termination of this agreement.

## XVI. LIMITATION OF LIABILITY

Except as expressly provided herein, BMC's liability to the Customer for any losses, unless due to BMC's gross negligence or willful misconduct, shall be limited to the amount paid by the Customer for the portion of the particular work that gave rise to the alleged loss. In no event shall BMC's liability to the Customer for any losses arising out of this services Agreement exceed the total amount actually paid to BMC for Services provided hereunder. In no event shall BMC be liable for any direct, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

## XVII. NOTICES

Any notices or communications required or permitted to be given by this Agreement must be (i) given in writing and (ii) personally delivered or mailed, by prepaid, certified mail or overnight courier, or transmitted by facsimile or electronic mail transmission (including PDF), to the party to whom such notice or communication is directed, to the mailing address or regularly-monitored electronic mail address of such party as follows:

**If to BMC Group, Inc.:**

BMC Group, Inc.
Attn: Tinamarie Feil
600 1st Avenue
Seattle, WA 98104
Email: tfeil@bmcgroup.com
Telephone: 206.499.2169

**If to the Customer:**

_____

_____

**With a copy to:**

_____

_____

Any such notice or communication shall be deemed to have been given on (i) the day such notice or communication is personally delivered, (ii) three (3) days after such notice or communication is mailed by prepaid certified or registered mail, (iii) one (1) working day after such notice or communication is sent by overnight courier, or (iv) the day such notice or communication is faxed or sent electronically, provided that the sender has received a confirmation of such fax or electronic transmission. A party may, for purposes of this Agreement, change his, her or its address, fax number, email address or the person to whom a notice or other communication is marked to the attention of, by giving notice of such change to the other party pursuant to this Section XVII.

## XVIII. APPLICABLE LAW

This agreement shall be construed in accordance with the laws of the State of Washington, without regards to that state's provisions for choice of law and may be modified only by a written instrument duly executed by an authorized representative of Customer and an officer of BMC.

## XIX. ENTIRE AGREEMENT/ MODIFICATIONS/SEVERABILITY

Each party acknowledges that it has read this Services Agreement, understands it, and

agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Services Agreement. The Services Agreement may not be modified or altered by written instrument duly executed by both parties. Customer represents that it has the authority to enter into this Agreement, may be subject to bankruptcy court approval, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. In the event of any conflict between a term of this Agreement and any order of the court exercising jurisdiction over the Customer bankruptcy case, the term(s) of the order shall govern.

## XX. ASSIGNMENT

The Services Agreement and the rights and obligations of BMC and the Customer hereunder shall bind and inure to the benefit of any successors or assigns hereto.

## XXI. EFFECTIVENESS OF COUNTERPARTS

This Services Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement. This services Agreement will become effective when one or more of the counterparts have been signed by each of the parties and delivered to the other party.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement.

**BMC Group, Inc. Representative:**     **Customer Representative:**

_Tinamarie Feil_                         _Daniel Scouler_
Signature                                Signature

TINAMARIE FEIL                           DANIEL SCOULER
Printed Name                             Printed Name

PRESIDENT                                DIRECTOR
Title                                    Title

# RATES

## BASIC PRINT, MAIL & NOTICING SERVICE

Copy/Print .................................................. $0.10
Fold/Collate, Insert, Post ........................... Incuded (no hourly charges)
Envelopes .................................................. Varies by size
Postage, Courier ........................................ Discounted rates; reimbursed at cost
Mass Data Transmission ............................. Varies by media (CD-Rom, Flash, USB, FTP)
Certified Electronic Noticing Service ......... $50/1000
Legal Notice Publication ............................ Quote (BMC discounted rate)

## CLAIMS MANAGEMENT

eClaims & eBallot Platform Hosting ........... Included
Filed Claim Receipt, Process, Docketing ...... At Clerical hourly rate
Add'l Scans & Link to DB ........................... $0.08/image
Schedules Data Collection & Prep .............. Upon request at hourly rates
Analysis & Reconciliation .......................... Upon request at hourly rates
Secure Client Access ................................. No charge, unlimited authorized users
Ballot Solicitation & Tabulation ................ Upon request at hourly rates

## DOCUMENT & INFORMATION MANAGEMENT

Document Imaging & link to DB .................. $0.08/image
Live Operator Call Center .......................... $60 per hour
Automated (IVR) Call Center ..................... $0.30 per minute
Data Storage & Maintenance ..................... $0.08/record/month [CAP: $800/mo]
Public Case Website Hosting ..................... Waived
SmartRoom (VDR) ...................................... Included
Physical Document Storage ....................... $1.45/box/month [Waived]

## HOURLY RATES

Clerical & Document Custody .................... $25-$40 /hour
Analysts/Case Support Associates ............ $65-$90 /hour
Technology/Programming .......................... $75-$125 /hour
Consultants/Senior Consultants ................ $95-$125 /hour
Project Manager/Director ......................... $130- $175 /hour