## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| RETROTOPE, INC.,[1] | Case No. 22-10228 (JTD) |
| Debtor. | **Confirmation Hearing Date: July 11, 2022 at 2:00 p.m. (ET)** |
|  | **Confirmation Obj. Deadline: June 30, 2022 at 4:00 p.m. (ET)** |

## FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION OR REORGANIZATION OF RETROTOPE, INC.

Dated: June 23, 2022

**WOMBLE BOND DICKINSON (US) LLP**

Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
Morgan L. Patterson (DE Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone:  (302) 252-4320
Facsimile:  (302) 252-4330
Email:  matthew.ward@wbd-us.com
Email:  ericka.johnson@wbd-us.com
Email:  morgan.patterson@wbd-us.com

*Counsel to the Debtor*

---

[1] The Debtor in this chapter 11 case, its jurisdiction of organization, and the last four digits of its U.S. taxpayer identification number is Retrotope, a Delaware corporation (8003).  The Debtor's corporate headquarters is located at 4300 El Camino Real, Suite 201, Los Altos, CA 94022.

## INTRODUCTION

Capitalized terms used in this chapter 11 plan shall have the meanings set forth in Article I.A.  The Debtor proposes this Plan for the resolution of outstanding Claims against, and Interests in, the Debtor.  The Debtor is the proponent of the Plan within the meaning of section 1129 of the Bankruptcy Code.

**ALL HOLDERS OF CLAIMS AND INTERESTS, TO THE EXTENT APPLICABLE, ARE ENCOURAGED TO READ THE PLAN AND THE EXHIBITS TO THE PLAN IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. TO ASSIST YOU IN YOUR REVIEW, PLEASE NOTE THE LIST OF DEFINITIONS AT THE START OF THE PLAN AND THE SECTION OF FREQUENTLY ASKED QUESTIONS AT THE END OF THE DOCUMENT.**

**IN ADDITION TO CASTING YOUR VOTE TO ACCEPT OR REJECT THE PLAN, YOU MAY OBJECT TO CONFIRMATION OF THE PLAN.  IF YOU WISH TO OBJECT TO CONFIRMATION OF THE PLAN, THE DEBTOR HAS PROPOSED <u>JUNE 30, 2022 at 4:00 P.M.  (PREVAILING EASTERN TIME)</u>[2] AS THE DEADLINE BY WHICH YOU MUST DO SO.**

**THE DEBTOR HAS PROPOSED THAT YOUR BALLOT STATING HOW YOU ARE VOTING ON THE PLAN MUST BE RETURNED BY <u>JUNE 30, 2022</u>.**

**THE BALLOT MUST BE MAILED TO THE FOLLOWING ADDRESS:**

**<u>If by Regular Mail:</u>**
**BMC Group**
**Attn: Retrotope Ballot Processing**
**P.O. Box 90100**
**Los Angeles, CA 90009**

**<u>If by Messenger or Overnight Delivery:</u>**

**BMC Group**
**Attn: Retrotope Ballot Processing**
**3732 West 120th Street**
**Hawthorne, CA 90250**

**A BALLOT MAY ALSO BE SUBMITTED ELECTRONICALLY AT THE FOLLOWING LINK: <u>HTTPS://BALLOTS.BMCGROUP.COM/RETROTOPE</u>**

**A HEARING ON THE CONFIRMATION OF THE PLAN IS SCHEDULED FOR <u>JULY 11, 2022 AT 2:00 P.M. (PREVAILING EASTERN TIME)</u> BEFORE THE HONORABLE JOHN T. DORSEY, IN COURTROOM NO. 5, 824 N. MARKET STREET, 5TH FLOOR, WILMINGTON, DELAWARE 19801.**

---

[2] A hearing to consider the proposed plan solicitation procedures is scheduled for June 10, 2022 at 1:00 p.m. (ET).

**ARTICLE XI D. OF THE PLAN CONTAINS RELEASES BY THE DEBTOR OF ANY AND ALL CLAIMS AGAINST THE "RELEASED PARTIES" AS DEFINED IN THE PLAN.**

**ARTICLE XI E. OF THE PLAN CONTAINS RELEASES BY HOLDERS OF CLAIMS AND INTERESTS OF ANY AND ALL CLAIMS AGAINST THE "RELEASED PARTIES" AS DEFINED IN THE PLAN.**

**ARTICLE XI F. OF THE PLAN CONTAINS AN EXCULPATION BY BOTH THE HOLDERS OF CLAIMS AND INTERESTS AND THE DEBTOR OF ANY AND ALL CLAIMS AGAINST THE "EXCULPATED PARTIES" AS DEFINED IN THE PLAN.**

**YOUR RIGHTS MAY BE AFFECTED BY THIS PLAN.  YOU SHOULD CONSIDER DISCUSSING THIS DOCUMENT WITH AN ATTORNEY.**

WBD (US) 56710147v2

**CONCISE SUMMARY OF THE PLAN AND DISTRIBUTIONS TO CREDITORS**

The Debtor is soliciting offers for a Restructuring Transaction. The Court has approved a Stalking Horse APA that contemplates an Asset Sale Restructuring, subject to higher or otherwise better offers. The Sale Proceeds from the Stalking Horse APA are sufficient to pay classes 1-3 under the Plan in full, and a portion of interests in class 4. The Stalking Horse APA is subject to higher or otherwise better offers and therefore, the proposed treatment of Claims and Interests under the Plan may improve. Bids are due on June 22, 2022 and if multiple bids are received, an auction is scheduled to occur on June 27, 2022. The chart below reflects the proposed treatment of Claims and Interests under the Plan:

| Class | Claim/ Equity Interest | Treatment of Claim/Interest | Estimated Amount of Unpaid Allowed Claims on Effective Date | Projected Recovery Under the Plan |
|---|---|---|---|---|
| N/A | **DIP Claims** | On or before the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, the DIP Claims shall be repaid indefeasibly in full in Cash; *provided* that to the extent the Stalking Horse APA is the Successful Bidder the DIP Claims shall be satisfied through a credit bid on the terms set forth in the Stalking Horse APA. | $10,000,000 | 100% |
| N/A | **Professional Fee Claims** | Upon Court approval Professional Fee Claims shall be promptly paid from the Cash up to the full Allowed amount. | $1,600,000 | 100% |
| N/A | **Administrative Claims** | Holder of an Allowed Administrative Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim Cash in full from the Plan Administrator Assets. | $1,300,000 | 100% |
| N/A | **Priority Tax Claims** | Holder of an Allowed Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim Cash in full from the Plan Administrator Assets. | $1,000.00 | 100% |

4

| 1 | **Other Secured Claims** | Each Holder of an Allowed Other Secured Claim will receive, at the Debtor's election: (a) Cash in full from the Plan Administrator Assets or (b) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (c) Reinstatement of such Claim; or (d) other treatment rendering such Claim Unimpaired | $0 | N/A |
|---|---|---|---|---|
| 2 | **Other Priority Claims** | Each Holder of an Allowed Other Priority Claim will receive Cash in full from the Plan Administrator Assets. The failure to object to Confirmation by a Holder of an Allowed Other Priority Claim shall be deemed to be such Holder's consent to receive  treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code | $0 | N/A |
| 3 | **General Unsecured Claims** | Each Holder of an Allowed General Unsecured Claims shall receive Cash in full from the Sale Proceeds. | $2,256,000___ — | 100% |
| 4 | **Series D Interests** | Each Holder of Series D Interest shall receive its Pro Rata share of the Sale Proceeds up to $0.80 per share plus all declared but unpaid dividends on such shares of Series D Interests. <br><br> If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date. | $30,673,307 | 6.6% |
| 5 | **Series C Interests** | If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series D Interests $0.80 per share, plus all declared but unpaid dividends on such shares of Series D Interests, then each Holder of a Series C Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.55 per share plus all declared but unpaid dividends on such shares of Series C Interests. <br><br> If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date. | $0 | 0% |
| 6 | **Series B Interests** | If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series C Interests $0.55 per share, plus all declared but unpaid dividends on such | $0 | 0% |

| | | | | |
|---|---|---|---|---|
| | | shares of Series C Interests, then each Holder of a Series B Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.50 per share plus all declared but unpaid dividends on such shares of Series B Interests.<br><br>If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date. | | |
| 7 | **Series A-2 Interests** | If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series B Interests $0.50 per share, plus all declared but unpaid dividends on such shares of Series B Interests, then each Holder of a Series A-2 Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.27 per share plus all declared but unpaid dividends on such shares of Series A-2 Interests.<br><br>If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date. | $0 | 0% |
| 8 | **Series A-1 Interests** | If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series A-2 Interests $0.27 per share, plus all declared but unpaid dividends on such shares of Series A-2 Interests, then each Holder of a Series A-1 Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.23 per share plus all declared but unpaid dividends on such shares of Series A-1 Interests.<br><br>If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date. | $0 | 0% |
| 9 | **Series A Interests** | If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series A-1 Interests $0.23 per share, plus all declared but unpaid dividends on such shares of Series A-1 Interests, then each Holder of a Series A Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.125 per share plus all declared but unpaid dividends on such shares of Series A Interests. | $0 | 0% |

WBD (US) 56710147v2

| | | | | |
|---|---|---|---|---|
| | | If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date. | | |
| 10 | **Common Interests** | If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series A Interests $0.23 per share, plus all declared but unpaid dividends on such shares of Series A Interests, then each Holder of Common Interests shall receive its Pro Rata share of the remaining Sales Proceeds.<br><br>If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date. | $0 | 0% |

WBD (US) 56710147v2

## ARTICLE I.
## DEFINED TERMS, RULES OF INTERPRETATION,
## COMPUTATION OF TIME, AND GOVERNING LAW

A.    *Defined Terms*

As used in this Plan, capitalized terms have the meanings set forth below.

1.    "*Administrative Claim*" means a Claim for costs and expenses of administration of the Debtor's Estate pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date and through the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Allowed Professional Fee Claims; (c) all Allowed requests for compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Case pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code; and (d) all DIP Claims.

2.    "*Administrative Claims Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, except as otherwise set forth in the Plan or a Final Order, which: (a) with respect to Administrative Claims other than Professional Fee Claims, shall be 30 days after the Effective Date; and (b) with respect to Professional Fee Claims, shall be 30 days after the Effective Date; *provided* that Filing requests for payment of Administrative Claims is not required, where the Plan, Bankruptcy Code, or a Final Order does not require such Filing.

3.    "*Affiliate*" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

4.    "*Asset Purchase Agreement*" means one or more asset purchase agreements pursuant to which the Asset Sales are consummated.

5.    "*Asset Sales*" means the sale or sales of all or substantially of the Debtor's assets under this Plan pursuant to an Asset Purchase or Licensing Agreement or as otherwise authorized by order of the Bankruptcy Court or the Bankruptcy Code.

6.    "*Asset Sale Restructuring*" means a restructuring under this Plan providing for the Asset Sales.

7.    "*Allowed*" means, with respect to any Claim, except as otherwise provided herein: (a) a Claim that is evidenced by a Proof of Claim timely Filed by the Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Court a Proof of Claim is not or shall not be required to be Filed); (b) a Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) a Claim Allowed pursuant to the Plan, any stipulation approved by the Court, any contract, instrument, indenture, or other agreement entered into or assumed in connection with the Plan, or a Final Order of the Court; *provided* that, with respect to a Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Court, or if such an objection is so interposed, such Claim shall have been Allowed by a Final Order.  Any Claim that

8

has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim or Interest is or has been timely Filed, is not considered Allowed and shall be expunged without further action by the Debtor and without further notice to any party or action, approval, or order of the Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes.  A Proof of Claim Filed after the Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim.  "Allow" and "Allowing" shall have correlative meanings.

8.      "*Avoidance Actions*" means any and all avoidance, recovery, subordination, or other claims, actions, or remedies which the Debtor, the Debtor in possession, the Estates, or other appropriate parties in interest have asserted or may assert under chapter five of the Bankruptcy Code or under similar or related state or federal statutes and common law.

9.      "*Ballot*" means each of the ballot forms that are distributed to Holders of Interests in Classes that are impaired under the Plan and entitled to vote to accept or reject the Plan.

10.     "*Bankruptcy Code*" means title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as amended from time to time, as applicable to the Chapter 11 Case.

11.     "*Bankruptcy Court*" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Case, and, to the extent of the withdrawal of reference under 28 U.S.C. § 157 and/or the General Order of the District Court pursuant to section 151 of title 28 of the United States Code, the United States District Court for the District of Delaware.

12.     "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Case, promulgated under section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court, each as amended from time to time.

13.     "*Bar Date*" means May 20, 2022 and September 9, 2022 solely for Governmental Units.

14.     "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

15.     "Case Closing" means the date upon which the Bankruptcy Court issues the discharge and closes the Chapter 11 Case upon a showing that all payments contemplated under this Plan have been made.

16.     "*Cash*" means the legal tender of the United States of America or the equivalent thereof.

17.     "*Causes of Action*" means any claims, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in tort, law, equity, or otherwise.  Causes of

Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

18.     "*Chapter 11 Case*" means the case pending for the Debtor under chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

19.     "*Claim*" means a claim, as defined in section 101(5) of the Bankruptcy Code, asserted against a Debtor.

20.     "*Claims Objection Bar Date*" means the deadline for objecting to a Claim, which shall be on the date that is the later of (a) 180 days after the Effective Date and (b) such other period of limitation as may be specifically fixed by the Debtor or the Reorganized Debtor, as applicable, or by an order of the Bankruptcy Court for objecting to Claims.

21.     "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

22.     "*Class*" means a category of Claims or Interests under section 1122(a) of the Bankruptcy Code.

23.     "*Confirmation*" means the entry of the Confirmation Order on the docket of the Chapter 11 Case, subject to the conditions set forth in the Plan.

24.     "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case, within the meaning of Bankruptcy Rules 5003 and 9021.

25.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court, if any, to consider Confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code.

26.     "*Confirmation Order*" means an order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance satisfactory to the DIP Lenders.

27.     "*Consummation*" means the occurrence of the Effective Date.

28.     "*Cure Claim*" means a monetary Claim based upon a Debtor's defaults under any Executory Contract or Unexpired Lease at the time such contract or lease is assumed by such Debtor pursuant to section 365 of the Bankruptcy Code.

29.     "*Cure Notice*" means a notice of a proposed amount to be paid on account of a Cure Claim in connection with an Executory Contract or Unexpired Lease to be assumed under the Plan pursuant to section 365 of the Bankruptcy Code, which notice shall include: (a) procedures for objecting to proposed assumptions of Executory Contracts and Unexpired Leases; (b) Cure Claims to be paid in connection therewith; and (c) procedures for resolution by the Bankruptcy Court of

any related disputes, including, but not limit to the *Notice of Possible Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection With Transaction* [Docket No. 204] filed May 20, 2022.

30.    "*Cure/Assumption Objection Deadline*" means the date that is June 17, 2022; provided that if any Executory Contract or Unexpired Lease is added to the Schedule of Assumed Executory Contracts and Unexpired Leases after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, or an Executory Contract or Unexpired Lease proposed to be assumed by the Debtor or Reorganized Debtor is proposed to be assigned to a third party after the filing of the initial Schedule of Assumed Executory Contracts and Unexpired Leases, then the Cure/Assumption Objection Deadline with respect to such Executory Contract or Unexpired Lease shall be the earlier of (a) 14 days after service of the amended Schedule of Assumed Executory Contracts and Unexpired Leases with such modification and (b) the date of the scheduled Confirmation Hearing; provided further that the deadline to object to adequate assurance of future performance for a Purchaser other than the Stalking Horse Purchaser is June 29, 2022.

31.    "*D&O Liability Insurance Policies*" means all insurance policies (including any "tail policy") of the Debtor for liability of any current or former directors, managers, officers, and members.

32.    "*Debtor*" means Retrotope, Inc.

33.    "*DIP Claim*" means any Claim against the Debtor arising under the DIP Facility (as such term is defined in the DIP Orders) or the DIP Orders, including Claims for all principal amounts outstanding, interest, fees, expenses, costs, and other charges and obligations.

34.    "*DIP Loan Documents*" has the meaning set forth in the DIP Orders.

35.    "*DIP Facility*" has the meaning set forth in the DIP Orders.

36.    "*DIP Lender*" means RTMFP Enterprises Inc.

37.    "*DIP Orders*" means, collectively, the interim and final orders entered by the Bankruptcy Court authorizing the Debtor to enter into the DIP Loan Documents and incur postpetition obligations thereunder.

38.    "*Disallowed*" means, with respect to any Claim, a Claim or any portion thereof that: (a) has been disallowed by a Final Order; (b) is listed in the Schedules as zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Claim has been timely Filed or deemed timely Filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court or otherwise deemed timely Filed under applicable law or the Plan; (d) has been withdrawn by agreement of the applicable Debtor and the Holder thereof; or (e) has been withdrawn by the Holder thereof.

39.    "*Disbursing Agent*" means the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, or the Entity or Entities selected by the Debtor, the Reorganized Debtor, or the Plan Administrator to make or facilitate distributions contemplated under the Plan.

40.    "*Disputed*" means a Claim that is not yet Allowed.

41.    "*Distribution Amount*" means the Sale Proceeds, if any.

42.    "*Distribution Record Date*" means the date for determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions hereunder, which shall be (a) the Confirmation Date or (b) such other date as designated in a Final Order of the Bankruptcy Court.

43.    "*Distribution Reserve*" means Cash from the Plan Administrator or Reorganized Debtor, as applicable, in an amount equal to the distribution or distributions under applicable classes of Claims and Interests that shall be made on account of Disputed Claims when allowed, which Cash will be held by the Plan Administrator or Reorganized Debtor, as applicable, pending allowance of Disputed Claims, and then distributed on account of Allowed Claims in accordance with the Plan.

44.    "*DTC*" means the Depository Trust Company.

45.    "*Effective Date*" means, with respect to the Plan, the date that is a Business Day selected by the Debtor on which: (a) no stay of the Confirmation Order is in effect; (b) all conditions precedent specified in Article XII.A hereof have been satisfied or waived (in accordance with Article XII.B); and (c) the Plan is declared effective.

46.    "*Entity*" shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

47.    "*Equitization Restructuring*" means the transactions and reorganization contemplated by, and pursuant to, this Plan under which the New Retrotope Interests are distributed, among other things.

48.    "*Estate*" means the estate created for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

49.    "*Exculpated Parties*" means, collectively, and in each case in its capacity as such: (a) the Debtor; (b) the Debtor's directors and officers who served during the Chapter 11 Case; and (c) the Professionals.

50.    "*Executory Contract*" means a contract to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

51.    "*Federal Judgment Rate*" means the federal judgment rate in effect as of the Petition Date, compounded annually.

52.    "*File*," "*Filed*," or "*Filing*" means file, filed, or filing in the Chapter 11 Case with the Bankruptcy Court or, with respect to the filing of a Proof of Claim or proof of Interest, the Notice and Claims Agent.

53.    "*Final Order*" means: (a) an order or judgment of the Bankruptcy Court, as entered on the docket in the Chapter 11 Case (or any related adversary proceeding or contested matter) or the docket of any other court of competent jurisdiction; or (b) an order or judgment of any other court having jurisdiction over any appeal from (or petition seeking certiorari or other review of) any order or judgment entered by the Bankruptcy Court (or any other court of competent jurisdiction, including in an appeal taken) in the Chapter 11 Case (or in any related adversary proceeding or contested matter), in each case that has not been reversed, stayed, modified, or amended, and as to which the time to appeal, or seek certiorari or move for a new trial, reargument, or rehearing has expired according to applicable law and no appeal or petition for certiorari or other proceedings for a new trial, reargument, or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been or may be timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; *provided* that the possibility a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or the Local Bankruptcy Rules of the Bankruptcy Court, may be filed relating to such order shall not prevent such order from being a Final Order.

54.    "*General Unsecured Claim*" means any Claim other than: (a) an Administrative Claim; (b) a Secured Tax Claim; (c) an Other Secured Claim; (d) a Priority Tax Claim; (e) an Other Priority Claim; (f) a DIP Claim; (g) an Interest; or (h) a Claim that is an assumed liability under the Asset Purchase Agreement.

55.    "*Governmental Unit*" shall have the meaning set forth in section 101(27) of the Bankruptcy Code.

56.    "*Holder*" means an Entity holding a Claim or Interest, as applicable.

57.    "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

58.    "*Interest*" means any equity security (as defined in section 101(16) of the Bankruptcy Code) in the Debtor.

59.    "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as amended from time to time, as applicable to the Chapter 11 Case.

60.    "*Licensing Agreement*" means one or more licensing agreements pursuant to which the Licensing Transactions are consummated.

61.    "*Licensing Transactions*" means the licensing all or substantially of the Debtor's assets under this Plan pursuant to a Licensing Agreement or as otherwise authorized by order of the Bankruptcy Court or the Bankruptcy Code.

62.    "*Lien*" shall have the meaning set forth in section 101(37) of the Bankruptcy Code.

63.    "*New Boards*" means, if an Equitization Restructuring occurs, the initial board of directors, members, or managers, as applicable, of each Reorganized Debtor.

64.    "*New Organizational Documents*" means, if an Equitization Restructuring occurs, the form of the certificates or articles of incorporation, bylaws, or such other applicable formation documents of the Reorganized Debtor, which shall be in form and substance acceptable to the Plan Sponsor and included in the Plan Supplement, if applicable.

65.    "*New Retrotope Interests*" means, if an Equitization Restructuring occurs, interests in Reorganized Retrotope.

66.    "*New Stockholders' Agreement*" means the agreement with respect to the New Retrotope Interests, shall be in form and substance acceptable to the Plan Sponsor and be included in the Plan Supplement, if applicable.

67.    "*Notice and Claims Agent*" means BMC Group.

68.    "*Other Priority Claim*" means any Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than: (a) an Administrative Claim; or (b) a Priority Tax Claim, to the extent such Claim has not already been paid during the Chapter 11 Case.

69.    "*Other Secured Claim*" means any Secured Claim other than the DIP Claims.

70.    "*Person*" shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

71.    "*Petition Date*" means the date on which the Debtor commenced the Chapter 11 Case.

72.    "*Plan*" means this plan, as it may be amended or supplemented from time to time, including all exhibits, schedules, supplements, appendices, annexes, and attachments thereto.

73.    "*Plan Administrator*" means Rock Creek Advisors.  All costs, liabilities, and expenses reasonably incurred by the Plan Administrator, and any personnel employed by the Plan Administrator in the performance of the Plan Administrator's duties, shall be paid from the Plan Administrator Assets.

74.    "*Plan Administrator Assets*" means, if the Asset Sale Restructuring has occurred, on the Effective Date, all Sale Proceeds of the Asset Sales and all other assets of the Estate vested in the Reorganized Debtor to be administered by Plan Administrator, and, thereafter, all assets held from time to time by Reorganized Debtor to be administered by Plan Administrator.

75.    "*Plan Sponsor*" means, collectively, one or more sponsors or other financial institutions providing the Plan Sponsor Investment.

76.     "*Plan Sponsor Agreement*" means that certain plan sponsor agreement, by and among the Debtor and the Plan Sponsor.

77.     "*Plan Sponsor Investment*" means the investment, if any, by the Plan Sponsor under the Plan Sponsor Agreement.

78.     "*Plan Supplement*" means the compilation of documents and forms of documents, schedules, and exhibits to the Plan, to be Filed by the Debtor no later than 7 days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court on notice to parties in interest, and additional documents Filed with the Bankruptcy Court before the Effective Date as amendments to the Plan Supplement.  If an Equitization Restructuring occurs, the Plan Supplement shall include the following all in form and substance acceptable to the Plan Sponsor: (a) New Organizational Documents; (b) Schedule of Assumed Executory Contracts and Unexpired Leases; (c) Schedule of Rejected Executory Contracts and Unexpired Leases; (d) a list of retained Causes of Action; (e) New Stockholders' Agreement, if any; (f) Plan Sponsor Agreement, if any; (g) a document listing the members of the New Boards and the officers of the Reorganized Debtor, if any; and (h) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan.  If an Asset Sale Restructuring occurs, the Plan Supplement shall include the following all in form and substance acceptable to the Purchaser: (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) a list of retained Causes of Action; (c) Asset Purchase Agreement; and (d) any and all other documentation necessary to effectuate the Restructuring Transactions or that is contemplated by the Plan.  If restructuring is through Licensing Transactions, the Plan Supplement shall include the following all in form and substance acceptable to the licensor: (a) Schedule of Assumed Executory Contracts and Unexpired Leases; (b) a list of retained Causes of Action; (c) Licensing Agreements; and (d) any and all other documentation necessary to effectuate the Licensing Transactions or that is contemplated by the Plan.  The Debtor shall have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date in accordance with Article XIII of the Plan.

79.     "*Priority Claims*" means, collectively, Priority Tax Claims and Other Priority Claims.

80.     "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

81.     "*Pro Rata*" means the proportion that an Allowed Claim in a particular Class bears to the aggregate amount of Allowed Claims in that Class, or the proportion that Allowed Claims in a particular Class bear to the aggregate amount of Allowed Claims in a particular Class and other Classes entitled to share in the same recovery as such Allowed Claim under the Plan.

82.     "*Professional*" means an Entity employed pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services that have been rendered before or on the Confirmation Date, pursuant to sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.  For the avoidance of doubt, the Subchapter V Trustee shall be considered a Professional for purposes of the Professional Fee Claims set forth herein only.

83.    "*Professional Fee Claims*" means all Administrative Claims for the compensation of Professionals and the reimbursement of expenses incurred by such Professionals through and including the Confirmation Date to the extent such fees and expenses have not been previously paid.

84.    "*Professional Fee Escrow Account*" means an interest-bearing account in an amount equal to the total Professional Fee Reserve Amount funded by the Reorganized Debtor on the Effective Date.

85.    "*Professional Fee Reserve Amount*" means the aggregate amount of Professional Fee Claims that the Professionals estimate they have incurred or will incur in rendering services to the Debtor prior to and as of the Effective Date, which estimates Professionals shall deliver to the Debtor as set forth in Article III.B of this Plan.

86.    "*Proof of Claim*" means a proof of Claim Filed in the Chapter 11 Case.

87.    "*Purchaser*" means the purchaser under the Asset Purchase Agreement or the License Agreement, together with its successors and permitted assigns (including any and all of its wholly-owned Affiliates to which it assigns any of its rights or obligations under the Asset Purchase Agreement or the License Agreement).

88.    "*Reinstated*" or "*Reinstatement*" means, with respect to Claims and Interests, that the Claim or Interest shall be rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code.

89.    "*Released Party*" means each of the following in their capacity as such: (a) the Debtor and Reorganized Debtor; (b) the Debtor's current and former officers, directors, and managers; (c) the DIP Lender; (d) the Sale Parties; and (e) with respect to each of the foregoing Entities described in clauses (a) through (d), such Entities' respective predecessors, successors and assigns, and current and former stockholders, members, limited partners, general partners, equity holders, Affiliates and its and their subsidiaries, principals, partners, parents, equity holders, members, employees, agents, officers, directors, managers, trustees, professionals, representatives, advisors, attorneys, financial advisors, accountants, investment bankers, and consultants, in each case solely in their capacity as such; provided that any Holder of a Claim or Interest that elects to "opt out" of granting the Plan's third-party releases by either opting out of such release or timely objecting to the Plan's third-party release provisions shall not be a "Released Party."

90.    "*Releasing Party*" means, collectively, and in each case solely in its capacity as such: (a) the Debtor and the Reorganized Debtor; (b) the DIP Lender; (c) each Holder of a Claim or Interest entitled to vote to accept or reject the Plan that (i) votes to accept the Plan and does not affirmatively elect to "opt out" of granting the Plan's third party releases by either opting out of such release or timely objecting to the Plan's third-party release provisions or (ii) votes to reject the Plan or does not vote to accept or reject the Plan but does not affirmatively elect to "opt out" of granting the Plan's third-party releases by either opting out of such release or timely objecting to the Plan's third-party release provisions; (d) each Holder of a Claim or Interest that is (i) Unimpaired and presumed to accept the Plan or (ii) Impaired and deemed to reject the Plan and does not affirmatively elect to "opt out" of granting the Plan's third-party releases by either opting

16

out of such release or timely objecting to the Plan's third-party release provisions; and (e) with respect to each of the foregoing Entities described in clauses (a) through (d), such Entities' current and former affiliates, and such entities' and such affiliates' partners, subsidiaries, predecessors, current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), members, officers, principals, employees, agents, managed accounts or funds, advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, together with their respective successors and assigns (collectively, the "Related Parties"), in each case solely in their capacities as such and only to the extent the pertinent Releasing party can bind any such Related party to the terms of this Plan under applicable law. For the avoidance of doubt, any Holder of a Claim or Interest for which the Noticing and Claims Agent receives mail or email returned as undeliverable shall not be considered a Releasing Party.

91.    "*Reorganized Debtor*" means the Debtor, or any successor thereto, by merger, consolidation, or otherwise, on or after the Effective Date, including Reorganized Retrotope.

92.    "*Reorganized Retrotope*" means either: (a) Retrotope, or any successor thereto, as reorganized pursuant to and under the Plan; or (b) a new corporation or limited liability company designated by the Debtor to, among other things, directly or indirectly acquire substantially all of the assets and/or stock of the Debtor and issue the New Retrotope Interests to be distributed or sold pursuant to the Plan, or any other successor to the forgoing, including the Plan Sponsor.

93.    "*Reorganized Retrotope Board*" means the New Board of Reorganized Retrotope on and after the Effective Date.

94.    "*Restructuring*" means the restructuring of the Debtor on the terms of the Plan.

95.    "*Restructuring Documents*" means the Plan, Plan Supplement, and the various agreements and other documents formalizing or implementing the Plan and the transactions contemplated thereunder.

96.    "*Restructuring Transactions*" means those mergers, licensing agreements, amalgamations, consolidations, arrangements, continuances, restructurings, transfers, conversions, dispositions, liquidations, dissolutions, or other corporate transactions that the Debtor reasonably determine to be necessary to implement the Restructuring, as described in more detail in Article V.A herein.

97.    "*Retained Causes of Action List*" means a list of all retained Claims and Causes of Action of the Debtor, identified in the Plan Supplement.

98.    "*Sale Parties*" means (a) the Debtor, (b) the Plan Sponsor or Purchaser, as applicable, and (c) with respect to each of the foregoing Entities described in clauses (a) and (b) each of their respective current and former officers, directors, members, managers, principals, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, investment bankers, consultants, representatives, and other professionals; provided that, any Holder of a Claim or Interest that elects to "opt out" of granting releases by timely objecting to the Plan's third-party release provisions shall not be a "Sale Party."

99.    "*Sale Proceeds*" means, upon either an Asset Sale Restructuring, Licensing Transaction, or Equitization Restructuring having occurred, all Cash to be paid to the Debtor under the terms of the Sponsor Agreement or Asset Purchase Agreement, after payment of the DIP Claims, Allowed Priority Claims, Allowed Other Secured Claim, Allowed Other Priority Claims, the Professional Fee Escrow Account, and the Wind-Down Reserve, if any.

100.    "*Schedule of Assumed Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be assumed or assumed and assigned by the Debtor or the Reorganized Debtor, as applicable, pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtor from time to time in accordance with the Plan, which shall be in form and substance acceptable to the Debtor.

101.    "*Schedule of Rejected Executory Contracts and Unexpired Leases*" means the schedule (including any amendments or modifications thereto), if any, of the Executory Contracts and Unexpired Leases to be rejected by the Debtor pursuant to the Plan, as set forth in the Plan Supplement, as amended by the Debtor from time to time in accordance with the Plan, which shall be in form and substance acceptable to the Debtor.

102.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases, and statements of financial affairs Filed by the Debtor pursuant to section 521 of the Bankruptcy Code and in substantial accordance with the Official Bankruptcy Forms, as the same may have been amended, modified, or supplemented from time to time.

103.    "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code.

104.    "*Secured*" means, when referring to a Claim: (a) secured by a Lien on property in which the Debtor has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the applicable Holder's interest in the applicable Debtor's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code; or (b) pursuant to the Plan, or separate order of the Bankruptcy Court, as a secured claim.

105.    "*Secured Tax Claim*" means any Secured Claim against the Debtor that, absent its secured status, would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

106.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a–77aa, together with the rules and regulations promulgated thereunder, as amended from time to time.

107.    "*Securities Exchange Act*" means the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78nn, as amended.

108.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

18

109.    "*Stalking Horse APA*" means the asset purchase agreement by and between the Debtor and RTMFP Enterprises Inc. attached to the *Order (I) Approving the Bidding Procedures, (II) Approving Certain Bidding Protections in Connection with the Sale of Debtors Assets, (III) Scheduling the Bid Deadline and the Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 197].

110.    "*Stalking Horse Purchaser*" means RTMFP Enterprises Inc.

111.    "*Subchapter V Trustee*" means the trustee appointed pursuant to 11 U.S.C. § 1183.

112.    "*U.S. Trustee*" means the Office of the United States Trustee for the District of Delaware.

113.    "*Unexpired Lease*" means a lease of nonresidential real property to which the Debtor is a party that is subject to assumption or rejection under sections 365 or 1123 of the Bankruptcy Code.

114.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that are unimpaired within the meaning of section 1124 of the Bankruptcy Code, including through payment in full in Cash.

115.    "*Wind Down*" means the wind down and dissolution of the Debtor's Estate following the Effective Date as set forth in Article IX.B hereof.

116.    "*Wind-Down Amount*" means Cash in an amount to be determined by the Debtor, which amount shall be funded by the Debtor and used by the Plan Administrator to fund the Wind Down.

117.    "*Wind-Down Reserve*" means a segregated account established by the Plan Administrator established in accordance with Article IX.C.

B.    *Rules of Interpretation*

For purposes herein: (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit as it may thereafter be amended, modified, or supplemented; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) captions and headings to Articles are inserted for convenience of reference only and are not intended to be

a part of or to affect the interpretation of the Plan; (9) unless otherwise specified herein, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (10) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be; (11) all references to docket numbers of documents Filed in the Chapter 11 Case are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Case, unless otherwise stated; (13) any immaterial effectuating provisions may be interpreted by the Debtor, the Reorganized Debtor, or the Plan Administrator in such a manner that is consistent with the overall purpose and intent of the Plan, all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity; and (14) except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtor or to the Reorganized Debtor shall mean the Debtor and the Reorganized Debtor, as applicable, to the extent the context requires.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.  If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate governance matters relating to the Debtor or the Reorganized Debtor, as applicable, shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or Reorganized Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Controlling Document*

In the event of an inconsistency between the Plan and any document included in the Plan Supplement, the terms of the relevant provision in the Plan shall control (unless stated otherwise in such document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan, the Confirmation Order shall control.

## ARTICLE II.
## BACKGROUND, HISTORY AND FINANCIAL INFORMATION

A.    *Background and History of the Debtor*

Launched in 2006, the Company is a clinical-stage biopharmaceutical company focused on the development of first-in-class therapies for degenerative diseases ranging from orphan neurodegenerative indications to large market degenerative conditions.  The Debtor has two promising drug candidates that are currently in human and animal trials.  First, RT001 is a clinical stage drug focused curtailing on lipid peroxidation, "LPO" and examining that impact on rare, fatal, neurodegenerative diseases such as ALS (Lou Gehrig's), Progressive Nuclear Palsy (PSP) and others.  Second, the Debtor also believes there is substantial promise in drug RT011, which is 6-12 months away from human trials for dry age-related macular degeneration for which a complex drug is being manufactured and tested.

As of the Petition Date, the Debtor employed 17 employees.  None of the Debtor's employees are covered by a collective bargaining agreement.

B.    *Capital Structure*

Since its inception, the Debtor has utilized equity funding in order to capitalize its research and clinical trials.  However, over the past few months, such funding has become scarce.  Accordingly, as of the Petition Date, the Debtor's capital structure consists of unsecured trade debt totaling of over $4 million with no revenue source and little cash on hand.  Without an additional cash infusion, the Debtor's ability to fund the animal and human trials (which were currently mid-stream) for both RT001 and RT011 would cease.

As of the Petition Date, the Debtor had approximately 250 equity holders.  A detailed list of the equity holders was filed at docket number 59 on April 4, 2022.

C.    *Chapter 11 Case Filing Background*

The Debtor believes it has promising products in the pipeline, however, those products are not yet approved for production, require significant additional investment to bring to market, and are not expected to generate revenue for several years.  Accordingly, continuous funding was and will be in the future required for the Debtor's operations.  During November and December 2021, the Debtor received disappointing news regarding certain failures of certain of the RT001 trials.  The RT001 drug itself did not fail; rather, the trials failed because of improper protocols and study design.  Following the failed trials, the Debtor's liquidity situation began to deteriorate.  At the start of December 2021, the Debtor had a cash balance of $6.3 million.

In early February 2022, recognizing its precarious financial position and lack of alternatives, the Debtor engaged Rock Creek Advisors, LLC ("Rock Creek") to act as financial advisors.  Rock Creek was engaged to explore financing and restructuring alternatives for the Debtor.  Rock Creek sought financing options for the Debtor for several weeks.  Ultimately, the Company, along with the assistance of its advisors, decided to seek protection under chapter 11 of the Bankruptcy Code, pursue the implementation of an asset sale through this chapter 11 case and this Plan.

21

Facing the failed trials, the Debtor and Rock Creek recognized the possibility of outside financing was low.  Accordingly, the Debtor turned to current equity investor, Mr. Nitin Mehta, to provide sufficient financing for the company to continue critical operations and manage the chapter 11 process. To navigate this process, in March 2022, seasoned restructuring professionals Dan Scouler and Brian Ryniker were appointed to the board.

For several weeks thereafter, the Debtor's independent board reviewed all of the options before the Debtor and negotiated with Mr. Mehta regarding financing. Facing no better option, on March 21, 2022, the Debtor filed a voluntary petition for relief under the Bankruptcy Code as a debtor defined in Bankruptcy Code section 1182(1), and the Debtor elected to proceed under Subchapter V of chapter 11 of the Bankruptcy Code pursuant to the SBRA.

In connection with the filing, the Debtor filed its *Debtor's Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtor to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 8] (the "DIP Motion") seeking funding from RTMFP, an entity supported by Mr. Mehta, in the amount of $10 million, with an interim amount of $3 million. The DIP Motion offers funding on extremely advantageous terms including lending on a prime rate and with little fees.  See DIP Motion, at p. 7-8.  On March 23, 2022, the Court entered the *Interim Order (I) Authorizing the Debtor to Obtain Senior Secured Superpriority Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims; (III) Authorizing Use of Cash Collateral; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 36] (the "Interim DIP Order") approving $1.5 million in interim financing. On April 26, 2022, the Court entered its *Final Order Pursuant to 11 U.S.C. Sections 105, 361, 362, 363, 364, 503 and 507 (i) Authorizing the Debtor to Obtain Senior Secured Superpriority Postpetition Financing; (ii) Granting Liens and Superpriority Administrative Expense Claims; (iii) Authorizing Use of Cash Collateral; (iv) Modifying the Automatic Stay; (v) Scheduling a Final Hearing; and (vi) Granting Related Relief* [Docket No. 154] (the "Final DIP Order") approving the full $10 million in funding from RTMFP.

On March 28, 2022, Charles Cantor, Robert Molinari, and Harry Saal (the "Dissenting Shareholders") filed a Motion to Dismiss this chapter 11 case [Docket No. 39] (the "Motion to Dismiss").  On April 14, 2022, the Court denied the Motion to Dismiss [Docket Nos. 118 & 137].

D.    *The Debtor's Assets*

The Debtor's most recent pre-petition financial statements were filed as part of its petition at Docket No. 1.

The Debtor's assets consist almost entirely of intellectual property.  Given the nature of the Debtor's business, its patent portfolio developed during the human and animal trials is the basis for its business. In addition to intellectual property, the Debtor's other assets of value are office goods as well as net operating losses (the "NOLs").

The Debtor's assets and liabilities are set forth in detail in the Schedules of Assets and Liabilities [Docket No. 120] and Statement of Financial Affairs [Docket No. 121].

On May 20, 2022, the Debtor filed its first Monthly Operating Report reflecting the Debtor's cash position, among other things [Docket No. 203].

E.    *Summary of the Plan and Expected Recoveries Under the Plan*

The Debtor and its advisors, specifically their investment banker SSG Capital Advisors LLP, immediately engaged in a robust marketing process since the Petition Date in order to facilitate the Debtor's emergence from this chapter 11 case.  Specifically, on April 26, 2022 the Debtor filed the D*ebtor's Motion for Entry of an Order (I) Approving the Bidding Procedures, (II) Approving Certain Bidding Protections in Connection with the Sale of Debtor Assets, (III) Scheduling the Bid Deadline and the Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No.  157] to approve the marketing process associated with the Plan. On May 19, 2022, the Court entered the *Order (I) Approving the Bidding Procedures, (II) Approving Certain Bidding Protections in Connection with the Sale of Debtors Assets, (III) Scheduling the Bid Deadline and the Auction, (IV) Approving the Form and Manner of Notice Thereof, and (V) Granting Related Relief* [Docket No. 197] (the "Bidding Procedures") which approved the sale process and the entry by the Debtor into the Stalking Horse APA.  The Debtor will continue marketing the Debtor's assets in order to achieve the highest purchase price through a sale, licensing, or other transaction.  Accordingly, this Plan sets a floor for recovery to creditors based on the procedures from the proposed Stalking Horse APA, which provides for a purchase price of (i) the amount of the secured debt in its entirety as of the date of the Confirmation Hearing, plus (ii) ten million dollars ($10,000,000.00) in cash.  The Stalking Horse APA also provides for the assumption of cure liabilities.

Under the Bidding Procedures, bids are due on or before June 22, 2022.  If multiple qualified bids are received, then an auction will be conducted on June 27, 2022.  The nature of the winning bid at the auction will determine if the transaction will be an Asset Sale, Equitization Restructuring, or Licensing Transaction.

The net proceeds received by the Debtor upon the close of an Asset Sale or Equitization Restructuring are to be used to make payments, to the extent of available Cash, to holders of Allowed Claims in the order of priority under section 507 of the Bankruptcy Code, including DIP Claims, Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Allowed General Unsecured Claims in Class 3, and Pro Rata Distributions to holders of Class 4 Series D Interests.  It is not expected that there will be remaining funds to make distributions to Holders of Interests other than Series D Interests; however, if there are sufficient funds to make additional distributions, the distributions under the Plan adhere to the distribution waterfall in the Debtor's Amended and Restated Certificate of Incorporation.

If a Licensing Transaction is selected, then any funding received pursuant to the Licensing Agreements will be used to make payments, to the extent of available Cash, to holders of Allowed Claims in the order of priority under section 507 of the Bankruptcy Code, including DIP Claims, Allowed Administrative Claims (including Professional Fee Claims), Allowed Priority Tax Claims and Allowed Claims in Class 1, Class 2, Allowed General Unsecured Claims in Class 3, and Pro Rata Distributions to holders of Class 4 Series D Interests.  It is not expected that there will be remaining funds to make distributions to Holders of Interests other than Series D Interests;

however, if there are sufficient funds to make additional distributions, the distributions under the Plan adhere to the distribution waterfall in the Debtor's Amended and Restated Certificate of Incorporation.

If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date.

The chart on pages 4-7 of the Plan summarize the classes and expected distributions for each class of Claims and Interests.

F.     *Feasibility*

As set forth in more detail herein, the Debtor believes that there will be enough cash on hand on the Effective Date of the Plan to pay all Claims and Interests to the extent of recovery set forth herein. Specific Sale Proceeds and Distribution Amount shall be available upon the conclusion of the sale process set forth and approved through the Bidding Procedures.

G.     *Liquidation Analysis*

See Exhibit A attached hereto.

# ARTICLE III.
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article IV hereof.

A.     *Administrative Claims and Priority Tax Claims*

Except as otherwise provided in this Article III.A and except with respect to Administrative Claims that are Professional Fee Claims, requests for payment of Allowed Administrative Claims must be Filed and served on the Reorganized Debtor pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order no later than the Administrative Claims Bar Date.  Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by such date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtor or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests, if any, must be Filed and served on the Reorganized Debtor and the requesting party by the Claims Objection Bar Date.

Except with respect to Administrative Claims that are Professional Fee Claims or DIP Claims, and except to the extent that an Administrative Claim or Priority Tax Claim has already been paid during the Chapter 11 Case or a Holder of an Allowed Administrative Claim or Priority Tax Claim and the applicable Debtor(s) agree to less favorable treatment, each Holder of an Allowed Administrative Claim or Priority Tax Claim shall receive, in full and final satisfaction, compromise, settlement, and release of and in exchange for its Claim, (a) if an Asset Sale Restructuring or Licensing Transaction occurs, payment in Cash in full from the Plan

Administrator Assets or (b) if an Equitization Restructuring or Licensing Transaction occurs, payment in Cash in full from Reorganized Debtor.

Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with respect to an Administrative Claim Allowed by Final Order.

B.    *Professional Compensation*

1.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims incurred during the period from the Petition Date through the Confirmation Date shall be Filed no later than 45 days after the Effective Date.  All such final requests will be subject to approval by the Bankruptcy Court after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior orders of the Bankruptcy Court, including the Interim Compensation Order, and once approved by the Bankruptcy Court, shall be promptly paid from the Professional Fee Escrow Account up to the full Allowed amount.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of Professional Fee Claims owing to the Professionals, such Professionals shall have an Allowed Administrative Claim for any such deficiency, and the Reorganized Debtor or the Plan Administrator, as applicable, shall pay the full unpaid amount of such Allowed Administrative Claim in Cash.

2.    Professional Fee Escrow Account

On the Effective Date, the Reorganized Debtor shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Reserve Amount.  The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals.  Such funds shall not be considered property of the Estates.  The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Reorganized Debtor as soon as reasonably practicable after such Professional Fee Claims are Allowed.  When all Allowed amounts owing to the Professionals have been paid in full, any amount remaining in the Professional Fee Escrow Account shall promptly be paid to the Reorganized Debtor without any further action or order of the Bankruptcy Court.  If the Professional Fee Escrow Account is insufficient to fund the full Allowed amounts of Professional Fee Claims, the remaining unpaid Allowed Professional Fee Claims will be paid by the Reorganized Debtor.

3.    Professional Fee Reserve Amount

Professionals shall reasonably estimate their unpaid Professional Fee Claims, and shall deliver such estimate to the Debtor no later than five days before the Effective Date; *provided* that such estimate shall not be deemed to limit the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims.  If a Professional does not provide an estimate, the Debtor or Reorganized Debtor may estimate the unpaid and unbilled fees and expenses of such Professional.

4.    Post-Confirmation Date Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtor shall, in the ordinary course of business and without any further notice to, or action, order, or approval of, the Bankruptcy Court, pay in Cash the reasonable and documented legal, professional, or other fees and expenses incurred by the Professionals. Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor or the Plan Administrator, as applicable, may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.

C.    *DIP Claims*

As of the Effective Date, the DIP Claims shall be Allowed Claims in the full amount outstanding under the DIP Loan Documents, including principal, interest, fees, and expenses.

On or before the Effective Date, except to the extent that a Holder of an Allowed DIP Claim agrees to a less favorable treatment, the DIP Claims shall be repaid indefeasibly in full in Cash.

## ARTICLE IV.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.    *Summary of Classification*

Claims and Interests, except for DIP Claims, Administrative Claims, and Priority Tax Claims, are classified in the Classes set forth in this Article IV. A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest qualifies within the description of such other Classes. Except as otherwise provided in this Plan, a Claim or Interest also is classified in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

1.    Class Identification

The classification of Claims and Interests against the Debtor (as applicable) pursuant to the Plan is as follows:

| Class | Claim or Interest | Status | Voting |
|---|---|---|---|
| 1 | Other Secured Claims | Unimpaired | Deemed to Accept |
| 2 | Other Priority Claims | Unimpaired | Deemed to Accept |
| 3 | General Unsecured Claims | Unimpaired | Deemed to Accept |
| 4 | Series D Interest in Debtor | Impaired | Entitled to Vote |
| 5 | Series C Interest in the Debtor | Impaired | Deemed to Reject |
| 6 | Series B Interests in the Debtor | Impaired | Deemed to Reject |
| 7 | Series A-2 Interests in the Debtor | Impaired | Deemed to Reject |
| 8 | Series A-1 Interests in the Debtor | Impaired | Deemed to Reject |
| 9 | Series A Interests in the Debtor | Impaired | Deemed to Reject |

| 10 | Common Interests in the Debtor | Impaired | Deemed to Reject |

B.     *Treatment of Claims and Interests*

Subject to Article VII hereof, each holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, such holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtor and the holder of such Allowed Claim or Allowed Interest, as applicable.  Unless otherwise indicated, the holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1.     Class 1 – Other Secured Claims

   a.     *Classification*: Class 1 consists of Other Secured Claims against any Debtor.

   b.     *Treatment*: Each Holder of an Allowed Other Secured Claim will receive, at the Debtor's election: (a) if an Asset Sale Restructuring occurs, payment in Cash in full from the Plan Administrator Assets; (b) if an Equitization Restructuring or Licensing Transaction occurs, payment in Cash in full from Reorganized Debtor; (c) delivery of the collateral securing any such Claim and payment of any interest required under section 506(b) of the Bankruptcy Code; (d) Reinstatement of such Claim; or (e) other treatment rendering such Claim Unimpaired.

   c.     *Voting*: Class 1 is Unimpaired.  Holders of Other Secured Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

2.     Class 2 – Other Priority Claims

   a.     *Classification*: Class 2 consists of Other Priority Claims.

   b.     *Treatment*:  Each Holder of an Allowed Other Priority Claim will receive (a) if an Asset Sale Restructuring occurs, payment in Cash, in full, from the Plan Administrator Assets or (b) if an Equitization Restructuring or a Licensing Transaction occurs, payment in Cash, in full, from Reorganized Debtor.  The failure to object to Confirmation by a Holder of an Allowed Other Priority Claim shall be deemed to be such Holder's consent to receive treatment for such Claim that is different from that set forth in section 1129(a)(9) of the Bankruptcy Code.

   c.     *Voting*: Class 2 is Unimpaired.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

WBD (US) 56710147v2

3.    <u>Class 3 – General Unsecured Claims</u>

a.    *Classification*: Class 3 consists of all General Unsecured Claims.

b.    *Treatment*: Each Holder of an Allowed General Unsecured Claim will receive (a) if an Asset Sale Restructuring occurs, payment in Cash, in full, from the Plan Administrator Assets, including payment of any interest if such right to receive interest was preserved in any proof of claim and is required by the underlying agreement that gave rise to the Allowed General Unsecured Claim (b) if an Equitization Restructuring or a Licensing Transaction occurs, payment in Cash, in full, , including payment of any interest if such right to receive interest was preserved in any proof of claim and is required by the underlying agreement that gave rise to the Allowed General Unsecured Claim from the Reorganized Debtor.

c.    *Voting*: Class 3 is unimpaired.  Holders of Allowed General Unsecured Claims are deemed to accept the Plan.

4.    <u>Class 4 – Series D Interests</u>

a.    *Classification*:  Class 4 consists of all Holders of Series D Interests.

b.    *Treatment*:  Each Holder of Series D Interests shall receive its Pro Rata share of the Sale Proceeds up to $0.80 per share, plus all declared but unpaid dividends on such shares of Series D Interests.

If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date.

c.    Class 4 is impaired and entitled to vote on the Plan.

5.    <u>Class 5 – Series C Interests</u>

a.    *Classification*:  Class 5 consists of all Holders of Series C Interests.

b.    *Treatment*:  If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series D Interests $0.80 per share, plus all declared but unpaid dividends on such shares of Series D Interests, then each Holder of a Series C Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.55 per share, plus all declared but unpaid dividends on such shares of Series C Interests.

If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date.

28

      c.      *Voting*:  Class 5 is Impaired.  Holders of Series C Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

6.      <u>Class 6 – Series B Interests</u>

      a.      *Classification*:  Class 6 consists of all Holders of Series B Interests.

      b.      *Treatment*: If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series C Interests $0.55 per share, plus all declared but unpaid dividends on such shares of Series C Interests, then each Holder of a Series B Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.50 per share, plus all declared but unpaid dividends on such shares of Series B Interests.

            If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date.

      c.      *Voting*:  Class 6 is Impaired.  Holders of Series B Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

7.      <u>Class 7 – Series A-2 Interests</u>

      a.      *Classification*:  Class 7 consists of all Holders of Series A-2 Interests.

      b.      *Treatment*: If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series B Interests $0.50 per share, plus all declared but unpaid dividends on such shares of Series B Interests, then each Holder of a Series A-2 Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.27 per share plus all declared but unpaid dividends on such shares of Series A-2 Interests.

            If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date.

      c.      *Voting*:  Class 7 is Impaired.  Holders of Series A-2 Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

8.      <u>Class 8 – Series A-1 Interests</u>

      a.      *Classification*:  Class 8 consists of all Holders of Series A-1 Interests.

      b.      *Treatment*: If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series A-2 Interests $0.27 per share, plus all

WBD (US) 56710147v2

declared but unpaid dividends on such shares of Series A-2 Interests, then each Holder of a Series A-1 Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.23 per share, plus all declared but unpaid dividends on such shares of Series A-1 Interests.

If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date.

c.    *Voting*: Class 8 is Impaired.  Holders of Series A-1 Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

9.    Class 9 – Series A Interests

a.    *Classification*:  Class 9 consists of all Holders of Series A Interests.

b.    *Treatment*:  If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series A-1 Interests $0.23 per share, plus all declared but unpaid dividends on such shares of Series A-1 Interests, then each Holder of a Series A Interest shall receive its Pro Rata share of the Sales Proceeds up to $0.125 per share, plus all declared but unpaid dividends on such shares of Series A Interests.

If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date.

c.    *Voting*: Class 9 is Impaired.  Holders of Series A Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

10.    Class 10 – Common Interests

a.    *Classification*:  Class 10 consists of all Holders of Common Interests.

b.    *Treatment*:  If the Sale Proceeds from any Restructuring Transaction exceed the amount required to pay the Series A Interests $0.23 per share, plus all declared but unpaid dividends on such shares of Series A Interests, then each Holder of Common Interests shall receive its Pro Rata share of the remaining Sales Proceeds.

If there is a Licensing Transaction or Equitization Transaction that does not cancel existing shares, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Distribution Record Date.

      c.      *Voting*: Class 10 is Impaired. Holders of Common Interests are deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

C.     *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's or the Reorganized Debtor's rights in respect of any Unimpaired Claim, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

D.     *Subordinated Claims and Interests*

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and their respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to section 510 of the Bankruptcy Code, the Debtor, Reorganized Debtor and the Plan Administrator, as applicable, reserve the right to re-classify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## ARTICLE V.
## MEANS FOR IMPLEMENTATION OF THE PLAN[3]

A.     *Restructuring Transactions*

Before, on, and after the Effective Date, the Debtor, Reorganized Debtor, or the Plan Administrator, as applicable, shall take all actions as may be necessary or appropriate to effectuate the Restructuring Transactions, including: (a) the execution and delivery of any appropriate agreements or other documents of merger, consolidation, restructuring, conversion, disposition, transfer, dissolution, or liquidation containing terms that are consistent with the terms of the Plan, and that satisfy the requirements of applicable law and any other terms to which the applicable Entities may agree; (b) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (c) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (d) such other transactions that are required to effectuate the Restructuring Transactions; (e) all transactions necessary to provide for the purchase of substantially all of the assets of, or Interests in, the Debtor by one or more Entities to be wholly owned by Reorganized Debtor or any other Entity pursuant to the Asset Purchase Agreement, which purchase may be structured as a taxable transaction for

---

[3] Estate claims and Causes of Action (including, without limitation, Avoidance Actions) are sold to the Stalking Horse Purchaser under the Stalking Horse Agreement. To the extent the Stalking Horse Purchaser is not the Purchaser, the independent directors, with the assistance of their counsel and advisors, will undertake an investigation into Estate claims and Causes of Action. The Debtor reserves all rights to modify the Plan, including the release provisions of the Plan, and the Debtor reserves all rights and claims with respect thereto.

United States federal income tax purposes; and (f) all other actions that the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

B.      *Cancelation of Notes, Instruments, Certificates, and Other Documents*

On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of any Debtor under any certificate, share, note, bond, indenture, purchase right, or other instrument or document, directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest, equity, or portfolio interest in the Debtor or any warrants, options, or other securities exercisable or exchangeable for, or convertible into, debt, equity, ownership, or profits interests in the Debtor giving rise to any Claim or Interest shall be canceled and deemed surrendered as to the Debtor and shall not have any continuing obligations thereunder; and (2) the obligations of the Debtor pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificates or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indenture, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of the Debtor shall be fully released, settled, and compromised.

C.      *Exemption from Certain Taxes and Fees*

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property pursuant hereto, including the Asset Sales, or the issuance, transfer or exchange of any security under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, sale or use tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents pursuant to such transfers of property without the payment of any such tax, recordation fee, or governmental assessment.

D.      *The Asset Sale Restructuring*

If the Asset Sale Restructuring occurs, the following provisions shall govern.

1.      Vesting of Assets

Except as otherwise provided in the Plan, the Asset Purchase Agreement, Licensing Agreement, or any agreement, instrument, or other document incorporated herein or therein, upon Case Closing and in accordance with 11 U.S.C. § 1186, the assets of the Debtor shall vest in the Reorganized Debtor for the purpose of liquidating the Estate, free and clear of all Liens, Claims, charges, or other encumbrances. For the avoidance of doubt, until the Case Closing, all such assets shall remain property of the Estate except as otherwise ordered by the Court.

2.      Sources of Consideration for Plan Distributions

The Reorganized Debtor will fund distributions under the Plan with Cash on hand on the Effective Date and the revenues and proceeds of all assets of the Debtor, including proceeds from

all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date.

Notwithstanding anything to the contrary in the Plan or in the Asset Purchase Agreements or License Agreements, on the Effective Date, any Cause of Action not settled, released, discharged, enjoined, or exculpated under Article XI of the Plan on or prior to the Effective Date shall vest in the Reorganized Debtor and shall be subject to administration by the Plan Administrator.

3.    Asset Sales

On the Effective Date, the Debtor shall consummate the Asset Sales and, among other things, the acquired assets, as set forth in the Asset Purchase Agreement or the License Agreement, shall be transferred to and vest in the Purchaser free and clear of all Liens, Claims, charges, or other encumbrances pursuant to the terms of the Asset Purchase Agreement or the License Agreement and Confirmation Order.  The Purchaser shall be deemed not to be a successor of the Debtor.  On the Effective Date, the Purchaser shall pay to the Debtor the proceeds from the Asset Sales, as and to the extent provided for in the Asset Purchase Agreements or the License Agreements.  The Confirmation Order shall: (a) approve the Asset Purchase Agreement or the License Agreement; and (b) authorize the Debtor or Reorganized Debtor, as applicable, to undertake the transactions contemplated by the Asset Purchase Agreement or the License Agreement, including pursuant to sections 363, 365, 1123(a)(5)(B), and 1123(a)(5)(D) of the Bankruptcy Code.

4.    Reorganized Debtor

On and after the Effective Date, the Reorganized Debtor shall continue in existence for purposes of (a) winding down the Debtor's business and affairs as expeditiously as reasonably possible, (b) resolving Disputed Claims, (c) making distributions on account of Allowed Claims as provided hereunder, (d) establishing and funding the Distribution Reserve Accounts, (e) enforcing and prosecuting claims, interests, rights, and privileges under the Causes of Action on the Retained Causes of Action List in an efficacious manner and only to the extent the benefits of such enforcement or prosecution are reasonably believed to outweigh the costs associated therewith, (f) filing appropriate tax returns, (g) complying with its continuing obligations under the Asset Purchase Agreements or the License Agreements, if any, and (h) administering the Plan in an efficacious manner.  The Reorganized Debtor shall be deemed to be substituted as the party-in-lieu of the Debtor in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

5.    Plan Administrator

The Plan Administrator shall act for the Reorganized Debtor in the same fiduciary capacity as applicable to a board of managers, directors, and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended

by the Plan to permit and authorize the same).  On the Effective Date, the authority, power, and incumbency of the persons acting as managers, directors, or sale director of the Reorganized Debtor shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed as the sole manager, sole director, and sole officer of the Reorganized Debtor, and shall succeed to the powers of the Reorganized Debtor's managers, directors, and officers.  From and after the Effective Date, the Plan Administrator shall be the sole representative of, and shall act for, the Reorganized Debtor.  The foregoing shall not limit the authority of the Reorganized Debtor or the Plan Administrator, as applicable, to continue the employment any former manager or officer, including pursuant to any transition services agreement entered into on or after the Effective Date by and between the Reorganized Debtor and the Purchaser.

6.      Dissolution and Board of the Debtor

As of the Effective Date, the existing board of directors or managers, as applicable, of the Debtor shall be dissolved without any further action required on the part of the Debtor or the Debtor's officers, directors, managers, shareholders, or members, and any remaining officers, directors, managers, or managing members of any Debtor shall be dismissed without any further action required on the part of any such Debtor, the equity holders of the Debtor, the officers, directors, or managers, as applicable, of the Debtor, or the members of any Debtor.  Subject in all respects to the terms of this Plan, the Debtor shall be dissolved as soon as practicable on or after the Effective Date, but in no event later than the closing of the Chapter 11 Case.

As of the Effective Date, the Plan Administrator shall act as the sole officer, director, and manager, as applicable, of the Debtor with respect to its affairs.  Subject in all respects to the terms of this Plan, the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtor, and shall: (a) file a certificate of dissolution for the Debtor, together with all other necessary corporate and company documents, to effect the dissolution of Retrotope under the applicable laws of its state of formation; and (b) complete and file all final or otherwise required federal, state, and local tax returns and shall pay taxes required to be paid for the Debtor, and pursuant to section 505(b) of the Bankruptcy Code, request an expedited determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

The filing by the Plan Administrator of any of the Debtor's certificate of dissolution shall be authorized and approved in all respects without further action under applicable law, regulation, order, or rule, including any action by the stockholders, members, board of directors, or board of managers of Retrotope or any of its affiliates.

7.      Release of Liens

Except as otherwise expressly provided herein, on the Case Closing, all Liens on any property of any Debtor or the Reorganized Debtor shall automatically terminate, all property subject to such Liens shall be automatically released, and all guarantees of any Debtor or the Reorganized Debtor shall be automatically discharged and released.  For the avoidance of doubt,

the Liens secured the DIP Claims shall not be released until the DIP Claims have been paid indefeasibly in full in Cash or the DIP Lenders agree otherwise in their sole discretion.

8.      Corporate Action

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on, or after the Effective Date, shall be deemed authorized and approved in all respects, including: (a) consummation of the Asset Sales; and (b) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtor before, on, or after the Effective Date involving the corporate structure of the Debtor or the Reorganized Debtor, and any corporate action required by the Debtor or the Reorganized Debtor in connection with the Plan or corporate structure of the Debtor or Reorganized Debtor, shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtor or the Reorganized Debtor. Before, on, or after the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Reorganized Debtor. The authorizations and approvals contemplated by this Article shall be effective notwithstanding any requirements under non-bankruptcy law.

9.      Effectuating Documents; Further Transactions

Prior to the Effective Date, the Debtor is, and on and after the Effective Date, the Reorganized Debtor, the Plan Administrator, and the officers and members thereof are, authorized to and may issue, execute, deliver, file, or record such contracts, securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, without the need for any approvals, authorizations, notice, or consents, except for those expressly required pursuant to the Plan.

10.     Preservation of Causes of Action

Under the Stalking Horse Agreement, all Causes of Action are purchased by RTMFP. For the avoidance of doubt, unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, sold, or settled in the Plan, Purchase Agreement, License Agreement, or a Final Order, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall convey to the Plan Administrator all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, which shall vest in the Plan Administrator pursuant to the terms of the Plan. The Plan Administrator may enforce all rights to commence, prosecute, or settle, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Plan Administrator may, in its reasonable business judgment, pursue such Causes of Action and may retain and compensate professionals in the analysis or pursuit of such Causes of Action to the extent the Plan Administrator deems appropriate, including on a

contingency fee basis. No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplement to any Cause of Action against them as any indication that the Debtor or the Plan Administrator will not pursue any and all available Causes of Action against them. The Debtor and the Plan Administrator expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan; provided that the Debtor, in consultation with the Plan Administrator after the Effective Date, may prosecute any such Cause of Action against any party only in connection with their objection to and resolution of any Claim asserted by such party. Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, sold, or settled in the Plan, Purchase Agreement, License Agreement, or a Final Order, the Plan Administrator expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation. The Plan Administrator reserves and shall retain the foregoing Causes of Action notwithstanding the rejection of any Executory Contract or Unexpired Lease during the Chapter 11 Case or pursuant to the Plan. The Plan Administrator shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, or to decline to do any of the foregoing, without the consent or approval of any third party or any further notice to, or action, order, or approval of, the Bankruptcy Court. Any and all proceeds from Causes of Action pursued and collected by the Plan Administrator shall be included and distributed as "Sale Proceeds" set forth herein.

11.    Closing the Chapter 11 Case

When all Disputed Claims have become Allowed or Disallowed and all remaining Cash has been distributed in accordance with the Plan, the Plan Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules. Case Closing shall occur upon Bankruptcy Court approval to close the Chapter 11 Case.

E.    *The Equitization Restructuring or Licensing Transaction*

The following provisions shall govern the Equitization Restructuring or Licensing Transaction.

1.    Sources of Consideration for Plan of Reorganization Distributions

The Reorganized Debtor will fund distributions under the Plan with Cash on hand on the Effective Date and the revenues and proceeds of all assets of the Debtor, including proceeds from all Causes of Action not settled, released, discharged, enjoined, or exculpated under the Plan or otherwise on or prior to the Effective Date, and the New Retrotope Interests.

If there is a Licensing Transaction, the New Retrotope Interests may be reissued in the same manner as existing interests as of the Record Date.

2.    Issuance and Distribution of New Retrotope Interests

On the Effective Date, the Reorganized Debtor shall issue the New Retrotope Interests to fund distributions to the Plan Sponsor.  The issuance of New Retrotope Interests under the Plan, is duly authorized without the need for any further corporate action and without any further action by the Debtor or Reorganized Debtor, the Holders of Claims, or the Plan Sponsor.

On the Effective Date, Holders of New Retrotope Interests shall be parties to the New Stockholders' Agreement, in substantially the form included in the Plan Supplement.  On the Effective Date, Reorganized Debtor shall enter into and deliver the New Stockholders' Agreement to each Entity that is intended to be a party thereto, and such New Stockholders' Agreement shall be deemed to be valid, binding, and enforceable in accordance with its terms, and each Holder of New Retrotope Interests shall be bound thereby, in each case without the need for execution by any party thereto other than Reorganized Debtor.

3.      Plan Sponsor Investment

On the Effective Date, the Plan Sponsor shall consummate the Plan Sponsor Investment, if any, in exchange for up to 100 percent of the New Retrotope Interests.  The Cash received from the Plan Sponsor Investment shall be contributed to the Reorganized Debtor on the Effective Date.

4.      Corporate Existence

Except as otherwise provided in the Plan, the New Organizational Documents, the New Stockholders' Agreement, or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, on the Effective Date, the Debtor shall continue to exist after the Effective Date as a separate corporation, limited liability company, partnership, or other form of entity, as the case may be, with all the powers of a corporation, limited liability company, partnership, or other form of entity, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other analogous formation documents) in effect before the Effective Date, except to the extent such certificate of incorporation and bylaws (or other analogous formation documents) are amended by the Plan or otherwise, and to the extent such documents are amended, such documents are deemed to be amended pursuant to the Plan and require no further action or approval.

5.      Vesting of Assets in the Reorganized Debtor

Except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan or the Plan Supplement, upon the Case Closing, all property in the Estate, all Causes of Action, and any property acquired by the Debtor, shall vest in the Reorganized Debtor, free and clear of all Liens, Claims, charges, or other encumbrances.  On and after the Case Closing, except as otherwise provided in the Plan, each Reorganized Debtor may operate its business and may use, acquire, or dispose of property, and compromise or settle any Claims, Interests, or Causes of Action without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules. For the avoidance of doubt, until the Case Closing, all such assets shall remain property of the Estate except as otherwise ordered by the Court.

6.      Corporate Action

Upon the Effective Date, or as soon thereafter as is reasonably practicable, all actions contemplated by the Plan shall be deemed authorized and approved by the Bankruptcy Court in all respects, including, as applicable: (a) the implementation of the Restructuring Transactions; (b) the selection of the directors and officers for the Reorganized Debtor; (c) the issuance and distribution of the New Retrotope Interests; and (d) all other actions contemplated by the Plan (whether to occur before, on, or after the Effective Date).  Upon the Effective Date, all matters provided for in the Plan involving the corporate structure of the Reorganized Debtor, and any corporate action required by the Debtor, or the other Reorganized Debtor in connection with the Plan, shall be deemed to have occurred and shall be in effect, without any requirement of further action by the security holders, directors, or officers of the Debtor, or the Reorganized Debtor.  On or (as applicable) before the Effective Date, the appropriate officers of the Debtor or the Reorganized Debtor shall be authorized and (as applicable) directed to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name of and on behalf of the Reorganized Debtor, the New Retrotope Interests, and any and all other agreements, documents, securities, and instruments relating to the foregoing, to the extent not previously authorized by the Bankruptcy Court.  The authorizations and approvals contemplated by this Article V.E.6 shall be effective notwithstanding any requirements under non-bankruptcy law.

7.      New Organizational Documents

On the Effective Date, each of the Reorganized Debtor will file its New Organizational Documents with the applicable Secretaries of State and/or other applicable authorities in its respective state of incorporation or formation in accordance with the applicable laws of the respective state of incorporation or formation.  The New Organizational Documents shall be consistent with section 1123(a)(6) of the Bankruptcy Code.  Pursuant to section 1123(a)(6) of the Bankruptcy Code, the New Organizational Documents will prohibit the issuance of non-voting equity securities.  After the Effective Date, the Reorganized Debtor may amend and restate its New Organizational Documents and other constituent documents as permitted by the laws of Delaware.

8.      Directors and Officers of the Reorganized Debtor

As of the Effective Date, the terms of the current members of the board of directors of the Debtor shall expire, and the New Board and new officers of the Reorganized Debtor shall be appointed in accordance with the New Organizational Documents and other constituent documents of the Reorganized Debtor.

Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Debtor will, to the extent reasonably practicable, disclose in advance of the Confirmation Hearing the identity and affiliations of any Person proposed to serve on the New Board, as well as those Persons that will serve as officers of the Reorganized Debtor.  To the extent any such director or officer is an "insider" under the Bankruptcy Code, the nature of any compensation to be paid to such director or officer will also be disclosed.  Provisions regarding the removal, appointment, and replacement of members of the New Board will be disclosed in the New Organizational Documents.

WBD (US) 56710147v2

9.      Effectuating Documents; Further Transactions

On and after the Effective Date, the Reorganized Debtor, its officers, and the members of the New Board is authorized to and may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the Securities issued pursuant to the Plan, including the New Retrotope Interests, in the name of and on behalf of the Reorganized Debtor, without the need for any approvals, authorization, or consents.

10.     Preservation of Causes of Action

Unless any Cause of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, including the Claims and Causes of Action specifically released and exculpated in Article XI of the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (including all Avoidance Actions), whether arising before or after the Petition Date, including any actions specifically enumerated in the Plan Supplement, and such rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date.   The Reorganized Debtor may pursue such Causes of Action, as appropriate, in the Reorganized Debtor's sole discretion.  No Entity may rely on the absence of a specific reference in the Plan or the Plan Supplement to any Cause of Action against it as any indication that the Debtor or the Reorganized Debtor will not pursue any and all available Causes of Action against it.  The Debtor or the Reorganized Debtor, as applicable, expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan.  Unless any Causes of Action against an Entity are expressly waived, relinquished, exculpated, released, compromised, or settled under the Plan or pursuant to a Bankruptcy Court order, the Debtor or Reorganized Debtor, as applicable, expressly reserves all Causes of Action for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.   In accordance with section 1123(b)(3) of the Bankruptcy Code, except as otherwise provided herein, any Causes of Action that the Debtor may hold against any Entity shall vest in the Reorganized Debtor.  The Reorganized Debtor, through its authorized agents or representatives, shall retain and may exclusively enforce any and all such Causes of Action.  The Reorganized Debtor shall have the exclusive right, authority, and discretion to determine and to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.

11.     Reporting Upon Emergence

On the Effective Date, none of the New Retrotope Interests will be registered under the Securities Act or the Securities Exchange Act or listed on a national securities exchange, Reorganized Retrotope will not be a reporting company under the Securities Exchange Act,

Reorganized Retrotope shall not be required to and will not file Securities Exchange Act reports with the Securities and Exchange Commission or any other entity or party, and Reorganized Retrotope shall not be required to file monthly operating reports with the Bankruptcy Court after the Effective Date.  In order to prevent Reorganized Retrotope from becoming subject to the reporting requirements of the Securities Exchange Act, except in connection with a public offering, a separate agreement or Reorganized Retrotope's organizational documents may impose certain trading restrictions, and the New Retrotope Interests may be subject to certain transfer and other restrictions designed to maintain Reorganized Retrotope as a private, non-reporting company.

## ARTICLE VI.
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.    *Assumption and Rejection of Executory Contracts and Unexpired Leases*

If the Equitization Restructuring or Licensing Transaction occurs, on the Confirmation Date, except as otherwise provided in the Plan or otherwise agreed to by the Debtor and the counterparty to an Executory Contract or Unexpired Lease, all Executory Contracts or Unexpired Leases not previously assumed, assumed and assigned, or rejected in the Chapter 11 Case, shall be deemed assumed by the Reorganized Debtor, effective as of the Effective Date, in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, with the consent of the Plan Sponsor, and regardless of whether such Executory Contract or Unexpired Lease is set forth on the Schedule of Assumed Executory Contracts and Unexpired Leases, other than: (1) those that are identified on the Schedule of Rejected Executory Contracts and Unexpired Leases; (2) those that have been previously rejected by a Final Order; (3) those that are the subject of a motion to reject Executory Contracts or Unexpired Leases that is pending on the Confirmation Date; or (4) those that are subject to a motion to reject an Executory Contract or Unexpired Lease pursuant to which the requested effective date of such rejection is after the Effective Date.  Except as otherwise provided in the Plan, the Debtor shall assume, assume and assign, or reject, as the case may be, Executory Contracts and Unexpired Leases set forth in the applicable Schedules in the Plan Supplement.  Entry of the Confirmation Order shall constitute a Bankruptcy Court order approving the assumptions, assumptions and assignments, or rejections of such Executory Contracts or Unexpired Leases as set forth in the Plan or the Schedule of Rejected Executory Contracts and Unexpired Leases, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, except as otherwise provided in the Plan or the Confirmation Order.  Unless otherwise indicated or agreed by the Debtor and the applicable contract counterparties, assumptions, assumptions and assignments, or rejections of Executory Contracts and Unexpired Leases pursuant to the Plan are effective as of the Effective Date.  Each Executory Contract or Unexpired Lease assumed pursuant to the Plan or by Bankruptcy Court order but not assigned to a third party before the Effective Date shall re-vest in and be fully enforceable by the Reorganized Debtor in accordance with its terms, except as such terms may have been modified by any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law or as otherwise agreed by the Debtor and the applicable counterparty to the Executory Contract or Unexpired Lease.

If the Asset Sale Restructuring occurs, on the Effective Date, except as otherwise provided herein, each Executory Contract and Unexpired Lease not previously rejected, assumed, or assumed and assigned, including any employee benefit plans, severance plans, and other Executory Contracts under which employee obligations arise, shall be deemed automatically rejected

40

pursuant to sections 365 and 1123 of the Bankruptcy Code, with the consent of the Purchaser, unless such Executory Contract or Unexpired Lease: (1) is specifically described in the Plan as to be assumed in connection with confirmation of the Plan, or is specifically scheduled to be assumed or assumed and assigned pursuant to the Plan or the Plan Supplement; (2) is subject to a pending motion to assume such Unexpired Lease or Executory Contract as of the Effective Date; (3) is to be assumed by the Debtor or assumed by the Debtor and assigned to another third party, as applicable, in connection with the any sale transaction; (4) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; or (5) is a D&O Liability Insurance Policy.  Entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such assumptions, assignments, and rejections, including the assumption of the Executory Contracts or Unexpired Leases as provided in the Plan Supplement, pursuant to sections 365(a) and 1123 of the Bankruptcy Code.

B.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Proofs of Claims with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, if any, must be Filed with the Bankruptcy Court within the latest to occur of: (1) 30 days after the service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection; (2) 30 days after the Debtor provide notice of surrender of possession to a landlord of a rejected lease where surrender occurs after entry of an order approving such rejection; and (3) 30 days after notice of any rejection that occurs after the Effective Date. **Any Holders of Claims arising from the rejection of an Executory Contract or Unexpired Lease for which Proofs of Claims were not timely Filed shall not (1) be treated as a creditor with respect to such Claim, (2) be permitted to vote to accept or reject the Plan on account of any Claim arising from such rejection, or (3) participate in any distribution in the Chapter 11 Case on account of such Claim, and any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically Disallowed, forever barred from assertion, and shall not be enforceable against the Debtor, the Debtor's Estates, the Reorganized Debtor, or the property for any of the foregoing without the need for any objection by the Debtor, Reorganized Debtor, or the Plan Administrator, as applicable, or further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully compromised, settled, and released, notwithstanding anything in the Schedules or a Proof of Claim to the contrary.** Claims arising from the rejection of the Debtor's Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article IV of the Plan.

If an Equitization Restructuring or Licensing Transaction occurs, counterparties to Executory Contracts or Unexpired Leases listed on the Schedule of Rejected Executory Contracts and Unexpired Leases shall be served with a notice of rejection of Executory Contracts and Unexpired Leases, as soon as reasonably practicable.

C.    *Cure of Defaults for Assumed, or Assumed and Assigned, Executory Contracts and Unexpired Leases*

Any monetary defaults under an Executory Contract or Unexpired Lease to be assumed, or assumed and assigned, shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the Cure Claim, as reflected on the Cure Notice or as otherwise agreed or determined by a Final Order of the Court, in Cash on the Effective Date or as soon as reasonably practicable thereafter, subject to the limitations described below, or on such other terms as the parties to such Executory Contract or Unexpired Leases may otherwise agree.  In the event of a dispute regarding: (1) the amount of any Cure Claim; (2) the ability of the Reorganized Debtor, the Purchaser, or any assignee, as applicable, to provide "adequate assurance of future performance" (with the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed or assumed and assigned; or (3) any other matter pertaining to assumption or the assumption and assignment, the Cure Claims shall be made following the entry of a Final Order resolving the dispute and approving the assumption or the assumption and assignment.

Unless otherwise provided by an order of the Bankruptcy Court or in the Asset Purchase Agreement or Licensing Agreement, at least seven days before the Voting Deadline, the Debtor shall distribute, or cause to be distributed, Cure Notices to the applicable third parties.  **Any objection by a counterparty to an Executory Contract or Unexpired Lease to the proposed assumption, assumption and assignment, or related Cure Claim must be Filed by the Cure/Assumption Objection Deadline.**  Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption, assumption and assignment, or Cure Notice will be deemed to have assented to such assumption or assumption and assignment, and Cure Claim.  To the extent that the Debtor seeks to assume and assign an Executory Contract or Unexpired Lease pursuant to the Plan, the Debtor will identify the assignee in the applicable Cure Notice and/or Schedule and provide "adequate assurance of future performance" for such assignee (within the meaning of section 365 of the Bankruptcy Code) under the applicable Executory Contract or Unexpired Lease to be assumed and assigned.

Assumption or assumption and assignment of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise, and the payment of the Cure Claim, shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed Executory Contract or Unexpired Lease at any time before the date that the Debtor assumes or assumes and assigns such Executory Contract or Unexpired Lease.  Any Proofs of Claim Filed with respect to an Executory Contract or Unexpired Lease that has been assumed or assumed and assigned shall be deemed Disallowed and expunged, without further notice to, or action, order, or approval of, the Bankruptcy Court.

WBD (US) 56710147v2

D.    *Indemnification Obligations*

All indemnification obligations in place as of the Effective Date (whether in the by-laws, certificates of incorporation or formation, limited liability company agreements, other organizational or formation documents, board resolutions, indemnification agreements, employment contracts, or otherwise) for the current and former directors, managers, attorneys, accountants, investment bankers, and other professionals of the Debtor, as applicable, shall be assumed and remain in full force and effect after the Effective Date, and shall not be modified, reduced, discharged, impaired, or otherwise affected in any way, and shall survive Unimpaired and unaffected, irrespective of when such obligation arose.

E.    *Director and Officer Liability Insurance*

To the extent that the D&O Liability Insurance Policies are considered to be Executory Contracts, notwithstanding anything in the Plan to the contrary, effective as of the Effective Date, the Debtor shall be deemed to have assumed all D&O Liability Insurance Policies with respect to the Debtor's directors, managers, officers, and employees serving on or before the Petition Date pursuant to section 365(a) of the Bankruptcy Code, and coverage for defense and indemnity under any of the D&O Liability Insurance Policies shall remain available to all individuals within the definition of "Insured" in any of the D&O Liability Insurance Policies.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the unexpired D&O Liability Insurance Policies.  Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair, or otherwise modify any indemnity obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such indemnity obligation will be deemed and treated as an Executory Contract that has been assumed by the Debtor under the Plan as to which no Proof of Claim need be Filed.

F.    *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtor during the Chapter 11 Case shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

G.    *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Schedule of Rejected Executory Contracts and Unexpired Leases or the Schedule of Assumed Executory Contracts and Unexpired Leases, nor anything contained in the Plan, shall constitute an

admission by the Debtor that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that any Debtor or Reorganized Debtor has any liability thereunder.

H.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting any Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VII.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date or as soon as reasonably practicable thereafter (or, if a Claim is not an Allowed Claim on the Effective Date, on the date that such Claim becomes Allowed or as soon as reasonably practicable thereafter), each Holder of an Allowed Claim or Allowed Interest (or such Holder's affiliate) shall receive the full amount of the distributions that the Plan provides for Allowed Claims and Interests in each applicable Class. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims, distributions on account of any such Disputed Claims shall be made pursuant to the provisions set forth in the Plan. Except as otherwise provided in the Plan, Holders of Claims shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent*

Distributions under the Plan shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Reorganized Debtor.

C.      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out of pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtor.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record holders listed on the Claims Register as of the close of business on the Distribution Record Date, irrespective of any claims trading activity occurring on or after the Distribution Record Date.

2.      Delivery of Distributions

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims, except as otherwise provided in this Article VII, or Interests shall be made to Holders of record as of the Distribution Record Date by the Disbursing Agent: (a) to the signatory set forth on any of the Proof of Claim Filed by such Holder or other representative identified therein (or at the last known addresses of such Holder if no Proof of Claim is Filed or if the Debtor has been notified in writing of a change of address); (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; (c) at the addresses reflected in the Schedules if no Proof of Claim has been Filed and the Reorganized Debtor has not received a written notice of a change of address; or (d) on any counsel that has appeared in the Chapter 11 Case on such Holder's behalf. Subject to this Article VIII, distributions under the Plan on account of Allowed Claims shall not be subject to levy, garnishment, attachment, or like legal process, so that each Holder of an Allowed Claim shall have and receive the benefit of the distributions in the manner set forth in the Plan. The Debtor, the Disbursing Agent, the Reorganized Debtor, or the Plan Administrator, as applicable, shall not incur any liability whatsoever on account of any distributions under the Plan except for gross negligence or willful misconduct.

3.      No Fractional Distributions

No fractional shares of New Retrotope Interests shall be distributed, and no Cash shall be distributed in lieu of such fractional shares. When any distribution pursuant to the Plan on account of an Allowed Claim would otherwise result in the issuance of a number of shares of New Retrotope Interests that is not a whole number, the actual distribution of shares of New Retrotope Interests shall be rounded as follows: (a) fractions of one-half or greater shall be rounded to the next higher whole number and (b) fractions of less than one-half shall be rounded to the next lower whole number with no further payment therefore. The total number of authorized shares of New Retrotope Interests to be distributed pursuant to the Plan shall be adjusted as necessary to account for the foregoing rounding.

4.      Minimum Distributions

Holders of Allowed Claims entitled to distributions of $50 (whether Cash or otherwise) or less shall not receive distributions, and each such Claim shall be discharged pursuant to Article IX and its Holder is forever barred pursuant to Article IX from asserting that Claim against the Debtor, the Reorganized Debtor or the Plan Administrator, as applicable, or their property.

5.      Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of six months from the Effective Date.  After such date, all unclaimed property or interests in property shall revert to the applicable Reorganized Debtor, without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder to such property or Interest in property shall be discharged and forever barred.

E.      *Manner of Payment.*

Unless otherwise set forth herein, all distributions of Cash and the New Retrotope Interests, as applicable, to the Holders of Allowed Claims under the Plan shall be made by the Disbursing Agent.  At the option of the Disbursing Agent, any Cash payment to be made under the Plan may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

F.      *Registration or Private Placement Exemption*

If an Equitization Restructuring or Licensing Transaction occurs, the New Retrotope Interests are or may be "securities," as defined in Section 2(a)(1) of the Securities Act, section 101 of the Bankruptcy Code, and applicable state securities laws.

Pursuant to section 1145 of the Bankruptcy Code, the issuances of the New Retrotope Interests as contemplated by the Plan are exempt from, among other things, the registration requirements of Section 5 of the Securities Act and any other applicable U.S. state or local law requiring registration prior to the offering, issuance, distribution, or sale of Securities.  The New Retrotope Interests (1) are not "restricted securities" as defined in Rule 144(a)(3) under the Securities Act, and (2) are freely tradable and transferable by any initial recipient thereof that (a) is not an "affiliate" of Reorganized Retrotope as defined in Rule 144(a)(1) under the Securities Act, (b) has not been such an "affiliate" within 90 days of such transfer, and (iii) is not an entity that is an "underwriter" as defined in subsection (b) of Section 1145 of Title 11 of the United States Code.

Should the Reorganized Debtor elect on or after the Effective Date to reflect any ownership of the New Retrotope Interests through the facilities of DTC, the Reorganized Debtor need not provide any further evidence other than the Plan or the Confirmation Order with respect to the treatment of the New Retrotope Interests or under applicable securities laws.  DTC shall be required to accept and conclusively rely upon the Plan and Confirmation Order in lieu of a legal

opinion regarding whether the New Retrotope Interests issued under the Plan are exempt from registration and/or eligible for DTC book-entry delivery, settlement, and depository services.

Notwithstanding anything to the contrary in the Plan, no entity (including DTC) may require a legal opinion regarding the validity of any transaction contemplated by the Plan, including whether the New Retrotope Interests issued under the Plan are exempt from registration and/or eligible for DTC book entry delivery, settlement, and depository services.

G.    *Tax Issues and Compliance with Tax Requirements*

**Creditors and Interest Holders concerned with how the Plan may affect their tax liability should consult their own accountants, attorneys, and/or advisors.**

In connection with the Plan, to the extent applicable, the Reorganized Debtor or the Plan Administrator, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Reorganized Debtor or the Plan Administrator, as applicable, shall be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Reorganized Debtor or the Plan Administrator, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, liens, and encumbrances.

H.    *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest as Allowed herein.

I.    *No Postpetition Interest on Claims*

Unless otherwise specifically provided for in an order of the Bankruptcy Court, the Plan, or the Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims other than DIP Claims and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any such Claim other than on account of DIP Claims.

J.    *Setoffs and Recoupment*

The Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, set off against or recoup any payments or distributions to be made pursuant to the Plan in respect of any Claims of any nature whatsoever that the Debtor or the Reorganized Debtor may have against the claimant, *provided that,* the Debtor gives the holder of such Claim no less than 10 days' written

notice of the proposed setoff or recoupment and the holder does not object to the proposed setoff or recoupment within thirty (30) days; *provided*, *further*, that if the holder of such Claim timely objects to the proposed setoff or recoupment , such setoff or recoupment may not be effectuated without prior approval of the Bankruptcy Court; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, the Reorganized Debtor, or their successors of any such Claim it may have against the Holder of such Claim.

K.  *Claims Paid or Payable by Third Parties*

1.  Claims Paid by Third Parties

To the extent that the Holder of an Allowed Claim receives payment in full on account of such Claim from a party that is not a Debtor or Reorganized Debtor, such Claim shall be Disallowed without an objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court. To the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or Reorganized Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the distribution to the applicable Debtor or Reorganized Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid.

2.  Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtor's insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtor's insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to, or action, order, or approval of, the Bankruptcy Court.

3.  Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Notwithstanding anything herein to the contrary, nothing shall constitute or be deemed a release, settlement, satisfaction, compromise, or waiver of any Cause of Action that the Debtor or any other Entity may hold against any other Entity, including insurers under any policies of insurance or applicable indemnity, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

## ARTICLE VIII.
## THE PLAN ADMINISTRATOR

The following provisions shall apply only if an Asset Sale Restructuring occurs and a Plan Administrator is appointed.

A.     *The Plan Administrator*

The powers of the Plan Administrator shall include any and all powers and authority to implement the Plan and to administer and distribute the Plan Administrator Assets and the Distribution Reserve and wind down the business and affairs of the Debtor and the Reorganized Debtor, including: (1) liquidating, receiving, holding, investing, supervising, and protecting the assets of the Reorganized Debtor; (2) taking all steps to execute all instruments and documents necessary to effectuate the distributions to be made under the Plan from the Plan Administrator Assets and the Distribution Reserve; (3) making distributions from the Plan Administrator Assets and the Distribution Reserve as contemplated under the Plan; (4) establishing and maintaining bank accounts in the name of the Reorganized Debtor; (5) subject to the terms set forth herein, employing, retaining, terminating, or replacing professionals to represent it with respect to its responsibilities or otherwise effectuating the Plan to the extent necessary; (6) paying all reasonable fees, expenses, debts, charges, and liabilities of the Reorganized Debtor; (7) administering and paying taxes of the Reorganized Debtor, including filing tax returns; (8) representing the interests of the Reorganized Debtor or the Estate before any taxing authority in all matters, including any action, suit, proceeding, or audit; and (9) exercising such other powers as may be vested in it pursuant to order of the Bankruptcy Court or pursuant to the Plan, or as it reasonably deems to be necessary and proper to carry out the provisions of the Plan.

The Plan Administrator may resign at any time upon 30 days' written notice delivered to the Bankruptcy Court; provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.  Upon its appointment, the successor Plan Administrator, without any further act, shall become fully vested with all of the rights, powers, duties, and obligations of its predecessor and all responsibilities of the predecessor Plan Administrator relating to the Reorganized Debtor shall be terminated.

1.     Plan Administrator Rights and Powers

The Plan Administrator shall retain and have all the rights, powers, and duties necessary to carry out his or her responsibilities under this Plan, and as otherwise provided in the Confirmation Order.  The Plan Administrator shall be the exclusive trustee of the assets of the Reorganized Debtor for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code.

2.     Retention of Professionals

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Reorganized Debtor from the Wind-Down Reserve upon the monthly submission of statements to the Plan Administrator.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary

course of business from the Wind-Down Reserve and shall not be subject to the approval of the Bankruptcy Court.

3.      Compensation of the Plan Administrator

The Plan Administrator's compensation, on a post-Effective Date basis, shall be as described in the Plan Supplement and paid out of the Wind-Down Reserve. Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Plan Administrator on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Plan Administrator in connection with such Plan Administrator's duties shall be paid without any further notice to, or action, order, or approval of, the Bankruptcy Court in Cash from the Wind-Down Reserve if such amounts relate to any actions taken hereunder.

4.      Plan Administrator Expenses

All costs, expenses, and obligations incurred by the Plan Administrator in administering this Plan, the Reorganized Debtor, or in any manner connected, incidental, or related thereto, in effecting distributions from the Reorganized Debtor thereunder (including the reimbursement of reasonable expenses) shall be a charge against the assets of the Reorganized Debtor remaining from time to time in the hands of the Plan Administrator. Such costs, expenses, and obligations shall be paid from the Wind-Down Reserve.

The Debtor and the Plan Administrator, as applicable, shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. However, in the event that the Plan Administrator is so ordered after the Effective Date, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Wind-Down Reserve.

B.      *Wind-Down*

On and after the Effective Date, the Plan Administrator will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court, and the Plan Administrator shall have the power and authority to take any action necessary to wind down and dissolve the Debtor's Estate.

As soon as practicable after the Effective Date, the Plan Administrator shall: (1) cause the Debtor and the Reorganized Debtor, as applicable, to comply with, and abide by, the terms of the Purchase Agreements, Licensing Agreement, and any other documents contemplated thereby; (2) to the extent applicable, file a certificate of dissolution or equivalent document, together with all other necessary corporate and company documents, to effect the dissolution of the Debtor under the applicable laws of the state of Delaware; and (3) take such other actions as the Plan Administrator may determine to be necessary or desirable to carry out the purposes of the Plan. Any certificate of dissolution or equivalent document may be executed by the Plan Administrator without need for any action or approval by the shareholders or board of directors or managers of the Debtor. From and after the Effective Date, except with respect to the Reorganized Debtor as set forth herein, the Debtor (1) for all purposes shall be deemed to have withdrawn its business operations from any state in which the Debtor were previously conducting, or are registered or

50

licensed to conduct, their business operations, and shall not be required to file any document, pay any sum, or take any other action in order to effectuate such withdrawal, (2) shall be deemed to have canceled pursuant to this Plan all Interests, and (3) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. Notwithstanding the Debtor's dissolution, the Debtor shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Plan Administrator.

C.    *Exculpation, Indemnification, Insurance and Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Reorganized Debtor. The Plan Administrator may obtain, at the expense of the Reorganized Debtor and with funds from the Wind-Down Reserve, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Reorganized Debtor. The Plan Administrator may rely upon written information previously generated by the Debtor.

Notwithstanding anything to the contrary contained herein, the Plan Administrator in its capacity as such, shall have no liability whatsoever to any party for the liabilities and/or obligations, however created, whether direct or indirect, in tort, contract, or otherwise, of the Debtor.

D.    *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for the Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of the Debtor or its Estate for any tax incurred during the administration of the Debtor's Chapter 11 Case, as determined under applicable tax laws.

E.    *Dissolution of the Reorganized Debtor*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and upon Case Closing, the Reorganized Debtor shall be deemed to be dissolved without any further action by the Reorganized Debtor, including the filing of any documents with the secretary of state for the state in which the Reorganized Debtor is formed or any other jurisdiction. The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Reorganized Debtor pursuant to the applicable laws of the state of Delaware.

# ARTICLE IX.
## RESERVES ADMINISTERED BY THE PLAN ADMINISTRATOR

The following provisions shall apply only if an Asset Sale Restructuring occurs and a Plan Administrator is appointed.

A.    *Establishment of Distribution Reserve*

The Plan Administrator shall establish a Distribution Reserve (which may be affected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Plan Administrator).

B.    *Undeliverable Distribution Reserve*

1.    Deposits

If a distribution to any Holder of an Allowed Claim is returned to the Plan Administrator as undeliverable or is otherwise unclaimed, such distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such Holder until such time as such distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Article I.A.1 of the Plan.

2.    Forfeiture

Any Holder of an Allowed Claim that does not assert a Claim pursuant to the Plan for an undeliverable or unclaimed distribution within three months after the first distribution is made to such Holder shall be deemed to have forfeited its claim for such undeliverable or unclaimed distribution and shall be forever barred and enjoined from asserting any such claim for the undeliverable or unclaimed distribution against any Debtor, any Estate, the Plan Administrator, the Reorganized Debtor, or its properties or assets.  In such cases, any Cash or other property held by the Reorganized Debtor in the Undeliverable Distribution Reserve for distribution on account of such claims for undeliverable or unclaimed distributions, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, shall become the property of the Reorganized Debtor, notwithstanding any federal or state escheat laws to the contrary, and shall promptly be transferred to the Plan Administrator to be distributed according to the priority set forth in the Plan without any further action or order of the Court; *provided* that any undeliverable or unclaimed distribution on account of an Allowed General Unsecured Claim shall be transferred to the Plan Administrator or Reorganized Retrotope, as applicable.

3.    Disclaimer

The Plan Administrator and his or her respective agents and attorneys are under no duty to take any action to either (a) attempt to locate any Claim Holder or (b) obtain an executed Internal Revenue Service Form W-9 from any Claim Holder; *provided* that, in his or her sole discretion, the Plan Administrator may periodically publish notice of unclaimed distributions.

4.      Distribution from Reserve

Within 15 Business Days after the Holder of an Allowed Claim satisfies the requirements of the Plan, such that the distribution(s) attributable to its Claim is no longer an undeliverable or unclaimed distribution (*provided* that satisfaction occurs within the time limits set forth in Article I.A.1 of the Plan), the Plan Administrator shall distribute out of the Undeliverable Distribution Reserve the amount of the undeliverable or unclaimed distribution attributable to such Claim, including the interest that has accrued on such undeliverable or unclaimed distribution while in the Undeliverable Distribution Reserve, to the Plan Administrator or Reorganized Debtor, as applicable.

C.      *Wind-Down Reserve*

On the Effective Date, the Plan Administrator shall establish the Wind-Down Reserve by depositing Cash from the Plan Administrator Assets in the amount of the Wind-Down Amount into the Wind-Down Reserve.  The Wind-Down Reserve shall be used by the Plan Administrator solely to satisfy the expenses of the Reorganized Debtor and the Plan Administrator as set forth in the Plan; provided that all costs and expenses associated with the winding up of the Reorganized Debtor and the storage of records and documents shall constitute expenses of the Reorganized Debtor and shall be paid from the Wind-Down Reserve.  In no event shall the Plan Administrator be required or permitted to use its personal funds or assets for such purposes.  Any amounts remaining in the Wind-Down Reserve after payment of all expenses of the Reorganized Debtor and the Plan Administrator shall promptly be transferred to the Plan Administrator or Reorganized Debtor, as applicable.

# ARTICLE X.
## PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED, AND DISPUTED CLAIMS

A.      *Allowance of Claims*

After the Effective Date, each of the Reorganized Debtor or the Plan Administrator, as applicable, shall have and retain any and all rights and defenses the Debtor had with respect to any Claim immediately before the Effective Date.  Except as expressly provided in the Plan or in any order entered in the Chapter 11 Case before the Effective Date (including the Confirmation Order), no Claim shall become an Allowed Claim unless and until such Claim is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order (when it becomes a Final Order), in the Chapter 11 Case allowing such Claim.

B.      *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan and notwithstanding any requirements that may be imposed pursuant to Bankruptcy Rule 9019, after the Effective Date, the Reorganized Debtor, the Subchapter V Trustee, or the Plan Administrator, as applicable, shall have the sole authority to File and prosecute objections to Claims, and to: (1) settle, compromise, withdraw, litigate to judgment, or otherwise resolve objections to any and all Claims, regardless of whether such Claims are in a Class or otherwise; (2) settle, compromise, or resolve any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3)

administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court. On and after the Effective Date, the Reorganized Debtor, or the Plan Administrator, as applicable, will use commercially reasonable efforts to advance the claims resolution process through estimation or otherwise.

C.      *Estimation of Claims*

Before, on, or after the Effective Date, the Debtor, the Reorganized Debtor, or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including pursuant to section 502(c) of the Bankruptcy Code for any reason, regardless of whether any party previously has objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim, including during the litigation of any objection to any Claim or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Bankruptcy Court. In the event that the Bankruptcy Court estimates any Claim, such estimated amount shall constitute a maximum limitation on such Claim for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Debtor, Reorganized Debtor, or the Plan Administrator, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim. Notwithstanding section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before seven days after the date on which such Claim is estimated. Each of the foregoing Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

D.      *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the Claims Objection Bar Date.

E.      *Amendments to Claims*

On or after the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Reorganized Debtor, or the Plan Administrator, as applicable, and any such new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further notice to, or action, order, or approval of, the Bankruptcy Court to the maximum extent provided by applicable law.

F.      *No Distributions Pending Allowance*

If an objection to a Claim or portion thereof is Filed, no payment or distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such

Disputed Claim becomes an Allowed Claim, unless otherwise determined by the Reorganized Debtor or the Plan Administrator, as applicable.

G.      *Distributions After Allowance*

To the extent that a Disputed Claim ultimately becomes an Allowed Claim, distributions shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim becomes a Final Order, the Reorganized Debtor shall provide to the Holder of such Claim the distribution to which such Holder is entitled under the Plan as of the Effective Date, less any previous distribution (if any) that was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

# ARTICLE XI.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.      *Discharge of Claims and Termination of Interests*

Effective upon Case Closing, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release of debts provided in sections 1141(d)(1)(A) and all other debts allowed under section 503 of this title except as set forth in section 1192.

B.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

C.      *Release of Liens*

Except as otherwise specifically provided in the Plan, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, upon the Case Closing and concurrently with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert to the Reorganized Debtor and their successors and assigns, in each case, without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by the Debtor or the Reorganized Debtor, as applicable.  The DIP Lenders may execute and deliver all documents reasonably requested by the Reorganized Debtor to evidence the release of such mortgages, deeds of trust, Liens, pledges, and other security interests and shall authorize the Reorganized Debtor to file UCC-3 termination statements (to the extent applicable) with respect thereto.

WBD (US) 56710147v2

D.    *Remedies Upon Default.*

Pursuant to § 1191(c)(3) of the Bankruptcy Code, if the Reorganized Debtor defaults in payments under the Plan, the affected creditor shall notify the Reorganized Debtor, who shall have fifteen (15) days to cure the default. If the Reorganized Debtor does not cure within the 15 days, the creditor may file a notice of the default with the Court and request a hearing to consider appropriate remedies.

E.    **Debtor Release**

**Pursuant to section 1123(b) of the Bankruptcy Code, for good and valuable consideration, on and after the Effective Date, each Released Party is deemed released and discharged by the Debtor, the Reorganized Debtor, Plan Administrator, and their Estates from any and all Causes of Action, including all direct and derivative claims asserted by or on behalf of the Debtor, that the Debtor, the Reorganized Debtor, Plan Administrator, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim or Interest, or that any Holder of any Claim or Interest could have asserted on behalf of the Debtor, based on or relating to, or in any manner arising from, in whole or in part:**

(1)    **the Debtor, the Debtor's in- or out-of-court restructuring efforts, the formulation, preparation, dissemination, negotiation, or filing of the Restructuring Documents;**

(2)    **any Restructuring Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan;**

(3)    **the Chapter 11 Case, the Plan, the DIP Loan Documents, the Asset Purchase Agreement, Licensing Agreement, or Plan Sponsor Agreement, the DIP Facility, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities (including the New Retrotope Interests) pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or**

(4)    **the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.**

**Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims or liabilities arising from any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence or (ii) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Document, or any**

document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

F.      *Release by Holders of Claims or Interests*

As of the Effective Date, each Releasing Party is deemed to have released and discharged the Debtor or Reorganized Debtor, as applicable, and other Released Party from any and all Causes of Action, including all direct and derivative claims asserted by or on behalf of the Debtor, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part:

(1)     the Debtor, the Debtor's in- or out-of-court restructuring efforts, the formulation, preparation, dissemination, negotiation, or filing of the other Restructuring Documents;

(2)     any Restructuring Document, contract, instrument, release, or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan;

(3)     the Chapter 11 Case, the Plan, the DIP Loan Documents, the DIP Facility, the Asset Purchase Agreement, the Licensing Agreement, or Plan Sponsor Agreement, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; or

(4)     the business or contractual arrangements between any Debtor and any Released Party, and any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date relating to any of the foregoing.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (i) any claims or liabilities arising from any act or omission of a Released Party that constitutes fraud, willful misconduct, or gross negligence or (ii) any post-Effective Date obligations of any party or Entity under the Plan, any Restructuring Document, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

G.      *Exculpation*

Except as otherwise specifically provided in the Plan, no Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from any Cause of Action for any claim related to any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, the Plan, the DIP Loan Documents, the Asset Purchase

**Agreement, the Licensing Agreement, the Plan Sponsor Agreement, the DIP Facility, or any Restructuring Document, contract, instrument, release or other agreement or document (including providing any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Exculpated Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Plan, the filing of the Chapter 11 Case, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of Securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; *provided that*, the foregoing "exculpation" shall have no effect on the liability of any entity that results from any such act or omission that is determined in a final order to have constituted fraud, gross negligence, or willful misconduct.**

**H.**    *Injunction*

**Except with respect to the obligations arising under the Plan or the Confirmation Order, and except as otherwise expressly provided in the Plan or the Confirmation Order, all Entities that held, hold, or may hold claims or interests that have been released, discharged, or exculpated pursuant to the Plan, are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtor or Reorganized Debtor, or the other Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such claims or interests; (3) creating, perfecting, or enforcing any Lien or encumbrance of any kind against such Entities or the property of such Entities on account of or in connection with or with respect to any such claims or interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such claims or interests unless such Entity has timely asserted such setoff right in a document filed with the Bankruptcy Court explicitly preserving such setoff, and notwithstanding an indication of a claim or interest or otherwise that such Entity asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan.**

I.    *Protection Against Discriminatory Treatment*

Consistent with section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Reorganized Debtor, or another Entity with whom the Reorganized Debtor has been associated, solely because the Debtor has been a debtor under chapter 11 of the Bankruptcy Code, may have been insolvent before the commencement of the Chapter 11 Case (or during the Chapter 11 Case), or have not paid a debt that is dischargeable in the Chapter 11 Case.

J.    *Recoupment*

In no event shall any Holder of a Claim be entitled to recoup against such Claim any claim, right, or Cause of Action of the Debtor or the Reorganized Debtor, as applicable, unless such Holder actually has provided notice of such recoupment in writing to the Debtor on or before the Confirmation Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.

K.    *Subordination Rights*

Any distributions under the Plan shall be received and retained free from any obligations to hold or transfer the same to any other Holder and shall not be subject to levy, garnishment, attachment, or other legal process by any Holder by reason of claimed contractual subordination rights. Any such subordination rights shall be waived, and the Confirmation Order shall constitute an injunction enjoining any Entity from enforcing or attempting to enforce any contractual, legal, or equitable subordination rights to property distributed under the Plan, in each case other than as provided in the Plan.

**ARTICLE XII.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

A.    *Conditions Precedent to the Effective Date*

It shall be a condition to Consummation of the Plan that the following conditions shall have been satisfied (or waived pursuant to the provisions of Article XII.B hereof):

1.    if the Equitization Restructuring occurs, all conditions precedent to the effectiveness of the Plan Sponsor Agreement shall have been satisfied or duly waived;

2.    if the Asset Sale Restructuring or Licensing Transaction occurs, all conditions precedent to the effectiveness of the Asset Purchase Agreement or Licensing Agreements, as applicable, shall have been satisfied or duly waived;

3.    the DIP Claims have been paid indefeasibly in full in cash or through a credit bid or the DIP Lenders have consented to alternate treatment, including the equitization of such Claims, in writing;

4.    the Confirmation Order shall have been duly entered and in full force and effect;

5.    the Debtor shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan and each of the other transactions contemplated by the Restructuring;

6.    all Allowed Professional Fee Claims approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such Allowed Professional Fee Claims after the Effective Date shall have been placed in the Professional Fee Escrow Account pending approval of the Professional Fee Claims by the Bankruptcy Court; and

7.      the Debtor shall have implemented the Restructuring Transactions in a manner consistent in all material respects with the Plan.

B.      *Waiver of Conditions*

The conditions to Confirmation of the Plan and to the Effective Date of the Plan set forth in this Article XII may be waived only by consent of the Debtor without notice, leave, or order of the Bankruptcy Court or any formal action other than proceedings to confirm or consummate the Plan.

C.      *Substantial Consummation*

"Substantial Consummation" of the Plan, as defined in 11 U.S.C. § 1101(2), shall be deemed to occur on the Effective Date.

D.      *Effect of Nonoccurrence of Conditions to the Effective Date*

If the Effective Date does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall: (1) constitute a waiver or release of any Claims or Interests; (2) prejudice in any manner the rights of the Debtor, any Holders of a Claim or Interest, or any other Entity; or (3) constitute an admission, acknowledgment, offer, or undertaking by the Debtor, any Holders, or any other Entity in any respect.

## ARTICLE XIII.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Subject to the limitations contained in the Plan and Bankruptcy Code section 1193, the Debtor, with the consent of the DIP Lender and Plan Sponsor or Purchaser, as applicable, reserve the right to modify the Plan and seek Confirmation consistent with the Bankruptcy Code and, as appropriate.  The Debtor expressly reserves the right to alter, amend, or modify materially the Plan, with the consent of the DIP Lender and Plan Sponsor or Purchaser, as applicable, one or more times, after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan.

B.      *Effect of Confirmation on Modifications*

Entry of the Confirmation Order shall mean that all modifications or amendments to the Plan occurring after the solicitation thereof are approved and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of the Plan*

The Debtor reserves the right to revoke or withdraw the Plan before the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if Confirmation and Consummation does not occur,

then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Interest or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (i) constitute a waiver or release of any Claims or Interests; (ii) prejudice in any manner the rights of the Debtor or any other Entity, including the Holders of Claims; or (iii) constitute an admission, acknowledgement, offer, or undertaking of any sort by the Debtor or any other Entity.

## ARTICLE XIV.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over the Chapter 11 Case and all matters arising out of or related to the Chapter 11 Case and the Plan, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals;

3.      resolve any matters related to: (a) the assumption or rejection of any Executory Contract or Unexpired Lease and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Claims related to the rejection of an Executory Contract or Unexpired Lease, Cure Claims pursuant to section 365 of the Bankruptcy Code, or any other matter related to such Executory Contract or Unexpired Lease; (b) the Reorganized Debtor amending, modifying, or supplementing, after the Effective Date, pursuant to Article VI hereof, any Executory Contracts or Unexpired Leases to the list of Executory Contracts and Unexpired Leases to be assumed and assigned or rejected or otherwise; and (c) any dispute regarding whether a contract or lease is or was executory or expired;

4.      ensure that distributions to Holders of Allowed Claims are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested, or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to Causes of Action;

7.      adjudicate, decide, or resolve any and all matters related to sections 1141 and 1145 of the Bankruptcy Code;

8.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan;

9.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

10.     resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the Consummation, interpretation, or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.     issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the settlements, compromises, discharges, releases, injunctions, exculpations, and other provisions contained in Article IX hereof and enter such orders as may be necessary or appropriate to implement or enforce such releases, injunctions, and other provisions;

13.     resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim or Interest for amounts not timely repaid pursuant to Article VII.K.1 hereof;

14.     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

15.     determine any other matters that may arise in connection with or relate to the Plan, the Confirmation Order, or the Plan Supplement;

16.     adjudicate any and all disputes arising from or relating to distributions under the Plan or any transactions contemplated therein;

17.     consider any modifications of the Plan, to cure any defect or omission, or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18.     determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

19.     hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

20.     hear and determine all disputes involving the existence, nature, or scope of the release provisions set forth in the Plan, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred before or after the Effective Date;

21.      enforce all orders previously entered by the Bankruptcy Court in the Chapter 11 Case;

22.      hear any other matter not inconsistent with the Bankruptcy Code;

23.      enter an order closing the Chapter 11 Case; and

24.      enforce the injunction, release, and exculpation provisions provided in Article IX hereof.

## ARTICLE XV.
## MISCELLANEOUS PROVISIONS

A.      *Immediate Binding Effect*

Subject to Article XII.A hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, the final versions of the documents contained in the Plan Supplement, and the Confirmation Order, shall be immediately effective and enforceable and deemed binding upon the Debtor or Reorganized Debtor, as applicable, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or the Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtor.  All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim or debt has voted on the Plan.

B.      *Additional Documents*

On or before the Effective Date, the Debtor may File with the Bankruptcy Court such agreements and other documents as may be necessary or advisable to effectuate and further evidence the terms and conditions of the Plan.  The Debtor or the Reorganized Debtor, as applicable, all Holders of Claims and Interests receiving distributions pursuant to the Plan, and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

C.      *Reservation of Rights*

Before the Effective Date, neither the Plan, any statement or provision contained in the Plan, nor any action taken or not taken by any Debtor with respect to the Plan, the Confirmation Order, or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to any Claims or Interests.

D.      *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan or the Confirmation Order shall be binding on, and shall inure to, the benefit of any heir, executor,

administrator, successor, assign, affiliate, officer, director, manager, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

E.    *Service of Documents*

All notices, requests, and demands to or upon the Debtor to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

|  |  |
|---|---|
| the Debtor: | Retrotope, Inc.<br>Attn.: Anil Kumar<br>4300 El Camino Real, Suite 201<br>Los Altos, CA 94022 |
|  | with copies to: |
|  | Womble Bond Dickinson (US) LLP<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Attn.: Matthew P. Ward |
| the Plan Administrator: | Rock Creek Advisors LLC<br>Attn: James Gansman<br>555 5th Avenue, Floor 14<br>New York, New York 10017 |

After the Effective Date, the Reorganized Debtor shall have the authority to send a notice to parties in interest (not including the United States and Subchapter V Trustees) providing that, to continue to receive documents pursuant to Bankruptcy Rule 2002, such party must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002. After the Effective Date, the Reorganized Debtor is authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests. For the avoidance of doubt, the United States and Subchapter V Trustees shall have no obligation to file a renewed request and shall continue to received documents pursuant to Bankruptcy Rule 2002.

F.    *Entire Agreement*

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

G.    *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtor's

counsel at the address above, by visiting https://bmcgroup.com/retrotope, or visiting (for a fee) PACER at http://www.deb.uscourts.gov.

H.     *Nonseverability of Plan Provisions*

If, before Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the Debtor's or Reorganized Debtor's consent, as applicable; and (3) nonseverable and mutually dependent.

## ARTICLE XVI.
## FREQUENTLY ASKED QUESTIONS

**What Is Retrotope, Inc. Attempting to do in Chapter 11?** Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor attempts to restructure the claims and interests held against it. Formulation and confirmation of a plan of reorganization is the primary goal of Chapter 11. When reorganization is not feasible, however, a debtor may propose a liquidating plan under Chapter 11. The plan is the legal document which sets forth the manner and the means by which holders of claims and interests against a debtor will be treated.

**Why am I Receiving this Plan?** In order to confirm a plan of reorganization, or liquidation, the Bankruptcy Code requires that a debtor solicit acceptances of a proposed plan, which it is doing with this Plan. If the creditors and interest holders are satisfied with the information provided in the Plan and the terms of the Plan as proposed, and have voted for the Plan and returned the requisite number of ballots to counsel for the Debtor, the Bankruptcy Court may confirm the Plan as proposed by the Debtor.

**How do I Determine Which Class I am in?** To determine the class of your claim or interest, you must first determine whether your claim is secured or unsecured. Your claim is secured if you have a validly perfected security interest in collateral owned by the Debtor. If you do not have any collateral, your claim is unsecured. The charts contained herein will direct you to the treatment provided to the class in which you are grouped. The pertinent section of the Plan dealing with that class will explain, among other things, who is in that class, what is the size of the class, what you will receive if the Plan is confirmed, and when you will receive what the Plan has provided for you if the Plan is confirmed. Article II lists all classes of claimants and their types of claims or interest.

**Why is Confirmation of a Plan of Reorganization or Liquidation Important?** Confirmation of the Plan is necessary because if the Plan is confirmed, the Debtor and all of its creditors and interest holders are bound by the terms of the Plan. If the Plan is not confirmed, the Debtor may not pay creditors and interest holders as proposed in the Plan while the Debtor remains in bankruptcy.

**What is Necessary to Confirm a Plan of Reorganization or Liquidation?** Confirmation of the Plan requires, among other things, the vote in favor of the Plan of two- thirds in total dollar amount and a majority in number of interest actually voting in each voting class. If the vote is insufficient, the Bankruptcy Court can still confirm the Plan, but only if certain additional elements are shown including that the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the Plan.

**Am I Entitled to Vote on the Plan?** Any creditor of the Debtor whose claim is IMPAIRED and not deemed to reject under the Plan is entitled to vote, if either (i) the creditor's claim has been scheduled by the Debtor and such claim is not scheduled as disputed, contingent, or unliquidated, or (ii) the creditor has filed a proof of claim on or before the last date set by the Bankruptcy Court for such filings. Any claim to which an objection has been filed (and such objection is still pending) is not entitled to vote, unless the Bankruptcy Court temporarily allows the creditor to vote upon the creditor's motion. Such motion must be heard and determined by the Bankruptcy Court prior to the date established by the Bankruptcy Court to confirm the Plan.

**How Do I Determine Whether I am in an Impaired Class?** Article IV of the Plan identifies the classes of creditors or interest holders whose claims are impaired. If your claim or interest is impaired and not deemed to reject, your vote will be considered by the Bankruptcy Court.

**When Is the Deadline by Which I Need to Return My Ballot?** The Plan is being distributed to all claim and interest holders for their review, consideration and approval. The deadline by which ballots must be returned is June 29, 2022. Ballots should be mailed to the following address:

> **Retrotope, Inc.**
> **c/o BMC Group, Inc.**
> **P.O. Box 90100**
> **Los Angeles, CA 90009**
>
> **If by Messenger or Overnight Delivery:**
>
> **Retrotope, Inc.**
> **c/o BMC Group, Inc.**
> **3732 West 120th Street**
> **Hawthorne, CA 90250**

**How do I Determine when and How Much I Will be Paid?** In Article II, the Debtor has provided both written and financial summaries of what it anticipates each class of creditors will receive under the Plan.

WBD (US) 56710147v2

Respectfully submitted, as of the date first set forth above,

Retrotope, Inc.

By: */s/ Daniel Scouler*
Name: Daniel Scouler
Title: Director