## EXHIBIT D

Draft Plan Administrator Agreement

**PLAN ADMINISTRATION AGREEMENT**

This PLAN ADMINISTRATION AGREEMENT, dated as of _____, 2022, is between Retrotope, Inc. ("Retrotope" or the "Debtor"),[1] and Rock Creek Advisors LLC (the "Administrator" or "Plan Administrator").

**RECITALS**

**WHEREAS**, on March 21, 2022, Retrotope filed with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") a voluntary petition for relief under chapter 11 of title 11 of the United States Code;

**WHEREAS**, by order dated _____, 2022, the Bankruptcy Court confirmed the *First Amended Chapter 11 Plan of Liquidation or Reorganization of Retrotope* dated June 23, 2022 (as amended, modified or supplemented to date, the "Plan");

**WHEREAS**, under certain transactions, the Plan requires the execution of the Plan Administration Agreement (the "Agreement") in connection with the implementation of the Plan;

**WHEREAS**, upon the Effective Date of the Plan, Retrotope desires to appoint the Administrator to serve as the Plan Administrator under the Plan, and the Administrator is willing to serve in such capacity, in each case upon the terms set forth the Plan and pursuant to the Plan;

**NOW, THEREFORE**, the parties hereby agree as follows:

1. **Definitions**. Capitalized terms shall have the respective meanings assigned to such terms in the Plan unless expressly defined herein.

2. **Appointment**. Retrotope appoints the Administrator to serve as Plan Administrator under the Plan, and the Administrator hereby accepts such appointment and agrees to serve in such capacity in each case upon the Effective Date of the Plan.

3. **Responsibilities**. The responsibilities of the Plan Administrator shall include the following (collectively, the "Responsibilities"):

    (a) perform under the terms of the Plan as the sole manager, sole director, and sole officer of Retrotope;

    (b) take such actions and execute such documents and instruments as may be necessary to consummate the Asset Sales in accordance with the terms of the Plan;

---

[1] Retrotope, its jurisdiction of organization, and the last four digits of its U.S. taxpayer identification number is Retrotope, a Delaware corporation (8003). The Debtor's corporate headquarters is located at 4300 El Camino Real, Suite 201, Los Altos, CA 94022.

(c) review, reconcile, compromise, settle, or object to all Claims and resolve such objections as set forth in the Plan, free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules;

(d) calculate the amount of Distributions to be made to holders of Allowed Claims in accordance with the Plan, and use Cash to make Distributions in accordance with the Plan as the Disbursing Agent where applicable;

(e) retain, compensate, and employ professionals and other Persons to represent the Plan Administrator with respect to and in connection with its rights and responsibilities;

(f) establish, maintain, and administer all documents and accounts of Retrotope as appropriate;

(g) maintain, conserve, supervise, prosecute, collect, settle, and protect the remaining Assets including the right to receive funding from any Licensing Transaction under the Plan;

(h) following consummation of the Asset Sales, sell, liquidate, transfer, assign, distribute, abandon, or otherwise dispose of the remaining Assets or any part thereof or any interest therein upon such terms as the Plan Administrator determines to be necessary, appropriate, or desirable in its sole discretion;

(i) invest Cash of Retrotope, including any Cash realized from the liquidation of the remaining Assets;

(j) pay the Plan Administrator Expenses from the Wind-Down Reserve in accordance with the Plan;

(k) wind down of the remaining affairs of the Debtor;

(l) prepare and file any and all informational returns, reports, statements, returns, and other documents or disclosures relating to the Debtor or Retrotope that are required under the Plan, by any governmental unit, or by applicable law;

(m) take such actions as are necessary or appropriate to close or dismiss the Chapter 11 Case, comply with the Plan, exercise the Plan Administrator's rights, and perform the Plan Administrator's obligations;

(n) exercise such other powers as deemed by the Plan Administrator to be necessary and proper to implement the provisions of the Plan;

(o) execute any and all documents and instruments necessary to effectuate the provisions of the Plan;

(p) amend Retrotope's organizational documents as required under the Plan, including but not limited to dissolving Retrotope under applicable state law; and

(q) such other responsibilities as may be vested in the Plan Administrator pursuant to the Plan or Bankruptcy Court order that are necessary and proper to carry out the provisions of the Plan or this Agreement.

4. **Powers**. After the Effective Date, the Plan and all remaining property of the Estate shall be managed under the direction of the Plan Administrator as provided by the terms of the Plan. In the performance of the Plan Administrator's duties hereunder, the Plan Administrator shall have the rights and powers of a debtor in possession under Section 1107 of the Bankruptcy Code, and such other rights, powers, and duties incident to causing performance of the obligations under the Plan, including without limitation, the responsibilities under the Plan or otherwise as may be reasonably necessary.

5. **Ultimate Dissolution of the Debtor; Entry of Final Decree**. As soon as practicable after the Effective Date, the Plan Administrator is authorized and empowered to effect the dissolution of Retrotope without the necessity for any other or further actions to be taken by or on behalf of Retrotope or payments to be made in connection therewith. The Plan Administrator in its discretion may execute and file documents and take all other actions as he deems appropriate relating to the dissolution of Retrotope under the laws of Delaware and any other applicable states.

The Plan Administrator shall, promptly after the full administration of the Chapter 11 Case, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order of the Bankruptcy Court to close the Chapter 11 Case. Upon the filing of a motion to close the Chapter 11 Case, the Plan Administrator shall file a final report with respect to the Chapter 11 Case pursuant to Local Rule 3022-1(c).

6. **Retention of Rights to Pursue Causes of Action**. As described in the Plan, as of the Effective Date, the Plan Administrator (as the representative of the Estate) shall retain only the Causes of Action set forth therein.

7. **Compensation**. The Plan Administrator shall be entitled to reasonable compensation from the Wind-Down Reserve until the administration is concluded, plus reimbursement for actual, reasonable and necessary expenses incurred by the Plan Administrator. Except as otherwise provided in the Plan, the Plan Administrator's professionals shall be compensated, from the Wind-Down Reserve, at their respective standard hourly rates (subject to any negotiated discounts) for time spent administering the implementation of the Plan.

8. **Exculpation**. The Plan Administrator shall not have or incur any liability to any third party, including any Holder of a Claim or Interest, for any act taken or omission made in connection with or related to the Plan Administrator's performance of the duties conferred upon him by the Plan and any orders of the Bankruptcy Court, except to the extent an act is finally determined to be the result of gross negligence, willful misconduct or fraud. The Plan Administrator shall be deemed a judicial officer for purposes of immunity from civil action. No Holder of a Claim or Interest or representative thereof shall have or pursue any Cause of Action

against the Plan Administrator or the Plan Administrator's professionals or representatives for taking any action in accordance with the Plan, to implement the provisions of the Plan or any order of the Bankruptcy Court. In all respects, the Plan Administrator, the Plan Administrator's professionals and representatives shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan; provided, however, that the foregoing exculpation shall not apply to any act of gross negligence, willful misconduct or fraud. No provision of this Agreement or the Plan shall require the Plan Administrator to expend or risk the Plan Administrator's own funds or otherwise incur any financial liability in the performance of any of the Plan Administrator's duties as Plan Administrator hereunder or under the Plan, or in the exercise of any of the Plan Administrator's rights or powers, if the Plan Administrator shall have reasonable grounds for believing that repayment of funds or adequate indemnity or security satisfactory to the Plan Administrator against such risk or liability is not reasonably assured to the Plan Administrator.

9. **Indemnification**. Retrotope and the Estate shall, to the fullest extent permitted by applicable law, indemnify and hold harmless the Plan Administrator, from and against any and all liabilities, losses, damages, claims, costs, and expenses, including, but not limited to, attorneys' fees and costs, arising out of or due to the implementation or administration of the Plan or the discharge of the Plan Administrator's duties hereunder or otherwise (the "Related Matters"), except those acts or omissions that are finally determined to have arisen out of the Plan Administrator's gross negligence, fraud or willful misconduct. In the event that, at any time whether before or after termination of this Agreement, as a result of or in connection with this Agreement, the Plan Administrator is required to produce or otherwise review, compile, submit, duplicate, search for, organize or report on any material within the Plan Administrator's possession or control pursuant to a subpoena or other legal (including administrative) process, the Plan Administrator shall be reimbursed by Retrotope or the Estate for the Plan Administrator's out of pocket expenses, including the reasonable fees and expenses of the Plan Administrator's counsel, and will be compensated by Retrotope or its Estate for the time expended at the applicable hourly rate.

10. **Disbursing Agent**. Pursuant to the terms of the Plan, the Plan Administrator shall serve as or may select an alternative disbursing agent for all Allowed Claims.

11. **Removal of the Plan Administrator**. The Plan Administrator may be removed by any party in interest in the Chapter 11 Case for cause, as determined by a final order of the Bankruptcy Court pursuant to a regularly noticed motion by a party in interest in the Chapter 11 Case.

12. **Resignation of the Plan Administrator**. The Plan Administrator may resign by giving not less than thirty (30) calendar days' prior notice thereof in a notice filed in the Chapter 11 Case provided that such resignation shall only become effective upon the appointment of a permanent or interim successor Plan Administrator.

13. **Successor Plan Administrator**. In the event the Plan Administrator is removed or resigns, or if the Plan Administrator otherwise vacates the position, a successor Plan Administrator shall be appointed by the Bankruptcy Court, with the appointment of such nominee as successor Plan Administrator effective upon filing a notice with the Bankruptcy Court. Any successor Plan

Administrator appointed hereunder shall execute an instrument accepting such appointment and shall file such notice of acceptance to the Bankruptcy Court. Thereupon, and to the extent permitted under the Plan, such successor Plan Administrator shall, without any further act, become vested with all the estates, properties, rights, powers, trusts, and duties of the predecessor Plan Administrator with like effect as if originally named herein; provided, however, that a removed or resigning Plan Administrator shall, nevertheless, when requested in writing by the successor Plan Administrator, execute and deliver any reasonable instrument or instruments conveying and transferring to such successor Plan Administrator all the estates, properties, rights, powers, trusts, and duties of such removed or resigning Plan Administrator.

       14.     **Termination of the Plan Administrator**. The Plan Administrator's role as Plan Administrator shall be terminated on the date the Plan Administrator has either obtained authority from the Bankruptcy Court for the entry of the Final Decree or has been relieved of further duties pursuant to the Plan and the terms of the Plan Administrator Agreement.

       15.     **Investments**.  All Cash held by the Plan Administrator in accounts or otherwise shall be invested in accordance with Section 345 of the Bankruptcy Code, the *Order Granting Debtor's Motion for Entry of an Order (A) Waiving the Provisions of Section 345 of the Bankruptcy Code or, in the Alternative, Extending the Time for Compliance, and (B) Granting Related Relief* [D.I. 206], or as permitted by an order of the Bankruptcy Court until the closing of the Chapter 11 Case.

       16.     **Notices**.  Any notices or other communications required or permitted hereunder shall be sufficiently given if in writing and personally delivered or sent by registered or certified mail, postage prepaid, return receipt requested, or sent by facsimile, addressed as follows or to such other address as any party shall have given notice of pursuant hereto:

    In the case of the Plan Administrator:

        Rock Creek Advisors, LLC
        Attn: James Gansman
        555 5th Avenue, Floor 14
        New York, New York 10017

        -AND-

        Matthew P. Ward, Esq.
        Ericka F. Johnson, Esq.
        Morgan L. Patterson, Esq.
        Womble Bond Dickinson (US), LLP
        1313 N. Market Street, Suite 1200
        Wilmington, DE 19801

In the case of Retrotope:

Retrotope, Inc.
Attn. Peter Milner
4300 El Camino Real, Suite 201
Los Altos, CA 94022

17. **Jurisdiction**.  The Bankruptcy Court shall have the continuing and exclusive jurisdiction to interpret and enforce this Agreement and to determine all disputes arising hereunder.

18. **Invalidity**.  In the event that any one or more of the provisions contained in the Plan shall, for any reason, be held invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision of this Agreement.

19. **Counterparts**.  This Agreement may be executed in one or more counterparts, each of which shall be an original, and which together shall constitute a single instrument.

20. **Entire Agreement**.  This Agreement is the entire agreement between the parties and supersedes all prior agreements of the parties with respect to the subject matter hereof.

21. **Plan Controls in Event of Conflict**.  In the event of a conflict between the terms of this Agreement and the Plan, the provisions of the Plan and the Confirmation Order entered in connection therewith shall control.

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date first above written.

**Plan Administrator**

_____
By:
Title:


-AND-


**Retrotope, Inc.**

_____
By:
Title: