IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RETROTOPE, INC.,<br><br>                    Debtor. | Chapter 11<br><br>Case No. 22-10228 (JTD)<br><br>Docket Ref. No. 274 |

**RESPONSE OF RTMFP ENTERPRISES INC. TO OBJECTION OF ROBERT MOLINARI, HARRY SAAL, AND CHARLES CANTOR TO CONFIRMATION OF PLAN AND PROPOSED SALE**

RTMFP Enterprises Inc. ("RTMFP"), the Winning Bidder[1] of substantially all the assets of the above-captioned debtor, Retrotope, Inc. (the "Debtor"), by and through its undersigned counsel, files this response ("Response") to the objection [Dkt. No. 274] (the "Objection") of Robert Molinari, Harry Saal, and Charles Cantor (collectively, the "Dissenting Shareholders") to confirmation of the Debtor's chapter 11 plan and the proposed sale of its assets. In support of this Response, RTMFP respectfully states as follows:

Unfortunately, the Court's message to the Dissenting Shareholders in denying their motion to dismiss the Debtor's above-captioned chapter 11 bankruptcy case (the "Bankruptcy Case") has failed to resonate. In the Objection, they rehash the same, tired storyline and baselessly portray RTMFP's President and Chief Executive Officer, Nitin T. Mehta ("Dr. Mehta"), as the mastermind behind the Debtor's decisions and actions during the Bankruptcy Case and sale of its assets. The Dissenting Shareholders spend several pages in their Objection asserting that Dr. Mehta has

---

[1] Capitalized but undefined terms herein shall have the meanings given to them in the Court's Order (i) Approving the Bidding Procedures ("Bidding Procedures"), (ii) Approving Certain Bidding Protection in Connection with the Sale of the Debtor's Assets, (iii) Scheduling the Bid Deadline and the Auction, (iv) Approving the Form and Manner of Notice Thereof, and (v) Granting Related Relief [Dkt. No. 197] (the "Bid Procedures Order").

continued to nefariously control and influence the Debtor's actions throughout the Bankruptcy Case. These assertions are unwarranted.

Dr. Mehta and his family deserve far more credit from the Dissenting Shareholders in continually keeping the Debtor operating as a going concern. Not only have they provided debtor-in-possession funding throughout the pendency of the Bankruptcy Case, but Dr. Mehta and his family also invested $35,000,000.00 during the 38 months prior to the filing of the Debtor's petition to ensure that the Debtor had access to the necessary funding so its clinical trials for its groundbreaking drugs would continue. Seemingly, each time Dr. Mehta and his family made such funding available, the Dissenting Shareholders would create unnecessary roadblocks and attempt to dictate the use of these funds without demonstrating any willingness to provide financing on their own. As reflected throughout the Bankruptcy Case, the Dissenting Shareholders have continued this pattern of behavior.

However, undaunted by the Dissenting Shareholders, the Debtor implemented a commercially reasonable sale process with the help of an impartial financial advisory firm, Rock Creek Advisors, LLC ("Rock Creek") and investment banker, SSG Capital Advisors, LLC ("SSG"). In connection with this process, the Debtor determined in its sole discretion that RTMFP's bid of $27,000,000.00 (the "Purchase Price"), which is comprised of the Debtor's current indebtedness owed to RTMFP, as debtor-in-possession lender in the Bankruptcy Case in the amount of $8,000,000.00 (the "Credit Bid"), plus $19,000,000.00 in cash is the highest and best offer when compared to the bid submitted by Kodiak Sciences Inc. ("Kodiak"), the only other qualified bidder for the Debtor's assets.[2]

---

[2] RTMFP vehemently denies any assertions made by the Dissenting Shareholders in the Objection that Dr. Mehta attempted to influence and control the Debtor in connection with the valuation of Kodiak's bid for the Debtor's assets. While RTMFP believes the cash-equivalent valuation of the Kodiak bid is much lower than RTMFP's winning bid, Kodiak engaged in similar discussions with the Debtor and its professionals in reviewing the Debtor's valuation of

> i. ***As a minority investor, Dr. Mehta is not an insider of the Debtor and did not exercise any control over the Debtor's actions during the Bankruptcy Case and Auction of its assets.***

Despite an arms-length Auction conducted in accordance with the Bid Procedures Order and the approved Bidding Procedures, the Dissenting Shareholders maintain that Dr. Mehta both continues to control the Debtor and effectively demanded that RTFMP be named the highest and best bid at the Auction. But nothing could be further from the truth. As previously discussed at length in RTMFP's response to the Dissenting Shareholders' motion to dismiss the Bankruptcy Case [Dkt. No. 39], as well as the hearing held on the motion to dismiss on April 14, 2022, at no relevant times has Dr. Mehta been an "insider" of the Debtor with the power to influence the Debtor's decision-making during the Bankruptcy Case or the sale of the Debtor's assets. While Dr. Mehta is a shareholder of the Debtor who, along with his family, have invested millions of dollars to enable the Debtor to operate and develop drugs for the purpose of saving lives, neither Dr. Mehta nor any entity in which he has any direct or indirect involvement possess a 20% ownership interest in the Debtor.[3]

Furthermore, both Dr. Mehta and the Debtor have taken the necessary steps to avoid any hint of bad faith throughout the pendency of the Bankruptcy Case. After Dr. Mehta resigned as a

---

the Kodiak bid. Further, the subchapter 5 trustee was present when Dr. Mehta engaged in dialogue with the Debtor and its professionals.

[3] As previously demonstrated in the *Declaration of Nitin T. Mehta in Support of Debtor's Objection to Motion for Order (1) Dismissing, or Abstaining From, Chapter 11 Case; or (2) Remove [sic] Debtor's Current Management and Expand [sic] Role of Subchapter V Trustee* [Dkt. No. 66], Dr. Mehta owns, in his individual capacity, 240,000 common shares in the Debtor. In addition, Dr. Mehta possesses an ownership interest in several investment vehicles, including a 55% interest in Mehta Family Partners and a 100% ownership interest (jointly with his wife) in (1) Millennium Trust Company LLC Custodian Meena N. Mehta Roth IRA, and (2) Millennium Trust Company LLC Custodian Nitin T. Mehta Roth IRA. Through these investment vehicles, Dr. Mehta owns 4,068,501 Series C Preferred Shares of the Debtor and another 343,750 Series D Preferred Shares. Thus, ***in totality***, Dr. Mehta owns, both personally and through his investment vehicles, 4,652,251 shares of the Debtor, which equals only a 2.58% ownership interest. In addition, Dr. Mehta's adult children maintain ownership in the Debtor through four trusts: Neil Mehta 2018 Descendants' Trust, Nayan Mehta 2018 Descendants' Trust, Neil Mehta - 1996 Trust and Nayan Mehta - 1996 Trust, which are irrevocable trusts administered by Dr. Mehta's adult children or independent trustees, and which Dr. Mehta has no ownership interest or control and is not a beneficiary in any manner.

member of the Debtor's Board of Directors (the "Board") on March 1, 2022—prior to the commencement of the Bankruptcy Case—the Debtor appointed two independent directors, Dan Scouler and Bryan Ryniker, who now serve on the Board with Misha Shchepinov, the co-founder of the Debtor, and Peter Milner, the former Chief Medical Officer of the Debtor, who was previously appointed to the Board by the Dissenting Shareholders in 2015. These directors, with the impartial support of Rock Creek and SSG, have executed the Board's duties throughout the entirety of the Bankruptcy Case, including increased oversight of the Debtor's management and operations. Since Dr. Mehta's resignation, he has had no role with the Debtor's day-to-day operations, and his interactions with the Debtor have been solely in connection with (i) RTMFP's negotiation of a Court-approved debtor-in-possession loan (the "DIP Loan") in the Bankruptcy Case and (ii) as a potential purchaser of the Debtor's assets. *See Declaration of Nitin T. Mehta in Support of Sale of Debtor's Assets to RTMFP Enterprises Inc. or its Designee* (the "Mehta Decl."). But despite all of this, the Dissenting Shareholders continue to regurgitate baseless arguments that Dr. Mehta is controlling the Debtor's operations and management and that he is an "insider" of the Debtor.

What the Dissenting Shareholders have repeatedly overlooked is the value that RTMFP and Dr. Mehta have provided to the Debtor's bankruptcy estate. This is the positive influence that RTMFP and Dr. Mehta have provided to the Debtor.

### ii. *RTMFP is a good faith purchaser of the Debtor's assets.*

RTMFP is a good faith purchaser of the Debtor's assets pursuant to 11 U.S.C. § 363(m). As set forth in the Mehta Decl., the Auction was at all times conducted openly, at arms-length and in good faith, and the Debtor complied with the terms set forth in the Bid Procedures Order and Bidding Procedures. *See* Mehta Decl. at ¶ 7. In addition, RTMFP has no affiliation whatsoever

with Kodiak. *Id.* at ¶ 5. At no time did RTMFP collude with any bidder, including Kodiak, to suppress the Purchase Price for the Debtor's assets. *Id.* at ¶ 8. This is evident by RTMFP's own bid, which was both $19,000,000.00 more than the amount of the Debtor's current indebtedness owed to RTMFP under the DIP Loan, and $9,000,000.00 more than RTMFP's initial stalking horse bid to acquire the Debtor's assets. *Id.* at ¶¶ 3-6. The updated Purchase Price takes into account the satisfaction of all cure costs that shall be due and owing under certain Contracts that RTMFP has agreed to assume as part of the sale. *Id.* at ¶ 14.

Dr. Mehta has had no role in the day-to-day operations of the Debtor prior, during, or after completion of the Auction. *Id.* at ¶ 11. His most recent interactions with the Debtor have been solely in connection with (i) RTMFP's negotiation of the Asset Purchase Agreement, including a First Amendment to the Asset Purchase Agreement for the purpose of reflecting the modified purchase price for the Debtor's assets and assumption and assignment of executory contracts and unexpired leases for the purpose of operating as a going-concern entity, and (ii) transition of the existing business. *Id*. All discussions with the Debtor occurred after Dr. Mehta's resignation from the Board, and RTMFP specifically commenced its good faith negotiations with the Debtor in connection with the Auction through counsel and/or SSG. *Id.*[4] At the Auction, the Debtor determined, with the support of its impartial financial advisor and investment banker, that RTMFP's bid was both the highest and best bid.

Although Kodiak also offered a sizeable bid, consisting of the Credit Bid, plus $10.2 million, the Debtor concluded that this bid was too speculative in nature and does not match the definitive offer made by RTMFP, particularly since it includes certain milestones and fees that

---

[4] Dr. Mehta has engaged in discussions with Anil Kumar, the Debtor's former president, and Yvonne Kao, Debtor's controller with regard to these items as well as additional funding made available to the Debtor as part of the DIP Loan. *Id*. at ¶ 11.

would be earned only when the Debtor's lifesaving drugs are approved by the Food and Drug Administration. Moreover, Kodiak has still yet to definitively indicate whether it will provide the funding necessary to develop the Debtor's technology and ensure that the Debtor's drug trials will continue. Without such funding, no possibility exists that the milestones Kodiak proclaims are worth millions of dollars will materialize. Finally, despite the assertion that these milestones are significantly more than RTMFP bid, Kodiak showed no willingness at the Auction to further increase the cash portion of its bid. This further underscores that Kodiak's bid is speculative in nature and that not even Kodiak has much confidence that its offer will become a reality.

Conversely, RTMFP has offered more upfront cash than the Kodiak bid in the form of a guaranteed payment and did so at arms-length and in good faith with the Debtor. *Id.* at ¶ 13. In situations like this, deference to the Debtor's business judgment is critical. The Debtor should not be forced into accepting a non-guaranteed payment. Thus, the Court should hold that RTMFP's bid is the highest and best offer for the Debtor's assets.

## **CONCLUSION**

For the reasons stated above, as well as in the Debtor's own response to the Objection of the Dissenting Shareholders, which RTMFP hereby joins, RTMFP respectfully requests that the Court confirm the Debtor's plan, approve the proposed sale to RTMFP or its designee, and overrule the Dissenting Shareholders' Objection. Despite the latest round of false assertions raised by the Dissenting Shareholders in the Objection, Dr. Mehta does not control the Debtor and is not the orchestrator of the Debtor's Bankruptcy Case who exerted influence over the sale of the Debtor's assets. Rather, the Debtor's management team, with heightened oversight from the Debtor's newly consummated Board and assistance from the Debtor's impartial professionals and advisors, has determined that RTMFP has provided the highest and best bid for the Debtor's assets as a good

faith purchaser.  Accordingly, this Court should approve the sale of the Debtor's assets to RTMFP and confirm the Debtor's proposed chapter 11 plan.

Date:  July 7, 2022                                     Respectfully submitted,

                                                 **CHIPMAN BROWN CICERO & COLE, LLP**

                                                 */s/ Mark L. Desgrosseilliers*
                                                 Mark L. Desgrosseilliers (No. 4083)
                                                 Hercules Plaza
                                                 1313 North Market Street, Suite 5400
                                                 Wilmington, Delaware 19801
                                                 Telephone:     (302) 295-0192
                                                 Email:             desgross@chipmanbrown.com

                                                 -and-

                                                 Scott B. Lepene (Ohio Bar #0076763)
                                                 *Admitted Pro Hac Vice*

                                                 **THOMPSON HINE LLP**
                                                 3900 Key Center
                                                 127 Public Square
                                                 Cleveland, OH 44114-1291
                                                 (216) 566-5520 (Direct)
                                                 (216) 566-5800 (Facsimile)
                                                 Scott.Lepene@ThompsonHine.com

                                                 -and-

                                                 */s/ Sean A. Gordon*
                                                 Sean A. Gordon (Atlanta #777350)
                                                 *Admitted Pro Hac Vice*

                                                 **THOMPSON HINE LLP**
                                                 Two Alliance Center
                                                 3560 Lenox Road NE
                                                 Suite 1600
                                                 Atlanta, GA 30326-4266
                                                 (404) 407-3678 (Direct)
                                                 (404) 541-2905 (Facsimile)

                                                 *Counsel for RTMFP Enterprises Inc.*