FIN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | ) Chapter 11 |
| RETROTOPE, INC.,[1] | ) Case No. 22-10228 (JTD) |
| Debtor. | ) Docket Ref. No. 241 |

# DECLARATION OF BRIAN AYERS IN SUPPORT OF THE FIRST AMENDED CHAPTER 11 PLAN OF LIQUIDATION OR REORGANIZATION OF RETROTOPE, INC.

I, Brian Ayers, hereby declare (the "Declaration") that the following is true and correct to the best of my knowledge, information, and belief.

1. I am a managing director at Rock Creek Advisors, LLC ("Rock Creek"). I am over 18 years of age. I have over 20 years of experience in business advisory and consulting services involving restructurings, bankruptcy, and insolvency. I make this Declaration in support of the above-captioned debtor's (the "Debtor") the *First Amended Chapter 11 Plan of Liquidation or Reorganization of Retrotope, Inc.* [Docket No. 241] (as may be amended, the "Plan"). I am authorized to submit this Declaration on behalf of the Debtor. If called upon to testify, I could and would competently testify to the facts set forth herein.

2. Except as otherwise set forth herein, all statements in this Declaration are based on my personal knowledge, my familiarity with the Debtor's operations or my review of relevant documents and records of the Debtor (the "Books and Records").

---

[1] The Debtor in this chapter 11 case, its jurisdiction of organization, and the last four digits of its U.S. taxpayer identification number is Retrotope, a Delaware corporation (8003). The Debtor's corporate headquarters is located at 4300 El Camino Real, Suite 201, Los Altos, CA 94022.

3. In early February 2022, the Debtor engaged Rock Creek to act as financial advisors to the Debtor. In that capacity, I have reported to the Debtor's President and to the Debtor's board of directors (the "Board").

4. In the course and scope of my engagement, I have become familiar with the Debtor's operations and I have been personally involved with analyzing the Debtor's assets, liabilities, funding, cash flow, budget, balance sheet, and financing needs.

## THE DEBTOR'S LIMITED LIQUIDITY

5. Prior to the March 21, 2022 filing date (the "Petition Date"), the Debtor utilized equity funding in order to capitalize its research and clinical trials of its two promising drug candidates that are currently in human and animal trials. The first, RT001 is a clinical stage drug focused on curtailing Lipid Peroxidation (LPO) and in examining that impact on rare, fatal, neurodegenerative diseases such as ALS (Lou Gehrig's), Progressive Supranuclear Palsy (PSP) and others. The second drug is RT011, which is in animal trials for dry age-related macular degeneration.

6. Because the Debtor's drug candidates are still in the research and development stage, the Debtor's business does not generate meaningful income. The limited income that the Debtor has generated historically is from dividends and earned interest. The Debtor's net income and cash flow has been negative since inception primarily as a result of continued research and development efforts. A true and correct copy of the Retrotope Inc. Balance Sheet as of December 31, 2021 is Debtor's Exhibit RT 13. A true and correct copy of the Retrotope Inc. Profit and Loss January 2021 – January 2022 is Debtor's Exhibit RT 14. A true and correct copy of Retrotope Inc. Statement of Cash Flows FY 2021 & Jan 22 is Debtor's Exhibit RT 15. A true and correct copy of Retrotope Inc.'s 2020 Tax Return is Debtor's Exhibit RT 16.

7. During December 2021 and January 2022, the Debtor delivered the disappointing news to the shareholders in a series of meetings regarding the failures of certain of the RT001 trials. Following the failed trials, the Debtor's liquidity situation began to deteriorate. At the end of December 2021, the Debtor had a cash balance of $6.3 million. At the end of January 2022, the Debtor had a cash balance of $4.2 million and would need to slow operations without additional cash infusions.

8. It is my understanding that in early February 2022, the Debtor explored a potential sale or other transaction, and hired Rock Creek to assist. Rock Creek was hired by Mr. Anil Kumar, the Debtor's then-president, who previously worked with one of Rock Creek's partners. The Debtor and Rock Creek provided a presentation to the shareholders regarding a potential Assignment for the Benefit of Creditors (an "ABC") effectuated through the Delaware Chancery Court to maximize the value of the Debtor's assets for all stakeholders. The potential ABC was rejected by the shareholders. On February 18, 2022, the Objectors sent a letter to certain shareholders suggesting a number of alternatives, including a subchapter V bankruptcy filing. A true and correct copy of the February 18, 2022 letter is Debtor's Exhibit RT 17.

9. As of the Petition Date, the Debtor's capital structure consisted of no secured debt, unsecured trade debt totaling of over $4 million with no revenue source and $1.8 million cash on hand. Each month, the Debtor's expenses average $2 million. Accordingly, as of the Petition Date, there was only liquidity to continue to pay employees and creditors for less than one more month without an immediate cash infusion.

10. While the Debtor has promising products in the pipeline, those products are not yet approved for production, require significant additional investment to bring to market, and are not expected to generate revenue in the near term. The Debtor will not have any income for at least 7

years at a minimum. Accordingly, continuous funding is required for the Debtor to continue its research and development efforts.

## THE DEBTOR'S PLAN[2]

11.   On May 27, 2022, the Debtor filed its *Chapter 11 Plan of Liquidation or Reorganization of Retrotope, Inc.* [Docket No. 209]. In conjunction therewith, I prepared a Liquidation Analysis [Docket No. 210] which reflected the comparison of Creditor and Interest Holder recoveries in a hypothetical chapter 7 and the Debtor's Plan when distributing the proceeds of the Stalking Horse Bid.

12.   Following the Auction, I revised the Liquidation Analysis to reflect the increased Stalking Horse Bid as a result of the competitive bidding process. A revised copy of the Liquidation Analysis is attached hereto as <u>Exhibit A</u>.

13.   As set forth in the Liquidation Analysis, the Plan represents a better outcome for Creditors and Interest Holders than a conversion to chapter 7. In a chapter 7, there would be an increase in administrative fees which would lower distributions and a necessitate a renewed claims bar date which would increase the claims pool and delay distributions to Creditors and Interest Holders. Further, the sale proceeds that will be realized from the Closing of the Stalking Horse Bidder would be eliminated (or severely reduced) if the Debtor's assets were sold through a chapter 7 rather than a going concern in a chapter 11 due to the loss of the Debtor's employees and the cessation of the Debtor's animal and human trials.

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

- 2 -

## CONCLUSION

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: July 10, 2022                                        */s/ Brian Ayers*
                                                             Brian Ayers