IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| RETROTOPE, INC., | Case No. 22-10228 (JTD) |
| | Re Docket Number 209 |
| Debtor. | |

### RETROTOPE, INC.'S MOTION IN LIMINE TO EXCLUDE TESTIMONY OF RICHARD J. MANNING

Retrotope, Inc. (the "Debtor"), by and through its undersigned counsel, and hereby moves this Honorable Court to preclude Robert Molinari, Harry Saal, and Charles Cantor (collectively, the "Shareholder Group") from presenting the testimony of Richard J. Manning ("Manning") in opposition to the Asset Sale contained within Debtor's *First Amended Chapter 11 Plan of Liquidation or Reorganization of Retrotope, Inc.,* dated June 23, 2022 ["Plan"]. In support of its Motion, the Debtor respectfully states the following:

### INTRODUCTION

1. "It is well established in the law that a plaintiff generally must assert his own legal rights and interests…In the context of bankruptcy sales, this principle has for decades fallen under the rubric that a disappointed bidder lacks standing to challenge the outcome of an auction, except for matters regarding the integrity of the auction process… Aside from circumstances that bear on the integrity of the auction process, a disappointed bidder is thus outside the 'zone of interests' protected by Section 363 of the Bankruptcy Code." *In re MTE Holdings LLC*, No. 19-12269 (CTG), 2021 WL 3743201, at *10 (Bankr. D. Del. Aug. 17, 2021).

2.	Under Delaware law, the doctrines of champerty and maintenance preclude those who otherwise lack a recognized interest from providing support to continue any litigation. *See Charge Injection Techs., Inc. v. E.I. Dupont De Nemours & Co.*, No. CV N07C-12-134-JRJ, 2016 WL 937400, at *3 (Del. Super. Ct. Mar. 9, 2016).

3.	Delaware law continues to recognize the doctrines of champerty and maintenance. *See Charge Injection Techs., Inc. v. E.I. DuPont de Nemours & Co.*, No. CV N07C-12-134 JRJ, 2014 WL 891286, at *1 (Del. Super. Ct. Feb. 27, 2014); *see also Se. Chester Cnty. Refuse Auth. v. BFI Waste Servs. of Pennsylvania, LLC.,* No. CV K14C-06-016 JJC, 2017 WL 2799160, at *7 (Del. Super. Ct. June 27, 2017) ("Champtery was developed 'to prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of law.'").

4.	Federal courts apply the doctrine, even in the bankruptcy context. *See In re DesignLine Corp*, 565 B.R. 341, 348 (Bank. W.D.N.C. 2017) (precluding trustee's agreement with entity agreeing to finance litigation on champerty grounds); *see also In re Primus*, 436 U.S. 412, 425, n.15 (1978) ("Put simply, maintenance is helping another prosecute a suit; champerty is maintaining a suit in return for a financial interest in the outcome….").

5.	Notwithstanding these well-established principals, it is precisely this prohibited conduct that Kodiak Sciences, Inc. ("Kodiak") is attempting to foist upon the Court. After losing the auction, Kodiak knew it lacked standing to challenge the outcome and so reached out to the Shareholder Group and devised a plan whereby Kodiak could challenge the outcome of the auction by funding and facilitating an expert (Dr. Manning). In exchange, the Shareholder Group agreed to call Dr. Manning as a witness in an effort to overturn the Asset Sale. With the Shareholder Group as the front, Kodiak (which has agreed to pay for 90% of Mr. Manning's fees) worked with

Dr. Manning and counsel for the Shareholder Group in the two weeks since the auction to produce a 156-page report that seeks to challenge the valuation that the Debtor's investment banker, SSG Capital Advisors, LLC ("SSG"), used at the auction.

6. The Shareholder Group has now made the issue of SSG's valuation its central argument in opposition to the Asset Sale, relying entirely on Dr. Manning and his report. The Bankruptcy Court should not condone Kodiak's efforts to end-run the long-standing rule that a losing bidder lacks standing to challenge the outcome of an auction.

7. Allowing Dr. Manning to testify (purportedly on "behalf of the Shareholder Group") will only embolden future disappointed bidders to seek out a willing party with standing to be their strawman to allow them to challenge an auction result. To maintain the integrity of future bankruptcy sale processes, the Court should grant the Debtor's motion and preclude Dr. Manning from testifying.

## FACTUAL BACKGROUND

8. On June 27, 2022, Kodiak lost the auction for the Debtor's assets. According to Kodiak's president, Dr. Victor Perlroth, Kodiak discussed with its counsel its belief that SSG's valuation was not accurate. (Perlroth deposition, 58:16-20).[1] However, Kodiak knew it did not have standing to challenge the auction process. (*Id*. 58:22-25, 59:2).

9. Nonetheless, Dr. Perlroth testified, "Kodiak felt that it was important to bring an expert in because [Kodiak] didn't feel that [its] bid was assessed and valued properly during the auction. So we wanted to bring in an expert and the expert, we don't know the exact price, but it may be expensive. And so because [Kodiak] see[s] it as a continuation of the process of evaluating

---

[1] Deposition excerpts are attached hereto at Exhibit A.

and exploring Retrotope, we wanted to bring in this expert. And it's expensive. And so Kodiak made [a] proposal." (Perlroth, 56:17-25, 57:1-6).[2]

10.     At the direction of Kodiak, its counsel reached out to counsel for the Shareholder Group to make the proposal; namely, that Kodiak would pay for 90% of the expert's fee in exchange for the Shareholder Group to allow the expert the opportunity to testify in an effort to overturn the results of the auction.  (Perlroth, 56:17-25, 57:1-6, 57:9-20).

11.     To be clear, this proposal/plan was not something that had originated with the Shareholder Group.  In their depositions, each member of the Shareholder Group denied requesting Kodiak enter into such an arrangement.  Dr. Cantor testified he "was not involved" in the arrangement whereby Kodiak agreed to pay for nearly all of the expert's fees.  (Cantor depo, 99:5-10, 20-22). Dr. Molinari likewise denied having any involvement in the arrangement, explaining that he only learned out about the arrangement *after* his counsel had agreed to the arrangement. (Molinari, 76:19-25, 77:2-4).  And Dr. Saal denied ever requesting Kodiak to agree to such arrangement.  In fact, Dr. Saal testified he never talked with Kodiak about the arrangement at any time. (Saal, 50:3-25).

12.     Kodiak ultimately hired Dr. Richard Manning.

13.     Dr. Manning testified that the origin of his involvement with this case came from a telephone call from Kodiak's counsel a few weeks ago, asking whether he would be interested in providing an expert report in the case.  (Manning depo, 31:17-24).  Dr. Manning acknowledged that Kodiak was responsible for paying 90% of his bill, but he nonetheless entered into an engagement letter which stated that he had "been retained" by the Shareholder Group's counsel, Buchalter.  (Manning depo,32:19-21, 33:17-22).

---

[2] It should be noted that Kodiak never attempted to value its own bid, even before the auction.  (Perlroth, 118:20-25-121:2-18).

4

14.  Over the course of the next two weeks, Dr. Manning and other members of his firm spent in excess of 100 hours involved in the case. During that time, Dr. Manning had roughly six (6) meetings/calls with lawyers. Kodiak's lawyers and the Shareholder Group's lawyers were often on the call together. (Manning depo, 35:25, 36:1-9).

15.  In support of Kodiak's efforts, Dr. Perlroth met with Dr. Manning for over an hour. Dr. Manning had one conversation with all members of the Shareholder Group, and then one unprompted and unexpected call from Dr. Molinari. (Manning depo, 36:16-20). For his time, Dr. Manning has charged $985/hour, his standard hourly rate.

16.  On July 8, 2022, the Shareholder Group filed Dr. Manning's 156-page report with the Court. *See* Docket No. 300. The Shareholder Group has likewise listed Dr. Manning as its expert witness to testify.

17.  The Debtor now brings this Motion in Limine to Exclude Mr. Manning from testifying on behalf of the Shareholder Group.

**ARGUMENT**

18.  "Maintenance 'is an officious intermeddling in a suit which in no way belongs to the intermeddler by maintaining or assisting either party to the action, with money or otherwise, to prosecute it or defend it.'" *Charge Injection Techs., Inc.*, No. CV N07C-12-134-JRJ, 2016 WL 937400, at *4. "An 'officious intermeddler' is '[s]omeone who confers a benefit on another without being requested or having a legal duty to do so, and who therefore has no legal grounds to demand restitution for the benefit conferred.'" *Id*.

19.  Applying those principals, it is clear that Kodiak—which has no standing to challenge the Asset Sale—is "intermeddling in a suit which in no way belongs to" it. Kodiak's intermeddling is clearly "officious," given that it has plainly conferred a benefit on the Shareholder

Group without being requested or having any legal duty to do so, and therefore has no legal grounds to demand restitution for the payments it has made to Dr. Manning on the Shareholder Group's behalf.

20. But this situation is more than simply an outsider attempting to provide assistance to a party to litigation who might otherwise not have the necessary funds to retain an expert. Instead, this is a clear attempt by Kodiak to circumvent the well-established legal doctrine that holds Kodiak has not standing to challenge the Asset Sale. Dr. Perlroth admitted as much, testifying that Kodiak came up with its plan after learning from its counsel that it did not have the legal ability (i.e., standing) to directly challenge the Asset Sale.

21. Kodiak's boldness did not stop there. In what can only be described as a further step in Kodiak's "…continuation of the process of evaluating and exploring Retrotope," (Perlroth, p.56-57), Kodiak filed a self-serving "Statement" in which it sought to insert itself into the approval of the Asset Sale. *See* Docket No. 275. In its Statement, Kodiak forecasted that it planned on "offering factual evidence" at the upcoming July 11 hearing. *See* Docket No. 275, p.4. In furtherance of Kodiak's plan, the Shareholder Group has listed Dr. Perlroth as a witness on its Witness List.

22. Respectfully, the Court should not condone Kodiak's plan and allow it to circumvent well-established precedent. Although Kodiak contends in its Statement that the expert retained will provide an "independent and third-party valuation of Kodiak's bid," *See* Docket No. 275, p.3, Dr. Manning's testimony on that ground is neither independent nor relevant. Federal Rule of Evidence 702 requires the Court to ensure expert testimony is admissible only if it is relevant to the issue at hand. *Daubert v. Merrell Dow Pharms*, 509 U.S. 579, 597 (1993).

23. Alternatively, the Court should preclude Kodiak from presenting any evidence at the upcoming hearing, including any testimony by Dr. Perlroth (even if called by the Shareholder Group). Dr. Perlroth undoubtedly intends on presenting evidence about Kodiak's bid and its (Kodiak's) view of its bid. However, the law is clear—the disappointed bidder lacks standing to challenge the results of the Asset Sale. Dr. Perlroth's attempt to provide testimony about Kodiak is simply another attempt to get around this long-standing precedent.

WHEREFORE, for the foregoing reasons, the Debtor respectfully requests this Court enter an order precluding Dr. Richard Manning from testifying at the July 11, 2022 hearing on behalf of the Shareholder Group and/or, at a minimum, precluding Kodiak from offering any evidence at the hearing.

Dated: July 10, 2022
       Wilmington, Delaware

**WOMBLE BOND DICKINSON (US) LLP**

*/s/ Ericka F. Johnson*
Matthew P. Ward (DE Bar No. 4471)
Ericka F. Johnson (DE Bar No. 5024)
Morgan L. Patterson (DE Bar No. 5388)
1313 North Market Street, Suite 1200
Wilmington, Delaware 19801
Telephone: (302) 252-4320
Facsimile: (302) 252-4330
Email: matthew.ward@wbd-us.com
Email: ericka.johnson@wbd-us.com
Email: morgan.patterson@wbd-us.com

*and*

Phillip J. Mohr (admitted *pro hac vice*)
300 North Greene Street, Suite 1900,
Greensboro, NC, 27401
Telephone: (336) 721-3577
Facsimile: (336) 733-8358
Email:phillip.mohr@wbd-us.com

*Counsel to the Debtor*