IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>RETROTOPE, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-10228 (JTD) |

**DECLARATION OF JEFFREY GARFINKLE IN SUPPORT OF MOTION FOR SUBSTANTIAL CONTRIBUTION CLAIM**

I, Jeffrey Garfinkle, declare and state the following:

1. I have personal knowledge of the facts stated herein, and if called as a witness, could and would testify competently thereto.

2. I am an attorney duly admitted to practice in the States of California and Washington, the United States Supreme Court, six United States Courts of Appeal, and all the United States District Courts in California and Washington. I am admitted in this Court on a *pro hac vice* basis in the above Chapter 11 case of Retrotope, Inc. ("Retrotope" or "Debtor").

3. I submit this declaration in support of Shareholder Group's Motion for Substantial Contribution Claim (the "Motion").

4. While I have been a general corporate insolvency and bankruptcy attorney for more than 30 years, I have subspecialty in pharmaceutical-related insolvency matters. For nearly 25 years, I have served as primary U.S. insolvency, bankruptcy and collections counsel to McKesson Corporation, the world's largest healthcare conglomerate and largest distributor of pharmaceutical and medical-surgical products. In this capacity, I have handled hundreds of pharmaceutical and

1

healthcare-related bankruptcy and restructuring matters. I have had prominent roles in numerous pharmaceutical bankruptcy cases and have acquired a thorough understanding of the US and worldwide pharmaceutical industry. Over just the last four years, I represented McKesson in 20 major US pharmaceutical manufacturer bankruptcy cases, including many in this district. Those cases include Mallinckrodt, Teligent, Insys Therapeutics, Avadim Health, Orexigen Therapeutics, and Rising Pharmaceuticals.

5.      In mid-February 2022, Buchalter and I were engaged by Charles Cantor, Robert Molinari, and Harry Saal (collectively, the "Shareholder Group") to provide advice regarding Retrotope, Inc. (the "Debtor"). At the time of my engagement, the Debtor's shareholders just rejected a "down round" financing. In response, the Debtor's then Board was recommending an assignment for the benefit of creditors ("ABC"). The ABC obviously was designed to sell the Debtor's assets to Nitin Mehta ("Dr. Mehta"). Dr. Mehta, along with his family and their companies and trusts, was the lead investor in the Debtor's Series D round.

6.      During this time span, I attended a Debtor-organized call, held on February 23, 2022, to discuss the possible ABC. During that call, the Debtor would not permit me to ask any questions about whether the ABC was the appropriate route to take in order to maximize the investment and recovery by all shareholders. Nor would they permit me to ask whether the Debtor and its then Board of Directors had explored a licensing and royalty deal with a larger biopharmaceutical company. Subsequent to that call, on February 25, 2022, I attended and participated in a second call with dozens of shareholders to discuss the Debtor and its go-forward options. This second call was organized by the Shareholder Group.

7.      In late February, after the two shareholder conference calls, on February 28, 2022, I had separate follow-on calls with Debtor's pre-bankruptcy counsel (at the Wilson Sonsini firm)

and then with Mr. Mehta's pre-bankruptcy counsel (at the Morrison & Foerster firm). During those calls, I urged both attorneys to have the Debtor take the necessary steps to explore a licensing and royalty deal with a larger biopharmaceutical company. I recommended the Debtor's engage a company that specializes in these types of transactions. And, I offered the assistance of the Shareholder Group to achieve this outcome. Both attorneys told me that they would need to speak with their clients and then would get back to me. Neither did.

8. Instead, on March 21, 2022, the Debtor filed its Chapter 11 petition. The Shareholder Group engaged Buchalter to represent them in the bankruptcy case.

9. The Shareholder Group's primary objective both before and throughout this bankruptcy case was to have the Debtor truly explore an industry-normative arrangement under which the Debtor would partner with a larger biopharmaceutical company and, in so doing, negotiate an industry-standard milestone and royalty arrangement. This structure, the Shareholder Group believed, would be the best means of maximizing the investment by all of the Debtor's shareholders.

10. At every opportunity during the bankruptcy case, I urged the Debtor and its newly constituted Board of Directors, including the two independent directors, to engage with *all* of its shareholders and determine their collective views as to the best way to proceed with the bankruptcy case. To the best of my knowledge, that never occurred.

11. Every legal action taken in the bankruptcy case by the Shareholder Group was designed with a single objective: maximize the investment and recovery by *all* of the Debtor's shareholders.

12. Starting in early May 2022 and continuing all the way through the auction held on June 26, I had periodic calls and email exchanges with counsel for Kodiak Sciences ("Kodiak").

3

During several of those calls, I explained Debtor's corporate ownership structure and current board structure. And, during at least one of those calls, Kodiak's counsel raised the concern that Dr. Mehta's company, RTMFP, the stalking horse bidder, could bid up to a certain price that would return cash above the debtor in possession loan, the trade payables and Chapter 11 expenses mostly to him and his family entities due to his dominant position in the Series D preferred round of approximately $30 Million.

13. During the calls and emails between me and Kodiak's counsel, I provided Kodiak with, or identified, key pleadings filed by the Shareholder Group, in which they strongly advocated for Debtor to pursue an industry-normative licensing and future royalty transaction with a larger pharmaceutical company and deal structure that would benefit all classes of shareholders. Those pleadings included the Shareholder Group's objections to certain of the first day motions and the Motion to Dismiss. I also provided Kodiak transcripts of several hearings held before the Bankruptcy Court in which the Shareholder Group were active participants. In particular, I provided Kodiak's counsel with the transcript of the bidding procedures hearing, held on May 17, 2022, and directed them to portions of the transcript in which valuation of a licensing and future royalty offer was discussed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct based on my personal knowledge, and if called as a witness could competently testify thereto.

Executed on August 12, 2022 at Irvine, California

                                                /s/ *Jeffrey K. Garfinkle*